

March 7, 2007

**VIA U.S. MAIL AND FACSIMILE**

President Robert A. Corrigan
President's Office, ADM 562
1600 Holloway Avenue
San Francisco, CA 4132

    Re: <u>SFSU College Republicans – SOHP Hearing on March 9, 2007</u>

Dear Dr. Corrigan:

    On behalf of the American Civil Liberties Union of Northern California ("ACLU"), I am writing you concerning the Student Organization Hearing Panel ("SOHP") scheduled for March 9, 2007. This hearing is in response to a student complaint filed against the College Republicans, based on events that occurred on October 17, 2006 at a public rally sponsored by that student organization. Because this hearing raises the possibility of sanctions being imposed for the exercise of First Amendment rights, an issue of paramount concern to the ACLU, we would like to address the important constitutional principles that we believe are at stake. We hope that you will share this letter with the members of the panel, as well as any interested parties, and that it will be relevant and helpful to the panel's review process.

    The ACLU strongly supports SFSU's commitment and responsibility to promote a campus atmosphere of tolerance and nondiscrimination so that equal educational opportunity is available to all. However, the core purpose of the First Amendment is to prevent government punishment of protected political speech — including views that are highly controversial, offensive or even hostile toward others. Public universities, in particular, have a responsibility to support the diverse exchange of beliefs and to keep the marketplace of ideas functioning and free of censorship. As we will discuss further below, and based on the facts as we understand them concerning the October 17 rally, sanctioning the College Republicans based on this complaint would violate the First Amendment's protection for freedom of expression.

M. QUINN DELANEY, *CHAIRPERSON* | ROBERT CAPISTRANO, SUSAN FREIWALD, LISA HONIG, ROBERTA SPIECKERMAN, *VICE CHAIRPERSONS* | NANCY PEMBERTON, *SECRETARY/TREASURER*
DOROTHY M. EHRLICH, *EXECUTIVE DIRECTOR* | MAYA HARRIS, *ASSOCIATE DIRECTOR* | ALAN SCHLOSSER, *LEGAL DIRECTOR*
ANN BRICK, MARGARET C. CROSBY, TAMARA LANGE, JULIA HARUMI MASS, MICHAEL RISHER, JORY STEELE, *STAFF ATTORNEYS*
ERIKA CLARK, *COMMUNICATIONS DIRECTOR* | CHERI BRYANT, *DEVELOPMENT DIRECTOR* | JUSTINE SARVER, *ORGANIZING DIRECTOR*
NATASHA MINSKER, NICOLE A. OZER, MARK SCHLOSBERG, *POLICY DIRECTORS*
STEPHEN V. BOMSE, *GENERAL COUNSEL*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
39 DRUMM STREET, SAN FRANCISCO, CA 94111 | T/415.621.2493 | F/415.255.1478 | TTY/415.863.7832 | WWW.ACLUNC.ORG

CRSFSUvA_Compl_Ex_I_0080

*President Robert Corrigan*
*March 7, 2007*
*Page 2*

I.  <u>The Rally and Its Aftermath</u>

On October 17, 2006, the SFSU College Republicans held an "anti-terrorism" rally in Malcolm X Plaza. During the rally, members of the group stepped on two handmade butcher paper flags designed to replicate the flags of the groups Hamas and Hezbollah, organizations that the College Republicans believe to be terrorist groups. These flags incorporate the Arabic symbol for God, and that symbol was apparently duplicated in the handmade flags.

This action of stepping on the flags was intended to express the College Republican's condemnation of Hamas and Hezbollah, and to express the College Republicans' support for victims of terrorist acts. Some of the onlookers at the rally were deeply offended by this disrespectful treatment of the flag, and what they felt was hostility being expressed to the Muslim religion. Some approached the stage to express their anger, and to prevent the flags containing the religious symbol from being stepped on. In response, attempts were made to modify the makeshift flags by removing the word Allah. Angry and heated arguments ensued, and ultimately the Hamas flag was given to one of the outraged onlookers.

