BENJAMIN W. BULL (AZ Bar No. 009940)
TRAVIS C. BARHAM* (AZ Bar No. 024867)
Alliance Defense Fund
15333 N. Pima Road, Suite 165
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028—facsimile
bbull@telladf.org
tbarham@telladf.org

DAVID A. FRENCH* (TN Bar No. 16692; KY Bar No. 86986)
Alliance Defense Fund
12 Public Square
Columbia, Tennessee 38401
(931) 490-0591
(931) 490-7989—facsimile
dfrench@telladf.org

DAVID J. HACKER (CA Bar No. 249272; IL Bar No. 6283022)
Alliance Defense Fund
101 Parkshore Drive, Suite 100
Folsom, California 95630
(916) 932-2850
(916) 932-2851—facsimile
dhacker@telladf.org

* *Pro hac vice* admission

Attorneys for Plaintiffs College Republicans at San Francisco State University,
Leigh Wolf and Trent Downes

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| **COLLEGE REPUBLICANS AT SAN FRANCISCO STATE UNIVERSITY**, an unincorporated student organization; **LEIGH WOLF**, an individual; **TRENT DOWNES**, an individual, <br><br>     Plaintiffs, <br><br> v. <br><br> **CHARLES B. REED**, individually and in his official capacity as Chancellor and ex-officio member of the Board of Trustees of | **Case No. C-07-3542-WDB** <br><br> **Hon. Wayne D. Brazil** <br><br> **FIRST AMENDED VERIFIED COMPLAINT** |

1  the California State University; **ROBERT A.**
2  **CORRIGAN**, individually and in his official
   capacity as President of San Francisco State
3  University; **J. E. SAFFOLD**, individually
   and in her official capacity as Vice President
4  for Student Affairs at San Francisco State
   University; **JOEY GREENWELL**,
5  individually and in his official capacity as
   Director of the Office of Student Programs
6  and Leadership Development at San
   Francisco State University,
7
8       Defendants.

9       Plaintiffs College Republicans at San Francisco State University, Leigh Wolf, and

10 Trent Downes, by and through counsel, and for their Complaint against Defendants Charles B.

11 Reed, Robert A. Corrigan, J. E. Saffold, and Joey Greenwell, hereby state as follows:

12                              **INTRODUCTION**

13      1.      At the heart of one of the most diverse communities in America, one of

14 California's leading public universities systematically prohibits and punishes political and

15 religious speech by students that is outside the campus political mainstream.  Students who

16 matriculate San Francisco State University ("SFSU" or "University") are promised a forum for

17 free debate and free exchange of ideas.  However, some views are more welcome than others.

18      2.      This case arises from efforts by a public university, SFSU, through its officials, to

19 restrict and abridge the expressive rights of its students and student organizations.  SFSU, as a

20 public institution of higher learning, is bound by the First Amendment to the United States

21 Constitution to refrain from infringing on the free speech rights of those it educates.  Instead, the

22 Defendants in this case have engaged in unlawful censorship.  Through a series of

23 unconstitutional policies and practices, they have attempted to suppress constitutionally

24 protected expression on campus simply because that expression offended the sensitivities of

25 some.

26      3.      When College Republicans at San Francisco State University held an Anti-

27 Terrorism Rally on campus in October 2006, one student filed a frivolous complaint with SFSU

28 officials alleging that the College Republicans had "incited violence," created a "hostile

FIRST AMENDED VERIFIED COMPLAINT – C-07-3542-WDB  - 2

environment," and engaged in "acts of incivility."  Although the sole basis for the complaint was that members of the College Republicans had stepped on Hamas and Hezbollah flags in an act of political protest—expression that is clearly constitutionally protected—the complaint launched a five-month "investigation" by Defendants into College Republicans' free speech activities, which chilled Plaintiffs' ability to freely express their political, social, cultural and religious ideas on campus.

4.    The violation of Plaintiffs' First Amendment rights is a symptom of a systemic problem in California's public university system.  By policy and practice, the California State University ("CSU"), SFSU, and officials thereof are violating the free speech and expression rights of each and every student on campus.  CSU, acting through the trustees and the chancellor, Defendant Charles B. Reed, has implemented a system-wide Orwellian speech code that is vague, overbroad, and suppress the discussion of controversial viewpoints by students.  SFSU, acting through, Defendants Robert A. Corrigan, J. E. Saffold, and Joey Greenwell, enforces the CSU speech code and has implemented local speech codes that are vague, overbroad, and suppress the discussion of controversial viewpoints by students.  These speech codes are enforced, in part, through a system of reporting that encourages students to file complaints about their fellow students and student organizations whenever those students or organizations utter words or engage in actions deemed subjectively "uncivil," "intimidating," or "harassing."