Four days after the event, the College Republicans were notified that a student complaint had been filed against them for committing "acts of incivility" and "inciting violence." The SOHP investigation has led to the March 9 hearing panel and the possibility that sanctions will be imposed on the College Republicans for their actions with respect to the flags.

II. <u>The First Amendment's Protection for "Offensive" Speech</u>

The protection of constitutional rights often involves a balancing of important but conflicting interests. In this case, the expression of the political viewpoint of some students has been perceived as deeply offensive and hostile to the religious feelings and viewpoints of other students. While the University does and should have a responsibility to maintain a safe environment so that all students can have an equal opportunity to learn, in exercising that responsibility it is vital to preserve the free speech rights established by the First Amendment. In this case, based on the facts that have been reported, imposing sanctions on the College Republicans would violate the First Amendment rights of the group and its members.

*President Robert Corrigan*
*March 7, 2007*
*Page 3*

First, the expressive conduct at issue in this case is protected by the First Amendment. Though stepping on Hamas and Hezbollah flags is not an act of pure speech, it is an expressive act of communication that falls squarely within the zone of core constitutional protection. The U.S. Supreme Court set forth this test for whether expressive conduct is protected by the First Amendment: "whether [a]n intent to convey a particularized message was present and [whether] the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). The context of the act is also central to the analysis. In this seminal flag-burning case, the "expressive, overtly political nature of [the group's] conduct was both intentional and overwhelmingly apparent." *Texas v. Johnson*, 491 U.S. at 406. The College Republicans intended to communicate an "anti-terrorist" message by standing on Hamas and Hezbollah flags to express their condemnation of these groups, and to do so in a forum where their message would be heard and understood by those attending the rally. The expression of such political views is at the heart of First Amendment freedoms.

Second, the suggestion that the College Republicans' actions qualify as "incitement" is not legally supportable. For speech to be lawfully restricted by government on these grounds, the speech must meet three criteria: (1) express advocacy of law violation; (2) the advocacy must call for *immediate* law violation; and (3) the immediate law violation must be *likely* to occur. *Brandenburg v. Ohio*, 395 U.S. 444 (1969). None of these elements are satisfied here, as the College Republicans did nothing to advocate any violation of the law.

Third, the fact that the College Republicans' viewpoint, and the means they chose to express themselves, was offensive or even abhorrent to some does not override the protection provided by the First Amendment. In fact, the Supreme Court has given us a clear statement of that principle in a case involving desecration of the United States flag:

> We are aware that desecration of the flag is deeply offensive to many. But the same might be said, for example of virulent ethnic and religious epithets..., vulgar repudiations of the draft, ... and scurrilous caricatures.... 'If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.'

*President Robert Corrigan*
*March 7, 2007*
*Page 4*

*U.S. v. Eichman*, 496 U.S. 310, 318-19 (1990) (citations omitted). While "civility" and respect for the views of others is an important and worthy goal for the University community, it cannot be used as the defining test for what expression is constitutionally protected.

Fourth, the angry reaction of those in the audience who felt a sacred symbol was being desecrated is certainly understandable. In the post- 9/11 era in this country, Muslims have been subjected to many acts of discrimination, both by the government and by private actors. The ACLU is working closely with other organizations to protect and defend the rights of victims of such unlawful discrimination and anti-Muslim bias, and we understand that balancing free speech rights with equal protection rights can be a difficult and delicate task. However, while the expressive conduct of the College Republicans clearly angered and deeply disturbed some listeners at the rally, this does not deprive the speech or the speakers of constitutional protection. A cardinal tenet of the First Amendment is that free speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949). The U.S. Supreme Court has long since rejected the idea of a "hecklers' veto" that would result from letting the audience response determine the protection afforded free expression. *Terminiello v. Chicago,* 337 U.S. 1.[1]

Finally, the College Republicans' expression does not constitute "hostile environment" harassment under the law, as has been alleged in this matter. The Supreme Court has held that for student conduct to constitute punishable "hostile environment" harassment, it must be "so severe, persistent, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999). Speech at a political rally that neither targets specific individuals nor is severe or persistent enough to bar the educational access of others does not cross this constitutional line. While there are lawful ways for the University to respond to incidents that ignite ideological clashes or single out certain groups and to acknowledge the impact of such speech on the community, the imposition of discipline is an unconstitutional response under this set of facts.