5.    To remedy these constitutional violations and to put an end to the ongoing harm Defendants are causing, Plaintiffs College Republicans at San Francisco State University, Leigh Wolf, and Trent Downes seek declaratory and injunctive relief invalidating and prohibiting the enforcement of each of the policies comprising CSU's and SFSU's speech codes, and seek damages for the chilling of their First Amendment rights by the University's investigation of their protected speech and impermissible closure of the "marketplace of ideas."

## JURISDICTION AND VENUE

6.    This action raises federal questions under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

7.    This Court has original jurisdiction over these federal claims pursuant to 28

1  U.S.C. §§ 1331 and 1343.

2    8.    This Court has authority to award the requested declaratory relief under 28 U.S.C.

3  § 2201; the requested injunctive relief under 28 U.S.C. § 1343(3); the requested damages under

4  28 U.S.C. § 1343(3); and attorneys' fees under 42 U.S.C. § 1988.

5    9.    Venue is proper under 28 U.S.C. § 1391 in the Northern District of California

6  because a substantial part of the actions or omissions giving rise to this case occurred within this

7  District, and at least one Defendant resides in this District.

8                          **INTRADISTRICT ASSIGNMENT**

9    10.    Pursuant to Civil L.R. 3-2(c)-(d) & 3-5, this is a civil rights case, in a non-

10  excepted category, suitable for assignment to the San Francisco or Oakland divisions because the

11  civil action arose in San Francisco County.

12                                  **PLAINTIFFS**

13    11.    Plaintiff College Republicans at San Francisco State University is an

14  unincorporated, expressive student organization at San Francisco State University.  It is a local

15  chapter of a national organization known as the College Republican National Committee, an

16  independent, section 527 political organization, and is a chartered member of the California

17  College Republicans.  Neither the College Republican National Committee nor the California

18  College Republicans are parties to this lawsuit.

19    12.    Plaintiff Leigh Wolf is, and was at all times relevant to this Complaint, a student

20  at San Francisco State University and an officer of College Republicans at San Francisco State

21  University, an expressive student organization.

22    13.    Plaintiff Trent Downes is, and was at all times relevant to this Complaint, a

23  student at San Francisco State University and an officer of College Republicans at San Francisco

24  State University, an expressive student organization.  Mr. Downes has sincerely held religious

25  beliefs based on his Episcopalian faith that he desires to express on campus.

26                                  **DEFENDANTS**

27    14.    Defendant Charles B. Reed is, and was at all times relevant to this Complaint,

28  Chancellor and member of the Board of Trustees of the California State University.  Defendant

FIRST AMENDED VERIFIED COMPLAINT – C-07-3542-WDB  - 4

Reed's duties include the adoption of rules and regulations pursuant to Cal. Educ. Code § 89030 that govern the California State University, including San Francisco State University. He is sued in his official and individual capacities.

15.    Defendant Robert A. Corrigan is, and was at all times relevant to this Complaint, President of San Francisco State University. President Corrigan's duties include the oversight of San Francisco State University and the execution of policies and regulations that govern the University. He is sued in his official and individual capacities.

16.    Defendant J. E. Saffold is, and was at all times relevant to this Complaint, Vice President of Student Affairs at San Francisco State University. Vice President Saffold's duties include overseeing campus administration, including the policies and procedures contained herein. She is sued in her official and individual capacities.

17.    Defendant Joey Greenwell is, and was at all times relevant to this Complaint, Director of the Office of Student Programs & Leadership Development at San Francisco State University. Mr. Greenwell's duties include the oversight of student organizations and the application of University policies and regulations to those student organizations. Mr. Greenwell is sued in his individual and official capacities.

## FACTUAL BACKGROUND

### A. CSU's and SFSU's Speech Codes

18.    Student life for undergraduate students at SFSU is governed in part by three primary documents, the Student Conduct Code ("Student Code"), the Sexual Harassment Policy and Procedures ("Sexual Harassment Policy"), and the Office of Student Programs and Leadership Development ("OSPLD") Student Organization Handbook. These documents contain comprehensive student conduct guidelines that regulate the bounds of permissible speech and expression on campus and regulate the conduct of expressive student organizations. These guidelines will be referred to throughout this Complaint as SFSU's "speech codes."

19.    OSPLD is one of several departments within the Division of Student Affairs at SFSU. Defendant Greenwell is the current Director of OSPLD.

FIRST AMENDED VERIFIED COMPLAINT – C-07-3542-WDB  - 5

1     20.     OSPLD publishes a Student Organization Handbook.  This document states that

2     OSPLD "registers all recognized SF State student organizations" and "trains student leaders and

3     advises students regarding event planning [and] University policy…"  A copy of Defendants'

4     Student Organization Handbook is attached as Exhibit A to this Complaint.

5     21.     The Student Organization Handbook requires student organizations to "abide by

6     all University policies, and local, state and federal laws," including those cited herein.