---

[1] While fully recognizing that disrespectful and contemptuous treatment of the United States flag in public may cause justifiable outrage among onlookers, the United States Supreme Court in no less than five "flag desecration" cases has held that punishment for such actions would violate the First Amendment. *Street v. New York*, 394 U.S. 576 (1969); *Smith v. Goguen.* 415 U.S. 566 (1974); *Spence v. Washington*, 418 U.S. 405 (1974); *Texas v. Johnson*, 491 U.S. 397; *United States v. Eichman*, 496 U.S. 310.

*President Robert Corrigan*
*March 7, 2007*
*Page 5*

III.   Conclusion

The ACLU supports the University's efforts to create a diverse campus community that is a safe learning environment for all, free from discrimination and harassment. Institutional vigilance to this obligation is a vital component of providing a fair, open and equal educational opportunity. However, this laudable goal must be pursued in a manner that also extends full support to free and open dialogue, even when difficult or controversial issues arise or when the speech is offensive and stirs some people to anger. Because the College Republicans were engaging in protected First Amendment activity at their rally, official punishment of the group or its members would violate the Constitution. Therefore, we strongly urge the administration of San Francisco State University not to impose punitive sanctions in response to this incident.

If there is a cure in the marketplace of ideas for speech one disagrees with, that cure is counter-speech, not censorship. This principle is evident in aspects of this incident to date. The "anti-terrorism" rally of the College Republicans, and their explicit condemnation of Hamas and Hezbollah, was intended to counter viewpoints expressed on campus in support of these organizations. And, after this incident, the Associated Students board exercised its free speech rights by unanimously adopting a resolution condemning the group, finding that, "The actions on the part of the College Republicans amount to no more than hateful religious intolerance." *ASI Passes Resolution Against Flag Stomping: Organization says College Republicans were in the Wrong*, Jason Shuffler, The Golden Gate Xpress, November 28, 2006. The University should do what it can to foster and support a robust exchange of student ideas and viewpoints.

If this incident raises University concerns about bias or hostility on the SFSU campus, there are ways to respond that deepen student engagement with those issues, educate students regarding community diversity, and take positive steps to promote equality and understanding. The University should use this controversial moment as an opportunity to foster productive dialogue through hosting a community meeting, facilitating an educational debate, or conducting an all-school training. The University has used such affirmative steps in the past in the midst of similar campus controversies, and we urge that such measures be considered instead of punitive sanctions that would violate free speech rights.

*President Robert Corrigan*
*March 7, 2007*
*Page 6*

The United States Supreme Court should have the last word:

> The constitutional right of free expression is powerful medicine in a society as diverse and populous as ours. It is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, in the hope that use of such freedom will ultimately produce a more capable citizenry and more perfect polity and in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests.
>
> To many, the immediate consequence of this freedom may often appear to be only verbal tumult, discord, and even offensive utterance. These are, however, within established limits, in truth necessary side effects of the broader enduring values which the process of open debate permits us to achieve. That the air may at times seem filled with verbal cacophony is, in this sense not a sign of weakness but of strength.