7     22.     The Student Organization Handbook contains a section entitled "Student Group

8     Misconduct," which permits student organizations to be held collectively accountable "when the

9     behavior is inconsistent with SF State *goals*, *principles* and policies."  (*See* Ex. A) (emphasis

10     added).  SFSU's "goals" and "principles" are not defined.

11     23.     SFSU's Student Code republishes California Code of Regulations, Title 5, section

12     41301.  California Education Code, title 3, section 89030 gives the CSU trustees, including

13     Defendant Reed herein, the authority to adopt regulations governing CSU campuses.  The CSU

14     trustees promulgated California Code of Regulations, Title 5, section 41301.  Defendant Reed is

15     charged with implementing the CSU trustees' policies, including Cal. Code Regs. tit. 5, § 41301.

16     A copy of Cal. Code Regs. tit. 5, § 41301 is attached as Exhibit B to this Complaint.

17     24.     The Student Code is enforced at SFSU by Defendants Corrigan, Saffold and

18     Greenwell, and requires students to abide by certain "responsibilities."  One "responsibility" of

19     students is that they "*be civil* to one another and to others in the campus community…"  Cal.

20     Code Regs. tit. 5, § 41301 (2007) (emphasis added).  A copy of the relevant portions of

21     Defendants' 2006-07 *SFSU Bulletin*, which contains the Student Code, is attached as Exhibit C

22     to this Complaint.

23     25.     The Student Code also contains a list of "Unacceptable Student Behaviors" that

24     are "subject to disciplinary sanctions," including:  "… (7) Conduct that threatens or endangers

25     the health or safety of any person within or related to the University community, including

26     physical abuse, threats, *intimidation, harassment*, or sexual misconduct."  (*See* Ex. C) (emphasis

27     added).  The Student Code does not define "intimidation" or "harassment."

28

FIRST AMENDED VERIFIED COMPLAINT – C-07-3542-WDB  - 6

26.     On information and belief, Defendants' Sexual Harassment Policy was promulgated by Defendant Corrigan through University Executive Order #95-18. The Sexual Harassment Policy permits the University to "expel students for sexual harassment." A copy of Defendants' Sexual Harassment Policy, University Executive Order #95-18, is contained in the 2006-07 *SFSU Bulletin*, previously attached as Exhibit C to this Complaint.

27.     The Sexual Harassment Policy contains a definition of sexual harassment that gives the University the power to punish any offensive behavior on campus that "emphasizes another person's sexuality." It defines sexual harassment, in relevant part, as conduct which has "the *purpose or effect* of hindering performance by creating or allowing sexually intimidating, hostile, or offensive behavior to occur in the university or in the university-related setting." (*See* Ex. C) (emphasis added).

28.     Students and student organizations at SFSU are subject to discipline for violating the Student Code, the Student Organization Handbook, or any other University policy, including the Sexual Harassment Policy.

29.     Defendant Greenwell and OSPLD can refer complaints of student organization misconduct to SFSU's Student Organization Hearing Panel ("SOHP"), which can "investigate and review allegations of violations of University policy, practices and law by student organizations." (*See* Ex. A.)

30.     OSPLD maintains a "Student Group Misconduct" policy, which contains "procedures for filing complaints of alleged violation of University Policies & Complaint Disposition." A copy of Defendants' Student Group Misconduct policy is attached as Exhibit D to this Complaint.

31.     The Student Group Misconduct policy contains two methods of resolving a complaint, informal resolution and formal disciplinary proceedings. The Student Group Misconduct policy contains the following statement:

> Informal Resolution of Charges (Optional)—*At the discretion of the Director of OSPLD*, a meeting may be convened with representatives of the organization charged and the complaining party, to reach an informal resolution to be agreed upon by both parties. The meeting will occur within three (3) working days of the date of the notification of charges letter. If the representatives of the student

organization charged and the complaining party reach a mutually acceptable agreement, the matter shall be closed. If no agreement is reached within five (5) working days of the notification of charges letter, the matter will proceed to SOHP for review and determination.

Formal Disciplinary Proceedings—All allegations of misconduct against a recognized student organization, when not resolved with an informal resolution as stated above shall be subject to formal review by SOHP.

(*See* Ex. D) (emphasis added). The Director of OSPLD, Defendant Greenwell, chooses whether to resolve the complaint formally or informally.

32.    When a formal disciplinary proceeding is chosen, OSPLD refers the matter to SOHP. The Student Group Misconduct policy describes SOHP in the following statement:

Student Organization Hearing Panel (SOHP)—The Student Organization Hearing Panel is comprised of campus students, faculty and staff for the purpose of hearing student organization violations and determining sanctions.

Composition of Panel—The panel shall consist of five (5) voting members: two (2) students (ASI appointments), one (1) staff member (Vice President for Student Affairs appointment), and two (2) faculty members (Academic Senate appointments). The SOHP members serve a one-year term and the Director of the OSPLD convenes the Panel. The Associate Vice President for Student Affairs appoints the Chair of SOHP.