*Cohen v. California*, 403 U.S. 15, p. 24-25 (1971)

Yours truly,

Alan L. Schlosser
Legal Director

cc:   Joey Greenwell, Director of Student Programs



**Foundation for Individual Rights in Education**
601 Walnut Street, Suite 510 • Philadelphia, Pennsylvania 19106
**T** 215-717-3473 • **F** 215-717-3440 • fire@thefire.org • www.thefire.org

Greg Lukianoff
PRESIDENT

Robert L. Shibley
VICE PRESIDENT OF
OPERATIONS

Samantha K. Harris
DIRECTOR OF LEGAL AND
PUBLIC ADVOCACY

Alan Charles Kors
CO-FOUNDER AND
CHAIRMAN EMERITUS

BOARD OF DIRECTORS

Harvey A. Silverglate
CO-FOUNDER AND
CHAIRMAN

William J. Hume
Joseph M. Maline
Marlene Mieske
Daphne Patai
Virginia Postrel
James E. Wiggins

BOARD OF ADVISORS

Lloyd Buchanan
T. Kenneth Cribb, Jr.
Candace de Russy
William A. Dunn
Benjamin F. Hammond
Nat Hentoff
Roy Innis
Wendy Kaminer
Woody Kaplan
Leonard Liggio
Herbert London
Peter L. Malkin
Milton Rosenberg
John R. Searle
Ricky Silberman
Christina Hoff Sommers

January 23, 2007

President Robert A. Corrigan
President's Office, ADM 562
1600 Holloway Avenue
San Francisco, California  94132

*Sent via U.S. Mail and Facsimile (415-338-6210)*

Dear President Corrigan:

As you can see from our directors and board of advisors, FIRE unites civil rights and civil liberties leaders, scholars, journalists, and public intellectuals across the political and ideological spectrum on behalf of liberty, due process, legal equality, voluntary association, freedom of speech, and academic freedom on our nation's college campuses. Our website, www.thefire.org, will give you a greater sense of our identity and activities.

FIRE is deeply concerned about the threat to free expression posed by San Francisco State University's (SFSU's) investigation of the SFSU College Republicans for holding a controversial yet constitutionally protected anti-terrorism rally on October 17, 2006.

This is our understanding of the facts; please inform us if you believe we are in error. On October 17, the College Republicans held an anti-terrorism rally in Malcolm X Plaza on the SFSU campus. In the context of protesting terrorist organizations, several College Republicans stepped on butcher paper that they had painted to resemble the flags of Hamas and Hezbollah. Unbeknownst to the protestors, the Arabic script they had painted on the flags represented the word "Allah."

On October 26, the Muslim Student Association (MSA) submitted a formal complaint to the Office of Student Programs and Leadership Development (OSPLD). According to OSPLD Director Joey Greenwell, the complaint accused the College Republicans of "walking on a banner with the word 'Allah' written in Arabic script." By early December, Greenwell sent an e-mail to the College Republicans saying that the OSPLD had concluded its investigation into "allegations of attempts to incite violence and create a hostile environment" and "allegations of actions of incivility." Pursuant to Student Group Misconduct procedures, the OSPLD has passed its

CRSFSUvA_Compl_Ex_I_0086

investigation along to the Student Organization Hearing Panel, which will schedule a hearing and rule on the allegations.

A public university such as SFSU should not investigate—and *cannot* lawfully punish—students for engaging in expression that is unquestionably protected by the First Amendment. (See *Texas v. Johnson*, 491 U.S. 397 (1989), holding that burning an American flag as part of a political protest is expression protected by the First Amendment). SFSU has a duty to uphold the First Amendment rights of all of its students, even if their expressive activity offends the religious sensibilities of some. The First Amendment not only protects students' right to free expression, but prevents SFSU from forcing its students to abide by the decrees of any faith. Just as SFSU could not punish students for taking Jesus' name in vain or for driving a car on the Jewish sabbath, it cannot punish students for stepping on a makeshift flag bearing the word "Allah."

Moreover, SFSU's own policies protect students' right to engage in expressive activity. The Guidelines for Academic Freedom and Responsibility protect the right of students and faculty "to meet and share their views on a wide spectrum of intellectual and social issues." Students' expression cannot cease to garner protection under SFSU's policies merely because that expression is disagreeable to some members of the community.