(*See* Ex. D.)

33.    When SOHP finds a student organization violated a University policy or local, state or federal law, it may impose punishment on the student organization or its members or both.    Possible punishment includes a letter of warning, censure, probation, suspension, and revocation of recognition.

**B. SFSU's Discriminatory Treatment of Plaintiffs.**

34.    Plaintiff College Republicans at San Francisco State University ("College Republicans") was founded in 2003. It serves as one of the only politically conservative voices at SFSU and has approximately three hundred (300) members. College Republicans seeks to foster, publicize and sustain conservatism on campus and in the San Francisco community.

FIRST AMENDED VERIFIED COMPLAINT – C-07-3542-WDB  - 8

35.    Plaintiffs Leigh Wolf and Trent Downes are members of College Republicans and consistently engage in conversations and class discussions regarding issues implicated by SFSU's speech codes.

36.    Plaintiffs fear that the discussion of their social, cultural, political and/or religious views may be sanctionable under applicable CSU and University speech codes.

37.    Specifically, SFSU and Defendants Corrigan, Saffold and Greenwell enforced University speech codes against Plaintiffs in violation of their First Amendment rights by conducting a five-month investigation into Plaintiffs' protected expression on campus.

38.    On October 17, 2006, between 12 p.m. and 2 p.m., College Republicans, including Plaintiffs herein, held an Anti-Terrorism Rally (the "Rally") in Malcolm X Plaza on SFSU's campus.

39.    The purpose of the Rally was three-fold.  First, College Republicans wanted to educate members of the campus about terrorism, both domestic and abroad, and its affect on different countries, including the United States.  Second, it wanted to memorialize those who have been victims of recent terrorist attacks.  Third, it wanted to identify prominent terrorist organizations around the world and trigger a dialogue about how to properly respond to these groups.  College Republicans was particularly concerned with two groups, Hamas and Hezbollah, which it perceives as being particularly dangerous terrorist organizations.

40.    In the context of creating symbolism for the Rally, members of College Republicans painted butcher paper to resemble the flags of Hamas and Hezbollah.  Plaintiffs did not know what the markings on the Hamas and Hezbollah flags meant and could not read the Arabic script on the flags.

41.    At the Rally on October 17, Plaintiffs placed the Hamas and Hezbollah flags on the ground and stepped on them.  This was intentionally done to mimic the way in which these organizations have protested the United States.  Unbeknownst to any member of College Republicans, both flags contain Arabic script representing the word "Allah."

42.    A large group of students gathered in Malcolm X Plaza to watch the Rally.  Some of these students expressed anger to the members of College Republicans that the flags contained

1  the word "Allah."  Several of these students discussed with College Republicans how to resolve

2  the matter.  College Republicans did not intend to offend anyone of Islamic belief.  Accordingly,

3  College Republicans provided the concerned students with markers, and agreed to let them mark

4  over the word "Allah" so that it was no longer visible.

5       43.  On information and belief, some students threatened to attack the members of

6  College Republicans if they did not stop stepping on the flags.

7       44.  On information and belief, one student, Farhad Rahimi, was not satisfied by the

8  alterations, and claimed he could still see the word "Allah" on the Hamas flag.  Mr. Rahimi

9  became visibly angry, and admitted that he was going to do "what I have to do to stop them

10  [College Republicans] from disrespecting."  Mr. Rahimi then threatened to attack Plaintiffs if

11  they continued to step on the flag, and climbed on stage to prevent anyone else from stepping on

12  the flag.  A member of College Republicans asked Mr. Rahimi what they could do to keep the

13  situation peaceful.  Mr. Rahimi asked that the Hamas flag be removed.

14       45.  SFSU police officers and administrators were approximately twenty to thirty (20-

15  30) feet away from this incident and took no action when the students threatened the Plaintiffs.

16       46.  Because SFSU police and administrators did nothing to protect Plaintiffs and their

17  free speech rights, College Republicans agreed to remove the Hamas flag from the Rally and

18  rolled it up and gave it to Mr. Rahimi, who then left the stage.

19       47.  College Republicans concluded the Rally without further incident.

20       48.  On or about October 26, 2006, Brian Gallagher, an SFSU student, filed a formal

21  complaint about the Rally with OSPLD.  Mr. Gallagher alleged that "the College Republicans

22  publicly and very evidently walked over and trekked over a banner with Arabic script.  That

23  Arabic script represented the word 'Allah,' otherwise known as the name of God in Arabic."

24  This act, the letter claims, was a "route of intolerance and stupidity."  Mr. Gallagher, citing Cal.

25  Code Regs. tit. 5, § 41301(a), alleged that College Republicans had "incited violence," created a

26  "hostile environment," and engaged in "actions of incivility."  A copy of Mr. Gallagher's letter is

27  attached as Exhibit E to this Complaint.