The accusation that the College Republicans' conduct amounted to "incitement" and "hostile environment" harassment is wholly without merit. "Incitement" is a clearly defined legal term applying not simply to offensive or unpopular speech, but to speech that encourages "imminent lawless action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). For example, a speaker exhorting an angry, violent crowd to attack a government office could be found guilty of incitement. However, speech does not constitute incitement if a speaker's words result in violence because people despise what that speaker said and wish to silence him or her. In fact, the Court has specifically addressed speech that arouses anger by stating unequivocally that a principal "function of free speech under our system of government is to invite dispute," and, further, that free speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949). By punishing students on the basis of how harshly, violently, or unreasonably others might react to their words, SFSU would create an incentive for those who disagree to react violently, conferring a "heckler's veto" on speech to the least tolerant members of the community.

Further, the College Republicans' expression does not constitute hostile environment harassment. The Supreme Court has held that for student conduct to constitute constitutionally unprotected hostile environment harassment, it must be "so severe, persistent, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999). Clearly, the speech in question here—an isolated expressive act, made in the context of a political demonstration—fails to meet the exacting demands of this precise and well-established legal standard. Moreover, in 2003, the Department of Education's Office of Civil Rights (OCR) issued a letter to college presidents specifically to clarify that "the offensiveness of a particular expression, standing alone, is not a legally sufficient basis

2

to establish a hostile environment under the [harassment] statutes enforced by OCR." It is thus wholly unreasonable and legally untenable to assert that the College Republicans' one-time demonstration was severe, persistent, and pervasive harassment that denied any onlookers the opportunity to benefit from their educational experiences.

Finally, SFSU's prohibition on "actions of incivility" unquestionably violates the First Amendment. Indeed, most speech and expression that is "uncivil" is nonetheless entirely constitutionally protected. As the U.S. Supreme Court has stated, "the mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667, 670 (1973). If any action that some students find offensive may be punished as "uncivil," then students' right to protest—surely a cherished and oft-exercised right at SFSU—would be completely undermined, for the very nature of a protest entails expressing a sentiment with which some in the community will disagree. Even when protestors' expression is coarse or vitriolic, SFSU is constitutionally and morally bound to protect it.

The resolution passed by the Associated Students, Inc. denouncing the College Republicans' actions may indicate that the greater campus community finds the College Republicans' protest methods reprehensible. Nonetheless, SFSU has a duty to ensure that the outrage of the majority does not silence the voice of the minority. At an institution as diverse as SFSU, it is to be expected that disagreements between students will occur and tensions among the student body will occasionally run high. SFSU must teach its students that the way to deal with disagreeable speech is to counter it with more speech, not to silence it with sanctions and punishment.

Please spare SFSU the embarrassment of fighting against the Bill of Rights, by which it is legally and morally bound. SFSU must immediately cease its investigation of the College Republicans for engaging in constitutionally protected expression. FIRE hopes to resolve this situation amicably and swiftly; we are, however, prepared to use all of our resources to see this situation through to a just and moral conclusion.

We request a response on this matter by Tuesday, February 6, 2007.

Sincerely,


Tara E. Sweeney
Senior Program Officer

cc:
John M. Gemello, Provost and Vice President for Academic Affairs, SFSU
J. E. Saffold, Dean of Students and Vice President for Student Affairs, SFSU
Kevin Bowman, Associate Vice President for Student Affairs, SFSU
Joey Greenwell, Director, Office of Student Programs and Leadership Development, SFSU

3

Maire Fowler, President, Associated Students, Inc., SFSU
Isidro Armenta, Vice President of Internal Affairs, Associated Students, Inc., SFSU
Hector Jimenez Cardenas, Associated Students, Inc., SFSU
Michael DeGroff, SFSU College Republicans

4



**Foundation for Individual Rights in Education**

601 Walnut Street, Suite 510 • Philadelphia, Pennsylvania 19106
**T** 215-717-3473 • **F** 215-717-3440 • fire@thefire.org • www.thefire.org