28

49.     On information and belief, after submitting his complaint, Mr. Gallagher solicited letters from other students explaining why they found the act of stepping on the flags "offensive" and "disrespectful."  These letters and e-mails were submitted to OSPLD for review with Mr. Gallagher's complaint. Copies of the letters and e-mails submitted with Mr. Gallagher's complaint are attached as Exhibit F to this Complaint.

50.     Several weeks after Mr. Gallagher filed his complaint, Defendant Greenwell, Director of OSPLD, notified the College Republicans that a complaint had been filed and that OSPLD was conducting a preliminary investigation.  Thinking the issue could be resolved quickly, members of College Republicans agreed to give statements to OSPLD as a part of the investigation.

51.     On information and belief, no other student organization has been "investigated" by SFSU officials for engaging in constitutionally protected expression.

52.     Pursuant to the OSPLD Student Group Misconduct policy (Ex. D), upon completing an investigation, OSPLD can proceed in one of three ways.  First, it may issue a letter of warning that future violations of university policies could result in more severe disciplinary action.  A letter of warning remains in an organization's file for a period of one year from the date of the letter.  Second, the OSPLD Director may meet with representatives from the charged organization and the complaining party and attempt to reach an informal resolution. Third, the OSPLD may refer the charges to the Student Organization Hearing Panel (SOHP) for a formal investigation.

53.     While the OSPLD conducted its investigation, SFSU's student government association, Associated Students, Inc. ("ASI"), unanimously passed a resolution condemning College Republicans and the Rally.  The resolution stated, in part, that the "Associated Students, Inc. deems the College Republicans' actions as contrary to university values and feel they should be held accountable by the university for their actions."  It further stated that "The actions on the part of the College Republicans amount to no more than hateful religious intolerance, and constitutes [sic] an attempt to defy policies outlined and defined by San Francisco State University's values" and claimed the College Republicans "pre-meditated the stomping of the

1  flags knowing it would offend some people and possibly incite violence." The resolution also
2  made clear that if OSPLD's investigation into the Rally resulted in a finding of wrongdoing by
3  College Republicans, ASI would immediately withdraw all of College Republicans' student
4  activity fee funding. A copy of *The Golden Gate* article, "ASI Passes Resolution Against Flag
5  Stomping" by Jason Shuffler, detailing ASI's unanimous resolution is attached as Exhibit G to
6  this Complaint.

7      54.    On information and belief, at all times relevant herein, Mr. Gallagher was a
8  college representative for ASI.

9      55.    On or about December 1, 2006, Defendant Greenwell, Director of OSPLD, sent
10  College Republican Carl Clark an e-mail stating that OSPLD completed its investigation and was
11  referring the matter to SOHP for a formal investigation of the charges. A copy of Defendant
12  Greenwell's December 1, 2006 e-mail to Carl Clark is attached as Exhibit H to this Complaint.

13     56.    As stated in the OSPLD policies outlined above, OSPLD refers a matter to SOHP
14  for a formal investigation and hearing when OSPLD believes the complaint is serious enough.
15  Defendant Greenwell made no effort to meet with Mr. Gallagher and representatives from
16  College Republicans to try to resolve the matter informally.

17     57.    On information and belief, other student organizations have not been subject to a
18  SOHP hearing for engaging in constitutionally protected expression.

19     58.    The Student Group Misconduct policy provides that ASI nominates two members
20  to sit on SOHP. In this instance, ASI nominated Joicy Serrano and Faith Cushenberry, both of
21  whom voted with ASI to condemn the Rally. These two students, in addition to the three other
22  members of SOHP, were appointed to determine the appropriate sanctions for College
23  Republicans.

24     59.    After Defendant Greenwell assigned the matter to SOHP, but before a formal
25  hearing, College Republicans and Messrs. Wolf and Downes met weekly during school to review
26  the charges leveled against them, campus policies, and legal documents, all in preparation of
27  their SOHP defense. They found it difficult to balance school, work and the ongoing
28  investigation.

60.    Despite these pressures and distractions, College Republicans held a "Corporate America Appreciation Day" on January 31, 2007, in the Malcolm X Plaza of SFSU.  During the event, Mr. Wolf presented a hand-made flag of Al Qaeda, which also bore the name "Allah." Mr. Wolf stepped on the flag in protest of Al Qaeda's terrorist activities and Defendants' "investigation" of his and College Republicans' free speech activities on October 17, 2006.