Greg Lukianoff
PRESIDENT

Robert L. Shibley
VICE PRESIDENT OF
OPERATIONS

Samantha K. Harris
DIRECTOR OF LEGAL AND
PUBLIC ADVOCACY

Alan Charles Kors
CO-FOUNDER AND
CHAIRMAN EMERITUS

BOARD OF DIRECTORS

Harvey A. Silverglate
CO-FOUNDER AND
CHAIRMAN

William J. Hume
Joseph M. Maline
Marlene Mieske
Daphne Patai
Virginia Postrel
James E. Wiggins

BOARD OF ADVISORS

Lloyd Buchanan
T. Kenneth Cribb, Jr.
Candace de Russy
William A. Dunn
Benjamin F. Hammond
Nat Hentoff
Roy Innis
Wendy Kaminer
Woody Kaplan
Leonard Liggio
Herbert London
Peter L. Malkin
Milton Rosenberg
John R. Searle
Ricky Silberman
Christina Hoff Sommers

March 7, 2007

President Robert A. Corrigan
President's Office, ADM 562
1600 Holloway Avenue
San Francisco, California 94132

**URGENT**

*Sent via U.S. Mail and Facsimile (415-338-6210)*

Dear President Corrigan:

It is with both deep disappointment and renewed resolve that FIRE is forced to write to you again to voice our grave concern about the threat to free expression posed by San Francisco State University's (SFSU's) ongoing investigation of the SFSU College Republicans for the content of an anti-terrorism rally held October 17, 2006.

FIRE has learned that SFSU's Student Organization Hearing Panel (SOHP) plans to hold a hearing this Friday, March 9, to adjudicate the October 26, 2006 complaint against the College Republicans. The College Republicans stand accused of "attempts to incite violence and create a hostile environment" and "actions of incivility" for "walking on a banner with 'Allah' written in Arabic script." The banners in question were pieces of butcher paper on which the College Republicans had drawn the flags of Hamas and Hezbollah.

FIRE strongly urges SFSU to cancel the SOHP hearing immediately and end any further investigation of the College Republicans in recognition of the plain fact that as a public institution, SFSU *cannot* lawfully punish the College Republicans for engaging in protected symbolic political expression. It is imperative that SFSU recognize that it is both legally and morally bound to respect the right to free expression as guaranteed to its students by the Constitution of the United States, by the California constitution, and by its own institutional commitments to free speech.

Legally speaking, this is not a close call, and the administrators involved in this action risk being held individually liable in a court of law for violating the constitutional rights of the accused students. Even if every allegation in the complaint is true, there are ***no*** lawful grounds for punishment or even further investigation.

CRSFSUvA_Compl_Ex_I_0090

As we made clear in our previous letter, the College Republicans' actions cannot lawfully be found to constitute "incitement" or "hostile environment" harassment. Incitement occurs when a speaker exhorts his or her supporters to engage in immediate unlawful action. By contrast, speech *cannot* constitute "incitement" if violence results because the audience *disagrees* with the speaker and wishes to silence him or her. As the U.S. Supreme Court held in *Brown v. Louisiana*, 383 U.S. 131 (1966), "[p]articipants in an orderly demonstration in a public place are not chargeable with the danger, unprovoked except by the fact of the constitutionally protected demonstration itself, that their critics might react with disorder or violence." Indeed, the Court has repeatedly acknowledged that protected speech may often be "provocative and challenging," provoking "profound unsettling effects as it presses for acceptance of an idea" in the mind of a listener, and even stirring anger and unrest. *Terminiello v. Chicago*, 337 U.S. 1 (1949). The College Republicans' speech was exactly the type of provocative political speech the First Amendment is designed to protect.

Similarly, the isolated expressive activity in question here fails *in every respect* to meet the strict legal threshold for harassment. The Supreme Court has defined "hostile environment" harassment in the educational setting to be behavior "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999). The actions of the College Republicans during one "anti-terrorism" rally cannot possibly constitute behavior "so severe, pervasive and objectively offensive" as to be punishable "hostile environment" harassment. To maintain otherwise is simply untenable.