61.    College Republicans contacted the Foundation for Individual Rights in Education ("FIRE") and the American Civil Liberties Union of Northern California ("ACLU") for assistance with their defense of the investigation.  On January 23, 2007 and March 7, 2007, FIRE wrote Defendant Corrigan (with copies sent to Defendants Saffold and Greenwell) and asked him to terminate OSPLD and SOHP's investigation of College Republicans' Rally.  FIRE outlined that flag desecration in the context of political protest is clearly protected expressive activity and that any investigation into this activity violated College Republicans' First Amendment rights.  On March 7, 2007, the ACLU also wrote a letter to Defendant Corrigan (with a copy to Defendant Greenwell) outlining that College Republicans had engaged in protected expression.  Both of these letters put Defendants Corrigan, Saffold, and Greenwell on notice that their failure to terminate the investigation would result in a violation of College Republicans' constitutional rights.  Copies of the letters sent to Defendant Corrigan by FIRE and the ACLU are attached as Exhibit I to this Complaint.

62.    Defendants did not terminate the investigation.  Instead, SFSU's spokesperson, Ellen Griffin, told the *San Francisco Chronicle*:  "I don't believe the complaint is about the desecration of the flag.  I believe that the complaint is [about] the desecration of Allah."  A Copy of "S.F. State – Hecklers' paradise," by Debra J. Saunders is attached as Exhibit J to this Complaint.

63.    On or about March 9, 2007, SOHP conducted the formal hearing.  Mr. Gallagher and members of College Republicans presented testimony to the panel.  As the College Republicans presented their testimony, the SOHP members grew increasingly hostile.  The SOHP members refused to allow Mr. Wolf to articulate that the Rally was protected expression under United States Supreme Court precedent.

64.    On March 16, 2007, nearly five (5) months after the Rally, SOHP concluded its investigation of College Republicans, found no violation of the Student Code, and dismissed Mr. Gallagher's complaint.

### C.  The Effect of SFSU's Unconstitutional Actions and Speech Codes on Plaintiffs.

65.    Plaintiffs Wolf and Downes are a members of College Republicans, a politically-interested, expressive student organization which holds (and seeks to advance) opinions and beliefs regarding issues of race, gender, politics, religion and sexual orientation that may be objectionable or offensive to other students and sanctionable under applicable University speech codes.

66.    Defendants' investigation into Plaintiffs' protected activity had a chilling effect on Plaintiffs' rights to freely and openly engage in appropriate discussions of their theories, ideas, and political and/or religious beliefs.  By investigating Plaintiffs' Rally when the only alleged "wrongdoing" was the act of stepping on flags in political protest, Defendants violated rights guaranteed to Plaintiffs by the First and Fourteenth Amendments to the United States Constitution.  These rights are clearly established by well-known legal authority, and Defendants' violations were knowing, intentional, and without justification.

67.    Moreover, Defendants' investigation into Plaintiffs' expressive activities adversely affected Plaintiffs' academic, extracurricular and personal lives in multiple ways.

68.    Defendants' baseless investigation caused College Republicans to rethink and reduce its expressive activities on campus and to question whether engaging in free speech at SFSU is worth the risk of possible punishment.

69.    College Republicans has a reputation as a non-violent student organization at SFSU.  Defendants' investigation of the organization for inciting violence, creating a hostile environment and engaging in "incivility" on campus destroyed this reputation.

70.    Mr. Wolf spent over two hundred (200) hours during SFSU's spring 2007 semester defending College Republicans on campus and preparing for the SOHP hearing.  As a result of this constant distraction, Mr. Wolf received some of his worst grades as a SFSU student.

71.    Messrs. Wolf and Downes were harassed by fellow students during Defendants' investigation.  Wolf and Downes' reputations on campus have been tarnished due to the fact that the only student organization with which they identify on campus was threatened with removal and punishment.

72.    Much of the SFSU community presumed College Republicans were guilty as charged during the investigation and Defendants did nothing to correct this presumption and protect the reputations of Wolf and Downes.

73.    As an Episcopalian and non-violent person, Mr. Downes strives to respect other religious viewpoints; thus, Mr. Gallagher's complaint and Defendants' investigation placed a stigma of intolerance on him which he may never shed so long as he is a student at SFSU.  Mr. Downes fears for his safety on campus when he and College Republicans hold future events.  He fears that if he tries to exercise his free speech rights in the future, they will be permanently silenced by a university and student body that does not truly believe in free speech for all and equal protection under the law.

74.    The University's speech codes contained in the Student Code, the Sexual Harassment Policy, and the Student Organization Handbook have a chilling effect on Plaintiffs' rights to freely and openly engage in appropriate discussions of their theories, ideas and political and/or religious beliefs.  Plaintiffs have already been subjected to prosecution under the Student Code, and based on the University's reaction to their constitutionally protected expression, they realistically fear that prosecution under the other speech codes may occur at any time.

75.    By adopting these speech codes, Defendants have violated rights guaranteed to the Plaintiffs—and to all University students—by the First and Fourteenth Amendments to the United States Constitution.  These rights are clearly established by governing legal authority, and Defendants' violations are knowing, intentional and without justification.