As for the university's argument that the issue is not flag desecration but instead is—as a university spokesperson told a columnist for the *San Francisco Chronicle*, "the desecration of Allah"—I simply do not believe that you or anyone at your university seriously believes that a public university in America can punish the desecration of a religious symbol. If, perhaps, your legal counsel is telling you that the Supreme Court's decision in *Virginia v. Black*, 538 U.S. 343 (2003) allows the state to ban the desecration of religious symbols, this is wholly incorrect, and requires not a misreading but rather a deliberate twisting of that decision. In fact, *Black* states that "burning a cross at a political rally would almost certainly be protected expression," and only permits the regulation of cross burning when the burning cross is intended to convey "a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." This decision was explicitly based on cross burning's "long and pernicious history as a signal of impending violence," given that it is "inextricably intertwined with the history of the Ku Klux Klan." No one watching the video of the College Republicans' protest could reasonably conclude that the students watching the protest had any fear that they were immediately about to be harmed or killed. Any argument based upon *Virginia v. Black* would be an argument made in bad faith and would not be taken seriously in a court of law.

Any punishment enforced against the College Republicans under SFSU's student conduct policies as a consequence of their exercise of their First Amendment rights is an unlawful deprivation of constitutional rights under 42 U.S.C.S. § 1983 for which SFSU administrators can be sued in their individual capacities. Moreover, when the law is as clearly established as it is in this case—the Supreme Court's well-known and unequivocal holding in *Texas v. Johnson*, 491

U.S. 397 (1989) that flag desecration is constitutionally protected—any claims of immunity on the part of the individual administrators will likely fail. State officials and employees are offered only *qualified* immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Davis v. Scherer*, 468 U.S. 183 (1984).

Existing First Amendment law leaves no doubt that the College Republicans' expressive activity enjoys complete protection under the First Amendment. No reasonable person could claim otherwise. As such, your persistence in pursuing potential disciplinary sanctions against the College Republicans effectively waives immunity from liability under § 1983. To be clear, if you continue to ignore your constitutional obligations, you risk personal liability for depriving your students of their rights.

We ask you to stop these proceedings immediately. There is nothing to investigate other than constitutionally protected expression. I believe everyone at SFSU knows this. Be assured that neither the law nor the public will long tolerate such brazen attempts to circumvent the Bill of Rights.

Due to the urgent nature of this matter, we request a response by tomorrow, Thursday, March 8, 2007.

Sincerely,

*[signature]*

Greg Lukianoff
President

cc:
John M. Gemello, Provost and Vice President for Academic Affairs, SFSU
J. E. Saffold, Dean of Students and Vice President for Student Affairs, SFSU
Kevin Bowman, Associate Vice President for Student Affairs, SFSU
Patricia B. Bartscher, University Counsel, SFSU
Joey Greenwell, Director, Office of Student Programs and Leadership Development, SFSU
Maire Fowler, President, Associated Students, Inc., SFSU
Isidro Armenta, Vice President of Internal Affairs, Associated Students, Inc., SFSU
Hector Jimenez Cardenas, Associated Students, Inc., SFSU
Joicy Serrano, Ethnic Studies Representative, SFSU
D. J. Morales, Director of Residential Life, SFSU
Robert Williams, Counseling Department, SFSU
Amy Smith, Assistant Professor of Psychology, SFSU
Christopher Oropeza, Creative Arts Representative, SFSU
Leigh Wolf, SFSU College Republicans
Michael DeGroff, SFSU College Republicans
Eugene Volokh, Gary T. Schwartz Professor of Law, UCLA School of Law
Juniper Lesnik, Legal Fellow, ACLU of Northern California

Nat Hentoff, *The Village Voice*
Debra Saunders, *San Francisco Chronicle*

CRSFSUvA_Compl_Ex_I_0093