76.    The speech policies outlined above are vague, overbroad, discriminate on the basis of religious and/or political viewpoint, interfere with the rights of free association, impose unconstitutional conditions on the receipt of state benefits, and constitute an illegal prior restraint on Plaintiffs' rights of free speech and assembly.  These speech policies are therefore facially

invalid and invalid as-applied under the Free Speech Clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. So long as these speech policies remain in effect, the Defendants are causing ongoing and irreparable harm to Plaintiffs and to every student and student organization at the University.

## FIRST CAUSE OF ACTION

### Violation of the Plaintiffs Right to Freedom of Expression and Due Process of Law (42 U.S.C. § 1983)—Speech Code

77.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

78.    By prohibiting "intimidation [and] harassment"; conduct that "has the purpose or effect of hindering performance by creating or allowing sexually intimidating, hostile, or offensive behavior to occur"; "behavior [that] is inconsistent with SF State goals, principles and policies;" and requiring students "to be civil to one another"; among other things, Defendants have conditioned the permissibility of speech on the subjective emotional experience of the listener and have enacted regulations that limit and prohibit speech without providing any objective guidelines by which Plaintiffs can guide their behavior.

79.    Defendants, acting under color of state law and according to policy and practice, have enacted regulations (including, but not limited to the Student Code, Sexual Harassment Policy, and Student Organization Handbook) that are both vague and overbroad and have therefore deprive Plaintiffs of their clearly established due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and their clearly established rights to freedom of speech and expression secured by the First Amendment to the United States Constitution.

80.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, irreparable injury that cannot be fully compensated by an award of money damages.

81.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and a preliminary and permanent injunction invalidating and restraining enforcement of the University's speech-restrictive Student Code of Conduct (Cal. Code Regs. tit. 5, § 41301), Sexual Harassment Policy (University Executive Order #95-18), Student Organization

FIRST AMENDED VERIFIED COMPLAINT – C-07-3542-WDB  - 16

Handbook, and other speech-restrictive policies. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of Plaintiffs' First Amendment Right
### to Freedom of Expression (42 U.S.C. § 1983)—Speech Code

82.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

83.    By prohibiting "intimidation [and] harassment"; conduct that "has the purpose or effect of hindering performance by creating or allowing sexually intimidating, hostile, or offensive behavior to occur"; "behavior [that] is inconsistent with SF State goals, principles and policies"; and requiring students "to be civil to one another"; among other things, Defendants, acting under color of state law and according to policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint and deprived Plaintiffs of their clearly established rights to freedom of speech and expression secured by the First Amendment to the Constitution of the United States.

84.    Because of Defendants' policies and actions, Plaintiffs have suffered, and continue to suffer, irreparable injury which cannot be fully compensated by an award of money damages.

85.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and a preliminary and permanent injunction invalidating and restraining enforcement of the University's speech restrictive Student Code of Conduct (Cal. Code Regs. tit. 5, § 41301), Sexual Harassment Policy (University Executive Order #95-18), Student Organization Handbook, and other speech-restrictive policies. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

### Unconstitutional Conditions (42 U.S.C. § 1983)

86.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

FIRST AMENDED VERIFIED COMPLAINT – C-07-3542-WDB  - 17

87.    By enacting the speech-restrictive regulations outlined above and by requiring every member of the University community, individual and organization, to mirror the University's values by being "civil," among other things, Defendants, acting under color of state law and according to policy and practice, have placed unconstitutional conditions on the receipt of state benefits—specifically, the benefit of a higher education at a state-supported University—and have therefore deprived the Plaintiffs of their clearly established rights to freedom of speech and expression secured by the First Amendment to the Constitution of the United States.

88.    Because of Defendants' policies and actions, Plaintiffs have suffered, and continue to suffer, irreparable injury which cannot be fully compensated by an award of money damages.

89.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and a preliminary and permanent injunction invalidating and restraining enforcement of the University's speech restrictive Student Code of Conduct (Cal. Code Regs. tit. 5, § 41301), Sexual Harassment Policy (University Executive Order #95-18), Student Organization Handbook, and other speech-restrictive policies.  Additionally, Plaintiffs are entitled to damages in an amount to be determined by the Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION

**Violation of Plaintiffs' First Amendment Rights
(42 U.S.C. § 1983)—Chilling Plaintiffs' Free Speech**

90.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

91.    By investigating and threatening Plaintiffs with discipline for an act of clearly constitutionally protected expression, among other things, Defendants, acting under color of state law and according to policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint, chilled Plaintiffs' free expression, and deprived Plaintiffs of their clearly established rights to freedom of speech and expression secured by the First Amendment to the Constitution of the United States.

FIRST AMENDED VERIFIED COMPLAINT – C-07-3542-WDB  - 18

92.    Because of Defendants' policies and actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm.  They, therefore, are entitled to an award of monetary damages, including punitive damages, and equitable relief.

93.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights.  Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

### First Amendment Retaliation
### (42 U.S.C. § 1983)—Investigating Plaintiffs' Free Speech

94.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

95.    By investigating and threatening Plaintiffs with discipline for an act of clearly constitutionally protected expression, among other things, Defendants, acting under color of state law and according to policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint, retaliated against Plaintiffs' because of their free expression, and deprived Plaintiffs of their clearly established rights to freedom of speech and expression secured by the First Amendment to the Constitution of the United States.

96.    Because of Defendants' policies and actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm.  They, therefore, are entitled to an award of monetary damages, including punitive damages, and equitable relief.

97.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights.  Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

### Violation of Plaintiffs' Fourteenth Amendment Right
### to Equal Protection of Law (42 U.S.C. § 1983)

98.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

99.    By investigating and threatening Plaintiffs with discipline for an act of clearly constitutionally protected expression, and treating Plaintiffs differently from similarly situated students and student organizations because they are conservative and because of their conservative political beliefs, among other things, Defendants, acting under color of state law and according to policy and practice, have engaged in actions that discriminate on the basis of political status and belief and have therefore deprived Plaintiffs of their clearly established equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution.

100.    Because of Defendants' policies and actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm.  They, therefore, are entitled to an award of monetary damages, including punitive damages, and equitable relief.

101.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their Fourteenth Amendment rights.  Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs College Republicans at San Francisco State University, Leigh Wolf and Trent Downes respectfully request that the Court enter judgment against Defendants Reed, Corrigan, Saffold, and Greenwell, and provide Plaintiffs the following relief:

A.    A declaratory judgment stating that Defendants' speech codes are facially and as-applied unconstitutional and violate the Plaintiffs' rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

B.    A preliminary and permanent injunction restraining enforcement of Defendants' unconstitutional speech codes;

C.    A declaratory judgment that Defendants' investigation of Plaintiffs' protected expression violated their First Amendment rights;

D.    An order requiring Defendants to expunge from school records all mention of the disciplinary investigation;

E.    Monetary damages for the illegal speech codes in an amount to be determined by the Court;

F.    Monetary damages in the amount of $5,000.00 for infringing upon Plaintiffs' exercise of their First Amendment rights;

G.    Monetary punitive damages (for Defendants' actions in their individual capacities) for infringing upon Plaintiffs' exercise of their First Amendment rights;

H.    Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law;

I.    All other further relief to which Plaintiffs may be entitled.


Respectfully submitted this 30th day of August, 2007,

/s/David J. Hacker
DAVID J. HACKER                          BENJAMIN W. BULL
California Bar No. 249272                 Arizona Bar No. 009940
Illinois Bar No. 6283022                 TRAVIS C. BARHAM*
Alliance Defense Fund                     Arizona Bar No. 024867
101 Parkshore Drive, Suite 100            Alliance Defense Fund
Folsom, California 95630                   15333 N. Pima Road, Suite 165
(916) 932-2850                            Scottsdale, Arizona 85260
(916) 932-2851—facsimile                  (480) 444-0020
dhacker@telladf.org                       (480) 444-0028—facsimile
                                          bbull@telladf.org
DAVID A. FRENCH*                          tbarham@telladf.org
Tennessee Bar No. 16692
Kentucky Bar No. 86986                    Attorneys for Plaintiffs
Alliance Defense Fund
12 Public Square                          *Pro hac vice admission
Columbia, Tennessee 38401
(931) 490-0591
(931) 490-7989—facsimile
dfrench@telladf.org

**FRCP 7.1 CORPORATE DISCLOSURE STATEMENT**

This Corporate Disclosure Statement is filed on behalf of College Republicans at San Francisco State University in compliance with Federal Rule of Civil Procedure 7.1.

College Republicans at San Francisco State University is an unincorporated student organization at San Francisco State University; it has no parent corporation and has not issued, nor will it issue, publicly held stock. Thus, no other corporation holds any stock in College Republicans at San Francisco State University.

A supplemental disclosure statement will be filed upon any change in the information provided herein.


Respectfully submitted this 30th day of August, 2007,


/s/David J. Hacker
DAVID J. HACKER
Attorney for Plaintiffs

**VERIFICATION OF COMPLAINT**

I, Leigh Wolf, a citizen of the United States and resident of the State of California, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed this 29 day of August, 2007, at San Francisco, California.

Leigh Wolf
President
College Republicans at San Francisco State University

FIRST AMENDED VERIFIED COMPLAINT – C-07-3542-WDB   - 23

**VERIFICATION OF COMPLAINT**

I, Trent Downes, a citizen of the United States and resident of the State of California, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed this 24 day of August, 2007, at San Francisco, California.

Trent Downes
Vice President
College Republicans at San Francisco State University