

5 CA ADC § 41301                                                Page 1

5 CCR s 41301
Cal. Admin. Code tit. 5, s 41301

**BARCLAYS OFFICIAL CALIFORNIA CODE OF
REGULATIONS
TITLE 5. EDUCATION
DIVISION 5. BOARD OF TRUSTEES OF THE
CALIFORNIA STATE UNIVERSITIES
CHAPTER 1. CALIFORNIA STATE UNIVERSITY
SUBCHAPTER 4. STUDENT AFFAIRS
ARTICLE 2. STUDENT CONDUCT**

This database is current through 6/22/07, Register
2007, No. 25

s 41301. Standards for Student Conduct.

The University is committed to maintaining a safe and
healthy living and learning environment for students,
faculty, and staff. Each member of the campus
community must choose behaviors that contribute toward
this end. Student behavior that is not consistent with the
Student Conduct Code is addressed through an
educational process that is designed to promote safety and
good citizenship and, when necessary, impose appropriate
consequences.

(a) Student Responsibilities

Students are expected to be good citizens and to engage in
responsible behaviors that reflect well upon their
university, to be civil to one another and to others in the
campus community, and to contribute positively to
student and university life.

(b) Unacceptable Student Behaviors

The following behavior is subject to disciplinary
sanctions:

(1) Dishonesty, including:

(A) Cheating, plagiarism, or other forms of
academic dishonesty that are intended to gain
unfair academic advantage.

(B) Furnishing false information to a University
official, faculty member, or campus office.

(C) Forgery, alteration, or misuse of a University
document, key, or identification instrument.

(D) Misrepresenting one's self to be an
authorized agent of the University or one of its
auxiliaries.

(2) Unauthorized entry into, presence in, use of, or
misuse of University property.

(3) Willful, material and substantial disruption or
obstruction of a University-related activity, or any
on-campus activity.

(4) Participating in an activity that substantially and
materially disrupts the normal operations of the
University, or infringes on the rights of members of
the University community.

(5) Willful, material and substantial obstruction of
the free flow of pedestrian or other traffic, on or
leading to campus property or an off-campus
University related activity.

(6) Disorderly, lewd, indecent, or obscene behavior at
a University related activity, or directed toward a
member of the University community.

(7) Conduct that threatens or endangers the health or
safety of any person within or related to the
University community, including physical abuse,
threats, intimidation, harassment, or sexual
misconduct.

(8) Hazing, or conspiracy to haze. Hazing is defined
as any method of initiation or pre-initiation into a
student organization or student body, whether or not
the organization or body is officially recognized by
an educational institution, which is likely to cause
serious bodily injury to any former, current, or
prospective student of any school, community
college, college, university or other educational
institution in this state (Penal Code 245.6), and in
addition, any act likely to cause physical harm,
personal degradation or disgrace resulting in physical
or mental harm, to any former, current, or prospective
student of any school, community college, college,
university or other educational institution. The term
"hazing" does not include customary athletic events
or school sanctioned events.

Neither the express or implied consent of a victim of

CRSFSUvR_First_Am_Compl_Ex_B_0022

5 CA ADC § 41301                                                                 Page 2

5 CCR s 41301
Cal. Admin. Code tit. 5, s 41301

hazing, nor the lack of active participation in a particular hazing incident is a defense. Apathy or acquiescence in the presence of hazing is not a neutral act, and is also a violation of this section.

(9) Use, possession, manufacture, or distribution of illegal drugs or drug-related paraphernalia, (except as expressly permitted by law and University regulations) or the misuse of legal pharmaceutical drugs.

(10) Use, possession, manufacture, or distribution of alcoholic beverages (except as expressly permitted by law and University regulations), or public intoxication while on campus or at a University related activity.

(11) Theft of property or services from the University community, or misappropriation of University resources.

(12) Unauthorized destruction, or damage to University property or other property in the University community.

(13) Possession or misuse of firearms or guns, replicas, ammunition, explosives, fireworks, knives, other weapons, or dangerous chemicals (without the prior authorization of the campus president) on campus or at a University related activity.

(14) Unauthorized recording, dissemination, or publication of academic presentations (including handwritten notes) for a commercial purpose.

(15) Misuse of computer facilities or resources, including:

(A) Unauthorized entry into a file, for any purpose.

(B) Unauthorized transfer of a file.

(C) Use of another's identification or password.

(D) Use of computing facilities, campus network, or other resources to interfere with the work of another member of the University community.

(E) Use of computing facilities and resources to send obscene or intimidating and abusive messages.

(F) Use of computing facilities and resources to interfere with normal University operations.

(G) Use of computing facilities and resources in violation of copyright laws.

(H) Violation of a campus computer use policy.

(16) Violation of any published University policy, rule, regulation or presidential order.

(17) Failure to comply with directions or, or interference with, any University official or any public safety officer while acting in the performance of his/her duties.

(18) Any act chargeable as a violation of a federal, state, or local law that poses a substantial threat to the safety or well being of members of the University community, to property within the University community or poses a significant threat of disruption or interference with University operations.

(19) Violation of the Student Conduct Procedures, including:

(A) Falsification, distortion, or misrepresentation of information related to a student discipline matter.

(B) Disruption or interference with the orderly progress of a student discipline proceeding.

(C) Initiation of a student discipline proceeding in bad faith.

(D) Attempting to discourage another from participating in the student discipline matter.

(E) Attempting to influence the impartiality of any participant in a student discipline matter.

(F) Verbal or physical harassment or intimidation of any participant in a student discipline matter.

(G) Failure to comply with the sanction(s) imposed under a student discipline proceeding.

(20) Encouraging, permitting, or assisting another to do any act that could subject him or her to discipline.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CRSFSUvR_First_Am_Compl_Ex_B_0023**

5 CA ADC § 41301                                                    Page 3

5 CCR s 41301
Cal. Admin. Code tit. 5, s 41301

(c) Procedures for Enforcing This Code

The Chancellor shall adopt procedures to ensure students are afforded appropriate notice and an opportunity to be heard before the University imposes any sanction for a violation of the Student Conduct Code.

(d) Application of This Code

Sanctions for the conduct listed above can be imposed on applicants, enrolled students, students between academic terms, graduates awaiting degrees, and students who withdraw from school while a disciplinary matter is pending. Conduct that threatens the safety or security of the campus community, or substantially disrupts the functions or operation of the University is within the jurisdiction of this Article regardless of whether it occurs on or off campus. Nothing in this Code may conflict with Education Code Section 66301 that prohibits disciplinary action against students based on behavior protected by the First Amendment.

Note: Authority cited: Sections 66017, 66452, 66600, 69810, 89030 and 89035, Education Code. Reference: Sections 66450, 69813 et seq. and 89030, Education Code; and Section 245.6, Penal Code.

```
                          HISTORY


1. Amendment of section and NOTEfiled 4-29-77; effective thirtieth day
thereafter (Register 77, No. 18). For prior history, see Register 73, No.
15.


2. Renumbering of Article 1.1 (Sections 41301-41304) to Article 2 and amendment
of NOTEfiled 3-19-82; effective thirtieth day thereafter (Register 82, No.
12).


3. Amendment of subsection (l), new subsections (n)-(n)(3), subsection
relettering, amendment of newly designated subsections (o)(1) and (o)(2)(A) and
amendment ofNote filed 2-2-2004; operative 2-2-2004. Submitted to OAL for
printing only pursuant to Education Code section 89030.1 (Register 2004,
No. 8).


4. Amendment of subsection (d), new subsection (o)(6) and amendment ofNote
filed 7-19-2004; operative 7-19-2004. Submitted to OAL for printing only
pursuant to Education Code section 89030.1 (Register 2004, No. 36).


5. Amendment of article 2 heading and repealer and new section filed 11-17-
2005; operative 11-17-2005. Submitted to OAL for printing only pursuant to
Education Code section 89030.1 (Register 2005, No. 52).


6. Amendment of subsection (b)(8) filed 3-19-2007; operative 3-19-2007 pursuant
to Education Code section 89030.1. Submitted to OAL for printing only
pursuant to Government Code section 11343.8 (Register 2007, No. 12).
```

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 CA ADC § 41301                                                                Page 4

5 CCR s 41301
Cal. Admin. Code tit. 5, s 41301


7. Amendment of Note filed 4-6-2007; operative 4-6-2007 pursuant to Education Code section 89030.1. Submitted to OAL for printing only pursuant to Government Code section 11343.8 (Register 2007, No. 14).


5 CCR s 41301, **5 CA ADC** s **41301**


1CAC


**5 CA ADC** s **41301**
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CRSFSUvR_First_Am_Compl_Ex_B_0025**

# San Francisco State University Bulletin



The on-line versions of SFSU *Bulletins* listed below are derived from the printed versions so that students with "*Bulletin* rights" to earlier *Bulletins* can have access to the appropriate information. Students are advised to check with their advisers for help in determining *Bulletin* rights.

When changes are approved after the printed version has gone to press, they will be published as updates with links shown on this page.

**Search the 2006-07 Bulletin**

## 2006-07 Bulletin Table of Contents

**Preface**
**How To Use This Bulletin**
**The California State University**
**San Francisco State University**
**The University Curriculum: Index of Academic Programs**
**Degree Program Summary**
**University Calendar**
**SFSU Administrative Officers**
**College Profiles**
**Undergraduate Admissions**
**Student Fees and Financial Aid**
**University Policies and Procedures**
**Undergraduate Education**
**Graduate Admissions and Graduate Studies**
**University Resources and Support Services**
**Course Descriptions**
    Course Descriptions, Symbols, and Terms
**Directory of Instructional Faculty, Academic Administrators, Librarians, and Student Services Professionals**
    Emeritus/Emerita Faculty
**Supplemental Regulations and Procedures**
    Requests for Exceptions to Academic Policies

Older (Archived) Versions of the Bulletin



SFSU    Bulletin    Search

Last modified June 08, 2007 by bulletin@sfsu.edu

CRSFSUvR_First_Am_Compl_Ex_C_0026

# REGULATIONS AND PROCEDURES - ADDITIONAL

Information in this section is presented under the following headings:

**About this Catalog**
Changes in Rules and Policies

**Additional Information for Students**
Faculty Statement Of Course Requirements
Student Complaints about Actions Taken on Behalf of San Francisco State University
Grievance Procedures for Students
Opportunities for Prospective Teachers
Opportunities for Athletes
Student Success and Graduation Rates

**Privacy Rights of Students in Education Records**
Requirement and Use of Social Security Number
University Identification Number
Career Placement: Data On Former Students

**Cost Of Education**
Average Annual Cost of Education and Sources of Funds per Full-Time Equivalent Student
Availability of Institutional and Financial Assistance Information
Procedure for the Establishment or Abolishment of a Student Body Fee

**Residence**
Determination of Residence for Nonresident Tuition Purposes
Immigration Requirements For Licensure

**Nondiscrimination Policy**
HIV/AIDS Policy

**Campus Safety And Security**
Computer Security
What You Need To Know About Drugs And Alcohol At San Francisco State University
Sexual Assault
Sexual Harassment Policy And Procedures
Student Conduct

**Federal Military Selective Service**

# ABOUT THIS CATALOG

### CHANGES IN RULES AND POLICIES

CRSFSUvR_First_Am_Compl_Ex_C_0027

Although every effort has been made to assure the accuracy of the information in this catalog, students and others who use this catalog should note that laws, rules, and policies change from time to time and that these changes may alter the information contained in this publication. Changes may come in the form of statutes enacted by the Legislature, rules and policies adopted by the Board of Trustees of the California State University, by the chancellor or designee of the California State University, or by the president or designee of the campus. It is not possible in a publication of this size to include all of the rules, policies, and other information that pertain to students, the institution, and the California State University. More current or complete information may be obtained from the appropriate department, college, or administrative office.

Nothing in this catalog shall be construed as, operate as, or have the effect of an abridgement or a limitation of any rights, powers, or privileges of the Board of Trustees of the California State University, the chancellor of the California State University, or the president of the campus. The Trustees, the chancellor, and the president are authorized by law to adopt, amend, or repeal rules and policies which apply to students. This catalog does not constitute a contract or the terms and conditions of a contract between the student and the institution or the California State University. The relationship of the student to the institution is one governed by statute, rules, and policy adopted by the Legislature, the Trustees, the chancellor, the president, and their duly authorized designees.

Additional Information for Students

## FACULTY STATEMENT OF COURSE REQUIREMENTS

Because students and their instructors share a common goal of a semester of learning in the best possible environment, students shall receive in writing, in the first or second meeting of a class:

- a statement of scope, content, and expected learning outcomes of the course;
- a list of texts and materials to be used throughout the course, including any additional fees or costs;
- a description of grading policy and practices;
- a description of teaching style (for example, fixed outline, lecture, discussion, class-directed, or evolutionary);
- a description of any substantive departure from the content published in the university Bulletin or Class Schedule.

Should budgetary demands require it, one posted document will suffice. During the semester, students shall be notified in writing of any substantive changes in the faculty statement of course requirements.

## STUDENT COMPLAINTS ABOUT ACTIONS TAKEN ON BEHALF OF SAN FRANCISCO STATE UNIVERSITY

Information concerning grievance procedures for students who feel aggrieved in their relationships with the university; its policies, practices, and procedures; or its faculty and staff may be obtained from the following persons. Undergraduate students should contact the associate dean, Undergraduate Studies, in the Advising Center, (415) 338-2841. Graduate students should contact the dean of the Division of Graduate Studies, in the Graduate Studies Office, (415) 338-2232. Evelyn Hooker, special assistant to the dean of students, is also available in the Dean of Students Office, (415) 338-6053.

## GRIEVANCE PROCEDURES, STUDENT

1.1 GENERAL PROVISIONS. These procedures are to be used for the processing of student complaints about actions (with the exception of grade appeals and admission decisions) taken on behalf of San Francisco State University.

CRSFSUvR_First_Am_Compl_Ex_C_0028

A grievance must be filed within six months of the date the wrong occurred, regardless of the date of discovery. Formal procedures shall normally be initiated no later than five weeks before the first day of finals in the semester to allow sufficient time for a possible hearing. Compliance with this limitation on filing shall be determined by the coordinator of student grievance, and that determination shall be final. Grievances not meeting this time limit, complaints and grievances previously resolved by informal means, and grievances arising out of previous grievances shall not be processed under these procedures.

A student may not utilize these procedures if a remedy is being sought by any other means for all or any part of the matter grieved.

1.2 DEFINITIONS

1.2.1. "Attorney" means a person admitted to the practice of law before any state or federal court.

1.2.2. "Grievance" means a written complaint by a student arising from an action taken on behalf of San Francisco State University by one or more members of the faculty, administration, or staff which allegedly affects the student adversely and which allegedly is either unreasonable or violates a university regulation or policy.

1.2.3. "Grievant" means a student presently enrolled at San Francisco State University or one who has been enrolled there within the preceding six months who has filed a grievance.

1.2.4. "Instructional day(s)" means any day(s) on which regularly scheduled classes or examinations are held at San Francisco State University.

1.2.5. "President" means the president of San Francisco State University or any person designated by the President.

1.2.6. "Respondent" means the university administrator, faculty, or staff member (or designee as determined by the coordinator) most directly responsible for the alleged official action(s) which caused the complaint.

1.2.7. "Shall" is mandatory and "may" is permissive.

1.3 INFORMAL PROCEDURES

1.3.1. Before a student may invoke the formal grievance procedures specified in Section 1.4, the following requirements must be satisfied:

1. The student shall meet first with the grievance coordinator and then with the San Francisco State University administrator, faculty, or staff member whom the student feels is most directly responsible for the official action(s) which caused the complaint and attempt to settle the matter informally. If, in the opinion of the grievance coordinator, the person chosen by the student is not the person most directly responsible for the official action(s) which caused the complaint, or is not available, in the interest of reaching an informal settlement the coordinator may require that the student additionally meet with the San Francisco State University representative whom the coordinator feels is most directly responsible. The coordinator has the authority to deviate from the following procedures if circumstances dictate.
2. If, after satisfying Section a. (above), the matter remains unsettled to the satisfaction of the student, the student shall meet with the appropriate unit head and attempt to settle the matter informally.
3. If, after satisfying Sections a. and b. (above), the matter remains unsettled to the satisfaction of the student, the student shall discuss the matter with the appropriate supervising administrator. The appropriate person for these purposes shall be determined by the coordinator.
4. If the supervising administrator is unable to informally settle the matter to the satisfaction of the student, the student may then invoke the formal grievance procedures in Section 1.4 (below).

CRSFSUvR_First_Am_Compl_Ex_C_0029

## 1.4 FORMAL PROCEDURES

1.4.1. At any point in the proceedings, the grievant may move to withdraw the grievance or accept an informal solution.

1.4.2. Initial Steps

1. To invoke grievance procedures, the grievant shall first consult with the coordinator concerning all aspects of pursuing a grievance, including these procedures. To initiate a grievance, the grievant shall deliver the required written complaint to the coordinator who shall transmit sealed copies to the respondent and the respondent's immediate supervisor. This grievance shall specify the following:
   1. That it is a grievance;
   2. The name and current address and telephone number of the grievant;
   3. The name and position of the campus office or employee whom the grievant feels is most directly involved or responsible for the alleged actions which prompted the grievance;
   4. The wrong alleged, the action from which the alleged wrong arises, and the dates of the occurrence, and discovery by the grievant, of that action;
   5. The remedy sought; i.e., what the grievant hopes to attain as the result of the grievance.
2. The coordinator shall inform grievant and respondent of their rights under these procedures and shall initiate the steps necessary for selection of the Grievance Hearing Committee (committee). The coordinator will also notify all other concerned parties that a grievance has been instituted. The selection of the committee shall normally occur within ten instructional days after the coordinator has determined that all informal means for resolving the complaint have been exhausted. The coordinator shall be available to both the grievant and the respondent for instruction in or interpretation of these procedures. Interpretations of specific provisions of the grievance procedures by the coordinator shall be final for all purposes.
3. The respondent shall provide the grievant with a written answer to the grievance, with a copy to the coordinator within five instructional days of receipt of the grievance by the respondent.
4. The respondent and the grievant shall notify the coordinator in writing prior to the drawing for the hearing committee if an open hearing is desired.
5. The grievant and the respondent may each name a representative from the campus to accompany them in the grievance hearing, except that those who are involved in the informal attempts to resolve the grievance may not serve as a representative. The name of the representative must be given to the coordinator prior to the grievance hearing. Normally, attorneys may not appear in the proceedings. However, if either the grievant or the respondent is an attorney, the other party may be represented by an attorney.

1.4.3. Selection of the Grievance Hearing Committee

1. The coordinator shall notify the grievant and the respondent in advance of the date, time and place of the selection of the committee. Both parties may be present at this meeting with or without a representative. At the selection, only the opposing parties and their representatives, if any, and the coordinator shall be present.
2. The committee shall consist of three members; one student, one faculty member and one professional staff member. Those who have first-hand information on, or direct involvement with, the subject of the grievance shall be ineligible to serve on the committee. Determinations of eligibility for the committee shall be made by the coordinator and shall be final for all purposes.
3. The coordinator shall draw three names from the student list. This list will be composed of an annual panel of 40 students willing to serve, selected by the coordinator from 100 students drawn at random from the entire student body.
4. The coordinator shall draw three names from lists composed of faculty, staff and students according to the selection procedures for their respective grievance panels.
5. At the drawing, the coordinator shall provide an opportunity for both the grievant and the respondent to

excuse without cause one person from each group (students, faculty, staff). If more than one name in any group is left, the coordinator will select one name from each group.

6. Similarly, an opportunity shall be provided to both the grievant and the respondent to request that any of the persons drawn be excused for cause. The coordinator shall grant or deny such requests, and these decisions shall be final for all purposes. Those excused shall be replaced by the same method as the original selections.

7. Faculty, staff, or students unable to serve shall be replaced by the same method as the original selections.

8. Hearing shall be closed unless both parties request an open hearing. Whether the hearing will be open will be announced by the coordinator at the drawing for the hearing committee.


1.4.4. Grievance Hearing Procedures

1. Formal grievance hearings shall be held only during the fall and spring semesters unless both the grievant and the respondent, as well as the committee, can be present and witnesses, if any, are available. If the grievance was filed later than five weeks before the first day of finals, the hearing may be held early in the following semester.

2. When the committee has been selected, the coordinator shall inform all parties to the grievance of the time, date and location of the hearing, as well as decisions on other matters which affect the hearings.

3. The committee shall normally convene within ten instructional days of its selection. The committee shall normally be convened by the coordinator of student grievance one-half hour before the hearing to select from among its own members a chair and to discuss hearing procedures.

4. Two of the three members of the committee shall constitute a quorum.

5. At a closed hearing, attendance shall be limited to the grievant and representative, the respondent and representative, witnesses while giving evidence, the coordinator, and members of the committee. The content of the proceedings in a grievance hearing closed to the public and the committee recommendations resulting there from shall not be made public by any participant in the hearing. In the event these matters should become public, however, such public statements as are appropriate may be made by the university. This policy of confidentiality shall not preclude discussion of the case with others as necessary to prepare for the hearing, nor shall it preclude subsequent action following appropriate procedures on the basis of evidence developed at the hearing. At an open hearing, all witnesses except for the grievant, the respondent, and their representatives, if any, shall be excluded except while giving evidence. The chair has the authority to close an open hearing at any time if, in the judgment of the chair, the conduct of the audience or the participants is so disruptive that the only viable means of conducting a fair session is through a closed hearing.

6. Subject to 1.h. (below), both the grievant and the respondent may offer evidence, with the grievant doing so first.

7. Within the guidelines of these procedures, and subject to overrule by the committee, the chair may establish necessary rules for the conduct of the hearing and decide procedural issues presented.

8. The hearing shall not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted, if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, except that evidence which is merely repetitious or cumulative shall be excluded.

9. Both parties or their representatives may make an opening statement. The grievant has the burden of persuasion and shall demonstrate by a preponderance of the evidence that the grievant was directly wronged by the action that gave rise to the grievance. After the opening statements, if any, both parties shall answer questions the committee may have regarding the case. Both parties and their representatives may then question each other, as well as all witnesses concerning any aspect of the grievance. Both parties and their representatives shall have access to all documents presented to the committee and may question the other party about those documents.

10. Both parties or their representatives may present a closing statement with the grievant going first and then being allowed the final word. Any closing statements shall be limited to the evidence presented. There shall be no questioning of the parties during or after the closing statements.

11. By majority vote of those present and based only on evidence accepted at the hearing, the committee shall prepare and sign a written report containing findings of fact and recommendations respecting the

CRSFSUvR_First_Am_Compl_Ex_C_0031

grievance. In the event of a tie vote, two reports shall go to the appropriate Vice President. All non-committee members shall be excluded from the deliberations. The committee shall not find for the grievant unless it finds that an official action was taken which was not generally or specifically authorized, or which was unreasonable; i.e., no reasonable person would have taken the action under the circumstances.

12. The committee report, along with the grievance and any written response thereto, shall be presented to the appropriate Vice President for decision, usually within five instructional days of the end of the hearing.

13. Normally, within five instructional days following receipt of the committee report, the Vice President shall furnish a written decision on the grievance to the grievant, the respondent, the coordinator, and to the committee.

14. Decisions not implementing the recommendation of the committee shall contain reasons for that lack of implementation.

## 1.5 APPEAL PROCEDURES

1.5.1. Either the grievant or the respondent may appeal the decision of the Vice President.

1.5.2. The party wishing to appeal the decision must deliver a written appeal to the President with copies to the opposing party and to the coordinator. This appeal must be so delivered within five instructional days from the date of the decision of the Vice President.

1.5.3. The appeal shall specify the following:

1. that it is an appeal;
2. the name and current address and telephone number of the appellant;
3. the reasons for the appeal and the fact supporting those reasons.

1.5.4. Within five instructional days of receipt of a copy of the appeal, the coordinator shall cause all grievance materials to be forwarded to the President.

1.5.5. Within five instructional days of receipt of the appeal, the other party may deliver a written response to the appeal to the President, with copies to the appellant and to the coordinator, setting forth the reasons why the appeal should be denied and any facts supporting those reasons.

1.5.6. Normally, within fifteen instructional days of receipt of the appeal, the President shall render a decision thereon which shall be final for all purposes.

1.6 It shall be the responsibility of the coordinator to assist in the implementation of grievance decisions.

## OPPORTUNITIES FOR PROSPECTIVE TEACHERS

Information concerning teacher preparation programs at San Francisco State University, including the pass rate on teacher certification examinations, may be obtained from the Teacher Preparation Center in the College of Education, Burk Hall 244.

## OPPORTUNITIES FOR ATHLETES

Information concerning athletic opportunities available to male and female students and the financial resources and personnel that SFSU dedicates to its men's and women's teams may be obtained from Dr. Michael Simpson, director, Athletics Program, GYM 202, (415) 338-2218.

## STUDENT SUCCESS AND GRADUATION RATES

CRSFSUvR_First_Am_Compl_Ex_C_0032

Information regarding student retention and graduation rates at SFSU and, if available, the number and
percentages of students completing the program in which the student is enrolled or has expressed interest may
be obtained from the director of university and budget planning, (415) 338-6191.

# PRIVACY RIGHTS OF STUDENTS IN EDUCATION RECORDS

The federal Family Education Rights and Privacy Act of 1974 (20 U.S.C. 1232g) and regulations adopted
thereunder (34 C.F.R. 99) set out requirements designed to protect students' privacy in their records maintained
by the campus. The statute and regulations govern access to certain student records maintained by the campus,
and the release of such records. The law provides that the campus must give students access to records directly
related to the student, and must also provide opportunity for a hearing to challenge such records, if the student
claims they are inaccurate, misleading, or otherwise inappropriate. The right to a hearing under this law does
not include any right to challenge the appropriateness of a grade determined by the instructor. The law generally
requires the institution to receive a student's written consent before releasing personally identifiable data about
the student. The institution has adopted a set of policies and procedures governing implementation of the
statutes and the regulations. Copies of these policies and procedures may be obtained on the web at
www.sfsu.edu/~admisrec/reg/ferpa.html or in the Registrar's Office. Among the types of information included
in the campus statement of policies and procedures are: (1) the types of student records maintained and the
information they contain; (2) the official responsible for maintaining each type of record; (3) the location of
access lists indicating persons requesting or receiving information from the record; (4) policies for reviewing
and expunging records; (5) student access rights to their records; (6) the procedures for challenging the content
of student records; (7) the cost to be charged for reproducing copies of records; and (8) the right of the student
to file a complaint with the Department of Education. The Department of Education has established an office
and review board to investigate complaints and adjudicate violations. The designated office is: Family Policy
Compliance Office, U.S. Department of Education, Washington, D.C. 20202-4605.

The campus is authorized under the Act to release "directory information" concerning students. San Francisco
State University policy is more restrictive than the Federal and State Act and limits directory information to the
student's name, current enrollment status (e.g., undergraduate or graduate, full-time or part-time), class level,
major, degrees earned, semesters of enrollment, and extra-curricular achievements. The above designated
information is subject to release by the campus at any time unless the campus has received prior written
objection from the student specifying what information the student requests not be released. Written objections
should be sent to the registrar.

A student can request that non-directory information (including address) be released to agencies of the State of
California when requested for employment recruitment purposes under the provisions of Assembly Bill 771
(Chacon). Written requests to release non-directory information should be directed to the registrar. Forms are
available for this purpose at the One Stop Student Services Center.

The campus is authorized to provide access to student records to campus officials and employees who have
legitimate educational interests in such access. These persons have responsibilities in the campus' academic,
administrative, or service functions and have reason for accessing student records associated with their campus
or other related academic responsibilities. Student records may also be disclosed to other persons or
organizations under certain conditions (e.g., as part of accreditation or program evaluation; in response to a
court order or subpoena; in connection with financial aid; and to other institutions to which the student is
transferring).

In addition to those safeguards provided by the Family Education Rights and Privacy Act of 1974, the
university's policy allows the release of personally identifiable information to others (except to verify student
status) *only* with the student's prior consent or in the case of extreme emergency or where there is clear and
imminent danger to the student, to others, or to society.

## REQUIREMENT AND USE OF SOCIAL SECURITY NUMBER

Applicants are required to include their correct social security numbers in designated places on applications for admission pursuant to the authority contained in Section 41201 , Title 5, California Code of Regulations, and Section 6109 of the Internal Revenue Code (26 U.S.C. 6109). The university uses the social security number to identify students and their records including identification for purposes of financial aid eligibility and disbursement and the repayment of financial aid and other debts payable to the institution. Also, the Internal Revenue Service requires the university to file information returns that include the student's social security number and other information such as the amount paid for qualified tuition, related expenses, and interest on educational loans. This information is used by the IRS to help determine whether a student, or a person claiming a student as a dependent, may take a credit or deduction to reduce federal income taxes. The SSN is also required by the Franchise Tax Board for collection of returned checks.

## UNIVERSITY IDENTIFICATION NUMBER

For other records and services, the university uses an assigned University Identification Number (UIN). Students are required to write their UIN on university petitions and forms as well as personal checks submitted for any payment to the University. Payment by personal check is consent by the student for the University to write the student's UIN on the check if it is not referenced.

See the SFSU UIN Policy on the web at http://www.sfsu.edu/~admisrec/reg/ferpa.html

## CAREER PLACEMENT: DATA ON FORMER STUDENTS

The campus may furnish, upon request, information about the employment of students who graduate from programs or courses of study preparing students for a particular career field. Any such data provided must be in a form that does not allow for the identification of any individual student. This information includes data concerning the average starting salary and the percentage of previously enrolled students who obtained employment. The information may include data collected from either graduates of the campus or graduates of all campuses in the California State University.

# COST OF EDUCATION

## AVERAGE SUPPORT COST PER FULL-TIME EQUIVALENT STUDENT AND SOURCES OF FUNDS

The total support cost per full-time equivalent student includes the expenditures for current operations, including payments made to students in the form of financial aid, and all fully reimbursed programs contained in state appropriations. The average support cost is determined by dividing the total cost by the number of full-time equivalent students (FTES). The total CSU 2006/07 final budget amounts were $2,788,910,000 from state General Fund appropriations (not including capital outlay funding), $1,016,931,000 from State University Fee (SUF) revenue, $403,278,000 from other fee revenues and reimbursements for a total of $4,209,119,000. The number of projected 2006/07 full-time equivalent students (FTES) is 348,262. The number of full-time equivalent students is determined by dividing the total academic student load by 15 units per term (the figure used here to define a full-time student's academic load).

The 2006/07 average support cost per full-time equivalent student based on General Fund appropriation and State University Fee revenue only is $10,928 and when including all sources as indicated below is $12,086. Of this amount, the average student fee support per FTE is $3,551, which includes all fee revenue in the CSU Operating Fund (e.g. State University Fee, nonresident tuition, application fees, miscellaneous course fees).

**Average Cost**

| 2006/07 | Amount | Average Cost per FTE Student | Percentage |
|---|---|---|---|
| Total Support Cost | $4,209,119,000 | $12,086 | 100% |
| • State Appropriation | 2,788,910,000 | 8,008 | 66% |
| • Student Fee Support[1] | 1,016,931,000 | 2,920 | 24% |
| • Other Income & Reimbursements [2] | 403,278,000 | 1,158 | 10% |

1. Student fee support represents campus 2006/07 final budget submitted State University Fee revenue.

2. The other income and reimbursements represent campus other fee 2006/07 final budget revenues submitted, as well as reimbursements in the CSU Operating Fund.

The average CSU 2006/07 academic year, resident, undergraduate student fees required to apply to, enroll in, or attend the university is $3,199. However, the costs paid by individual students will vary depending on campus, program, and whether a student is part-time, full-time, resident, or nonresident.

## AVAILABILITY OF INSTITUTIONAL AND FINANCIAL ASSISTANCE INFORMATION

The following information concerning student financial assistance may be obtained from the Office of Student Financial Aid, (415) . 338-7000.

- A description of the federal, state, institutional, local, and private student financial assistance programs available to students who enroll at San Francisco State University.
- For each aid program, a description of procedures and forms by which students apply for assistance, student eligibility requirements, criteria for selecting recipients from the group of eligible applicants, and criteria for determining the amount of a student's award.
- A description of the rights and responsibilities of students receiving financial assistance, including federal Title IV student assistance programs, and criteria for continued student eligibility under each program.
- The satisfactory academic progress standards that students must maintain for the purpose of receiving financial assistance and criteria by which a student who has failed to maintain satisfactory progress may reestablish eligibility for financial assistance.
- The method by which financial assistance disbursements are made to students and the frequency of those disbursements.
- The terms of any loan received as part of the student's financial aid package, a sample loan repayment schedule, and the necessity for repaying loans.
- The general conditions and terms applicable to any employment provided as part of the student's financial aid package.
- The responsibility of SFSU for providing and collecting exit counseling information for all student borrowers under the federal student loan programs.
- The terms and conditions for deferral of loan payments for qualifying service under the Peace Corps Act, the Domestic Volunteer Service Act of 1973, or comparable volunteer community service.

## PROCEDURE FOR THE ESTABLISHMENT OR ABOLISHMENT OF A STUDENT BODY FEE

The law governing the California State University provides that fees defined as mandatory, such as a *student body association fee* and a *student body center fee*, may be established. A *student body association fee* must be established upon a favorable vote of two-thirds of the students voting in an election held for this purpose (Education Code, Section 89300). A *student body center fee* may be established only after a fee referendum is

CRSFSUvR_First_Am_Compl_Ex_C_0035

held which approves by a two-thirds favorable vote the establishment of the fee (Education Code, Section 89304). The *student body fee* was established at [name of institution] by student referendum in [date]. The campus president may adjust the *student body association fee* only after the fee adjustment has been approved by a majority of students voting in a referendum established for that purpose (Education Code, Section 89300). The required fee shall be subject to referendum at any time upon the presentation of a petition to the campus president containing the signatures of 10 percent of the regularly enrolled students at the University. Once bonds are issued, authority to set and adjust *student body center fees* is governed by provisions of the State University Revenue Bond Act of 1947, including, but not limited to, Education Code, sections 90012, 90027, and 90068. *Student body association fees* support a variety of cultural and recreational programs, childcare centers, and special student support programs.

The process to establish and adjust other campus-based mandatory fees requires consideration by the campus fee advisory committee and a student referendum. The campus president may use alternate consultation mechanisms if he/she determines that a referendum is not the best mechanism to achieve appropriate and meaningful consultation. Results of the referendum and the fee committee review are advisory to the campus president. The president may also request the chancellor to establish the mandatory fee.

For more information or questions , please contact Colleen Nickles, Senior Director of Financing & Treasury in the CSU Chancellor's Office, at (562) 981-4579.

# RESIDENCE

## DETERMINATION OF RESIDENCE FOR NONRESIDENT TUITION PURPOSES

The law governing residence determination for tuition purposes at The California State University is California Education Code Sections 68000-68090, 68120-68134, and 89705-89707.5, and in Title 5 of the California Code of Regulations, Subchapter 5, Article 4, Sections 41900-41916. This material can be viewed on the Internet by accessing the California State University's web site at www.calstate.edu/GC/resources.shtml.

The campus undergraduate and graduate admissions offices are responsible for determining the residence status of all new and returning students based on the Application for Admission, Residency Questionnaire, Reclassification Request Form, and, as necessary, other evidence furnished by the student. A student who fails to submit adequate information to establish eligibility for resident classification will be classified as a nonresident.

Generally, establishing California residence for tuition purposes requires a combination of physical presence and intent to remain indefinitely. An adult who, at least one full year prior to the residence determination date for the term in which enrollment is contemplated, can demonstrate both physical presence in the state combined with evidence of intent to remain in California indefinitely may establish California residence for tuition purposes. A minor normally derives residence from the parent(s) they reside with or most recently resided with.

Evidence demonstrating intent may vary from case to case but will include, and is not limited to, the absence of residential ties to any other state, California voter registration and voting in California elections, maintaining California vehicle registration and driver's license, maintaining active California bank accounts, filing California income tax returns and listing a California address on federal tax returns, owning residential property or occupying or renting an apartment where permanent belongings are kept, maintaining active memberships in California professional or social organizations, and maintaining a permanent military address and home of record in California.

Non-citizens establish residence in the same manner as citizens, unless precluded by the Immigration and Nationality Act from establishing domicile in the United States.

Exceptions to the general residence requirements are contained in *California Education Code* Sections 68070-68084 and *California Code of Regulations*, *Title 5*, Subchapter 5, Article 4, Sections 41906-41906.5, and include, but are not limited to, members of the military and their dependents, certain credentialed employees of school districts, and most students who have attended three years of high school in California and graduated or attained the equivalent. Whether an exception applies to a particular student cannot be determined before the submission of an application for admission and, as necessary, additional supporting documentation. Because neither campus nor Chancellor's Office staff may give advice on the application of these laws, applicants are strongly urged to review the material for themselves and consult with a legal adviser.

Nonresident students seeking reclassification are required to complete a supplemental questionnaire including questions concerning their financial dependence, which will be considered along with physical presence and intent in determining reclassification.

The residence determination dates are set each term. They are:

| **Quarter Term Campuses** | | **Semester Term Campuses** | |
|---|---|---|---|
| Fall | September 20 | Fall | September 20 |
| Winter | January 5 | Winter* | January 5 |
| Spring | April 1 | Spring | January 25 |
| Summer | July 1 | Summer | June 1 |

*Applies only to winter term at California State University, Stanislaus.

The residence determination dates for the four stages of CalState TEACH are as follows:

| Stage 1 | September 20 |
|---|---|
| Stage 2 | January 5 |
| Stage 3 | June 1 |
| Stage 4 | September 20 |

Students classified as non-residents may appeal a final campus decision within 120 days of notification by the campus. A campus residence classification appeal must be in writing and submitted to:

The California State University
Office of General Counsel
401 Golden Shore, 4th Floor
Long Beach, CA 90802-4210

The Office of General Counsel can either decide the appeal or send the matter back to the campus for further review.

Students incorrectly classified as residents or incorrectly granted an exception from nonresident tuition are subject to reclassification as nonresidents and payment of nonresident tuition in arrears. If incorrect classification results from false or concealed facts, the student is subject to discipline pursuant to Section 41301 of Title 5 of the California Code of Regulations.

Resident students who become nonresidents or who no longer meet the criteria for an exception must immediately notify the Admissions Office. Applications for a change in classification with respect to a previous term are not accepted.

Changes may have been made in the rate of nonresident tuition and in the statutes and regulations governing residence for tuition purposes in California between the time this information is published and the relevant

residence determination date. Students are urged to review the statutes and regulations stated above.

## IMMIGRATION REQUIREMENTS FOR LICENSURE

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (P.L. 104-193), also known as the Welfare Reform Act, includes provisions to eliminate eligibility for federal and state public benefits for certain categories of lawful immigrants as well as benefits for all illegal immigrants.

Students who will require a professional or commercial license provided by a local, state, or federal government agency in order to engage in an occupation for which the CSU may be training them must meet the immigration requirements of the new Personal Responsibility and Work Opportunity Reconciliation Act to achieve licensure. Information concerning the regulation is available from the Office of International Programs, ADM 450, (415) 338-1293.

# NONDISCRIMINATION POLICY

## Race, Color, National Origin, Sexual Orientation, Religion, or Age

The California State University complies with the requirements of Title VI and Title VII of the Civil Rights Act of 1964, as well as other applicable federal and state laws prohibiting discrimination. No person shall, on the basis of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program of the California State University. Under Title VI, San Francisco State University is obligated to investigate all discrimination complaints, including harassment, in an unbiased, thorough manner. Inquiries regarding compliance can be referred to the Affirmative Action Office at 1600 Holloway Avenue, SSB 109, 415-338-2364 (voice), 415-338-1748 (TTY).

## Disability

The California State University does not discriminate on the basis of disability in admission or access to, or treatment or employment in, its programs and activities. Section s 504 and 508 of the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, and various state laws prohibit such discrimination. The Disability Programs and Resource Center director has been designated to coordinate the efforts of San Francisco State University to comply with all relevant disability laws and in the implementation of these regulations. Inquiries concerning compliance may be addressed to the director at San Francisco State University, 1600 Holloway Avenue, SSB 402, 415-338-2472 (voice/TTY).

## Sex/Gender

The California State University does not discriminate on the basis of sex, gender or sexual orientation in the educational programs or activities it conducts. Title IX of the Education Amendments of 1972 and certain other federal and state laws prohibit discrimination on these bases in education programs and activities operated by San Francisco State University. Such programs and activities include admission of students and employment. The California State University is committed to providing equal opportunities to male and female CSU students in all campus programs, including, but not limited to, intercollegiate athletics. Inquiries concerning the application of these laws to programs and activities of San Francisco State University may be referred to the Office of University Counsel, (415) 338-2998 (voice). Inquiries may also be directed to the regional director of the Office of Civil Rights, Region IX, 50 United Nations Plaza, Room 239, San Francisco, California 94102.

## HIV/AIDS Policy

Students and employees with the Human Immunodeficiency Virus (HIV) shall be afforded unrestricted classroom attendance, working conditions, use of university facilities, and participation in co-curricular and

CRSFSUvR_First_Am_Compl_Ex_C_0038

extra-curricular activities as long as they are physically and psychologically able to do so.

For more information, individuals are encouraged to contact Student Health Services, members on the AIDS Steering and Coordinating Committees, Human Resources Department, Office of Faculty Affairs, or the Dean of Students office.

### Complaints of Discrimination

Inquiries and complaints of discrimination in employment, programs, services, and academic matters based on sex, race, color, national origin, sexual orientation, or disability can be addressed by the Affirmative Action Office. Complaints can include sexual or racial harassment or harassment on any prohibited basis (i.e., disability). Employees or students can contact the director of the Affirmative Action Office: Joe Torres, Director, Affirmative Action and Employment Equity Programs, SSB 109, 1600 Holloway Avenue, 415-338-2364 (voice), 415-338-0937 (fax), 415-338-1748 (TDD).

Services include confidential consultation, information about options, complaint forms, and complaint investigation. Complaint investigations are subject to specific timeframes and include written notification to the complainant and the accused of investigative findings and appeal rights.

# CAMPUS SAFETY AND SECURITY

## CAMPUS SECURITY REPORT

San Francisco State University's annual security report includes statistics for the previous three years concerning reported crimes that occurred on campus, in certain off-campus buildings or property owned or controlled by San Francisco State University, and on public property within, or immediately adjacent to, and accessible from the campus. The report also includes institutional policies concerning campus security, such as policies concerning alcohol and drug use, crime prevention, the reporting of crimes, sexual assault, and other matters. You can obtain a copy of this report by contacting the Department of Public Safety or by accessing the following web site: www.sfsu.edu/~dps.

Information concerning San Francisco State University's policies, procedures, and facilities for students and others to report criminal actions or other emergencies occurring on campus may also be obtained from the Department of Public Safety.

## COMPUTER SECURITY

Legitimate computing for educational uses is encouraged. However, some may be tempted to abuse this privilege but not be aware of the legal aspects of computer crime. If San Francisco State University computers are illegally used, California Penal Code 502 states that the offender may be found guilty of a felony which is punishable by a fine not exceeding $10,000, or by imprisonment for 16, 24, or 36 months, or by both fine and imprisonment. Any student who illegally uses the SFSU computer system may be subject to suspension or expulsion from the university.

Computer security is the responsibility of everyone. All computing users should read the SFSU Computing Services Security Guide which covers policies, procedures, proper uses, and misuses of computing systems. The Computing Services Security Guide is accessible from the World Wide Web at www.sfsu.edu/~helpdesk/docs/rules/security.htm.

## SEXUAL ASSAULT

San Francisco State University does not tolerate acts of sexual assault. All reported instances of sexual assault

CRSFSUvR_First_Am_Compl_Ex_C_0039

are investigated and appropriate disciplinary, criminal, and/or legal action is taken, with consent of the victim. Appropriate support services are made available to students, faculty, or staff who are victims of sexual assault. For complete text of the statement, please consult www.sfsu.edu/~safe_plc/.

## SEXUAL HARASSMENT POLICY AND PROCEDURES

**University Executive Order #95-18 (Supersedes University Executive Order #85-09)**

**PREAMBLE**

This policy provides a definition of sexual harassment. It specifies pre-disciplinary, pre-grievance procedures for reporting and resolving complaints of sexual harassment and recommends that an education program be initiated. Formal disciplinary and grievance procedures are already defined by existing policies, executive orders, codes, and collective bargaining contracts pertinent to university employees and students. (NOTE: If the physical safety of any university individual is in question, the President will act immediately, within the authority of Title 5, Section 41301, the Education Code Sec. 22505 or the Penal Code Sec. 626.4 to protect the threatened party. Formal proceedings may be initiated immediately by the President in consultation with the Sexual Harassment Officer(s), and the appropriate grievance/disciplinary action officer.)

This Sexual Harassment Policy and Procedures applies to complaints of sexual harassment filed against a faculty member, administrator, staff person, or student. Information regarding where and how to file complaints is available from any Sexual Harassment Adviser or Officer.

No individual shall be subject to reprisal for using this policy, nor shall its use preclude subsequent disciplinary or grievance measures. All units of the campus community are expected to comply with this policy.

Except as needed in processing the complaint, both the Sexual Harassment Advisers and Sexual Harassment Officers are required to maintain confidentiality in dealing with sexual harassment complaints.

## DEFINITION OF SEXUAL HARASSMENT

Sexual Harassment is one person's distortion of a university relationship by unwelcome conduct which emphasizes another person's sexuality. Sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature are forms of sexual harassment when:

1. submission to such conduct is made an explicit or implicit condition of instruction, employment, or participation in any university activity; or
2. submission to or rejection of such conduct is used as the basis for employment or academic decisions affecting the individual; or
3. such conduct has the purpose or effect of hindering performance by creating or allowing sexually intimidating, hostile, or offensive behavior to occur in the university or in a university-related setting.

Sexual harassment is unethical and unprofessional conduct, illegal, and against San Francisco State University policy. It may occur in written, spoken, physical, and visual forms. The university will act to eliminate sexual harassment within its jurisdiction.

The university will evaluate each incident of alleged sexual harassment and apply appropriate remedies.

The university can dismiss employees or expel students for sexual harassment.

The university recognizes that any member of the campus community might be called upon to listen to a complaint of alleged sexual harassment. The listener should be objective and attentive, while discouraging use of names. No records should be kept, nor should promises for specific action or final decisions be made. The

CRSFSUvR_First_Am_Compl_Ex_C_0040

listener should refer the complainant to a Sexual Harassment Adviser or to a university Sexual Harassment Officer. Complainants may go to the Sexual Harassment Officer without first consulting a Sexual Harassment Adviser and may request an investigation at any time.

**SEXUAL HARASSMENT ADVISERS (SHA)**

All SHA's are volunteers. The Sexual Harassment Officers shall arrange for a course for training of advisers. People who have successfully completed the course may serve as SHA's. Advisers will be available to serve as sources of initial information to any individual who has a complaint or who needs information about sexual harassment.

The names of the advisers shall be published at the beginning of each semester and are available in the following offices: Dean of Students, Director of Affirmative Action, and the Office of Graduate Division. Advisers will have information about applicable laws, university policies and procedures, and options available for resolution of complaints. The Advisers shall:

1. Serve as resource persons to individuals with complaints or inquiries which may involve sexual harassment;
2. Advise the complainant regarding applicable university policies and procedures and outline various informal and formal options.
3. Inform the appropriate sexual harassment officer if a complaint is received which is deemed sufficiently serious to warrant further action.

Discussion between complainants and Sexual Harassment Advisers can occur without a written complaint and without identification of the person bringing the complaint and shall not imply guilt or innocence. No written record of specific complaints or actions taken to this point in the procedures shall be kept.

However, a simple tally of the number and type of complaints shall be kept and reported to the appropriate Sexual Harassment Officer at the end of each semester.

If further action is requested by the complainant, the SHA shall refer the complainant to a Sexual Harassment Officer (SHO) and explain the responsibilities and duties of those officers. In addition, SHA's have an obligation to notify SHO's when it appears the university should act, even if the complainant has not requested further action. The SHA is not authorized to notify either the accused or any supervisor of the accused.

**SEXUAL HARASSMENT OFFICERS (SHO)**

Sexual Harassment Officers are presidential designees and in that capacity are accountable directly to the President. The SHO's shall be the Dean of Students, Director of Affirmative Action, and the Associate Dean of Graduate Division. SHO's are empowered to hear and evaluate each complaint of alleged sexual harassment and to attempt resolution. SHO's shall observe basic standards of due process and confidentiality in all actions.

The Sexual Harassment Officers shall pursue complaints promptly through the stages outlined below.

Any discussion, investigation, or action taken under these procedures shall not conflict with student grievance procedures, regulations governing student affairs, collective bargaining contracts, and Executive Order 419.

**PRE-FORMAL RESOLUTION OF COMPLAINTS**

The complainant may choose to enter into a pre-formal discussion or to request that the SHO conduct an investigation immediately (see Pre-formal Investigation and Reporting below).

**Pre-formal Discussion**

CRSFSUvR_First_Am_Compl_Ex_C_0041

Pre-formal discussion or resolution does not require a written complaint. Any SHO will hear complaints, determine the remedy sought, and review options for resolution. The review shall include a discussion of applicable university policies and procedures as well as external options for resolution. The SHO(s) shall aid the complainant in identifying ways in which further harassment might be prevented. university policy requires that the SHO keep written records of all complaints. Such records need not identify complainant or alleged harasser by name nor shall they be part of any individual's official file at this stage of the procedure.

At the request of the complainant, the SHO(s) may attempt to resolve the situation by taking some or all of the following steps:

1. Informing the alleged harasser directly or through an appropriate administrator or supervisor that a problem has been raised concerning that person's conduct.
2. Informing the alleged harasser of university policy regarding sexual harassment.
3. Assisting the alleged harasser in identifying behaviors which might lead to complaints and ways in which that behavior might be changed to avoid further complaints.
4. Recommending that an oral or written warning or reprimand be issued to the alleged harasser.

**Pre-formal Investigation and Reporting**

At the request of the complainant and upon receipt of a written and signed complaint, the appropriate SHO shall initiate an investigation. If the SHO determines that circumstances so warrant, the SHO shall initiate an investigation with or without the consent of the complainant. The SHO shall notify the President, all the appropriate grievance/disciplinary officers for faculty or staff or students and the alleged harasser that an investigation is underway, and give the names of the parties involved.

The appropriate SHO shall conduct a prompt, full, and impartial investigation. The complainant shall have an opportunity to present evidence and a list of relevant and material witnesses.

A complaint for sexual harassment shall be filed within 180 days (six months) from the conduct giving rise to the complaint. The investigation shall generally be completed within 120 days (four months) of the receipt of the complaint. The time period for investigation may be extended by mutual consent of the parties or for good cause, including the complexity of the issues under investigation and the unavailability of relevant witnesses due to semester recess. Both the complainant and the accused will be informed of any extension of the investigation.

At the conclusion of the investigation, the appropriate SHO shall submit a written report to the President. The report shall include a description of the facts, the remedy sought by the complainant, and recommendations for further action if deemed necessary by the SHO. These recommendations shall be based upon the strength of evidence against the accused, the seriousness of action(s) that led to the complaint, and the remedy sought by the complainant. If formal disciplinary action is initiated, copies of the report shall be sent to the appropriate grievance/disciplinary action officer for faculty or staff or students.

If harassment is found, the university will implement such action as is necessary to correct the situation and to prevent it from recurring.

The complainant and the accused will receive written notice of the university's proposed determination regarding whether or not harassment occurred, and of the disposition of the complaint. The complainant or the accused may request reconsideration of the university's proposed determination by submitting additional relevant evidence, identifying errors of fact or of standards applied in the investigation or determination, or showing that further investigation is necessary.

A request for reconsideration of the university's proposed determination must be made to the President in writing within 10 calendar days of receipt of the Notice of Proposed Determination. The request for

CRSFSUvR_First_Am_Compl_Ex_C_0042

reconsideration must clearly specify the basis for making the request. Within 5 calendar days of receiving a request for reconsideration from either the complainant or the accused, the university will provide written notice to the other party that such a request has been made.

In processing a request for reconsideration, the university will review the information submitted, consider additional relevant evidence, correct errors of fact or of standards applied in the investigation or determination, and/or conduct further investigation if pertinent to the final determination.

If a request for reconsideration has been made, the complainant and the accused shall receive written notice of the university's final determination within 15 calendar days of the request. If there is no request for reconsideration, the complainant and the accused shall receive written notice that the university's proposed determination has become final within 15 calendar days of the Notice of Proposed Determination.

## FORMAL GRIEVANCE AND DISCIPLINARY PROCEDURES

Formal complaint, reprimand, grievance, or disciplinary procedures are governed by the policies, codes, executive orders, or contracts applicable to the bargaining unit or employment category to which the alleged harasser belongs.

Should it become necessary to invoke formal reprimand or disciplinary procedures, sexual harassment will be viewed as unprofessional conduct.

Formal disciplinary procedures will be pursued by the appropriate grievance/disciplinary action officer.

## STUDENT CONDUCT

§ 41301. Standards for Student Conduct

The university is committed to maintaining a safe and healthy living and learning environment for students, faculty, and staff. Each member of the campus community must choose behaviors that contribute toward this end. Student behavior that is not consistent with the Student Conduct Code is addressed through an educational process that is designed to promote safety and good citizenship and, when necessary, impose appropriate consequences.

a. Student Responsibilities: Students are expected to be good citizens and to engage in responsible behaviors that reflect well upon their university, to be civil to one another and to others in the campus community, and contribute positively to student and university life
b. Unacceptable Student Behaviors: The following behavior is subject to disciplinary sanctions:
   1. Dishonesty, including:
      A. Cheating, plagiarism, or other forms of academic dishonesty that are intended to gain unfair academic advantage.
      B. Furnishing false information to a university official, faculty member, or campus office.
      C. Forgery, alteration, or misuse of a university document, key, or identification instrument.
      D. Misrepresenting oneself to be an authorized agent of the university or one of its auxiliaries.
   2. Unauthorized entry into, presence in, use of, or misuse of university property.
   3. Willful, material and substantial disruption or obstruction of a university-related activity, or any on-campus activity.
   4. Participating in an activity that substantially and materially disrupts the normal operations of the university, or infringes on the rights of members of the university community.
   5. Willful, material and substantial obstruction of the free flow of pedestrian or other traffic, on or leading to campus property or an off-campus university related activity.
   6. Disorderly, lewd, indecent, or obscene behavior at a university related activity, or directed toward a member of the University community.

CRSFSUvR_First_Am_Compl_Ex_C_0043

7. Conduct that threatens or endangers the health or safety of any person within or related to the university community, including physical abuse, threats, intimidation, harassment, or sexual misconduct.
8. Hazing, or conspiracy to haze, as defined in Education Code Sections 32050 and 32051: "Hazing" includes any method of initiation or pre-initiation into a student organization, or any pastime or amusement engaged in with respect to such an organization which causes, or is likely to cause, bodily danger, physical harm, or personal degradation or disgrace resulting in physical or mental harm, to any student or other person attending any school, community college, college, university or other educational institution in this state; but the term "hazing" does not include customary athletic events or other similar contests or competitions.

   A group of students acting together may be considered a 'student organization' for purposes of this section whether or not they are officially recognized. Neither the express or implied consent of a victim of hazing, nor the lack of active participation while hazing is going on is a defense. Apathy or acquiescence in the presence of hazing is not a neutral act, and is also a violation of this section.
9. Use, possession, manufacture, or distribution of illegal drugs or drug-related paraphernalia, (except as expressly permitted by law and university regulations) or the misuse of legal pharmaceutical drugs.
10. Use, possession, manufacture, or distribution of alcoholic beverages (except as expressly permitted by law and university regulations), or public intoxication while on campus or at a university related activity.
11. Theft of property or services from the university community, or misappropriation of university resources.
12. Unauthorized destruction, or damage to University property or other property in the university community.
13. Possession or misuse of firearms or guns, replicas, ammunition, explosives, fireworks, knives, other weapons, or dangerous chemicals (without the prior authorization of the campus president) on campus or at a university related activity.
14. Unauthorized recording, dissemination, or publication of academic presentations (including handwritten notes) for a commercial purpose.
15. Misuse of computer facilities or resources, including:
    A. Unauthorized entry into a file, for any purpose.
    B. Unauthorized transfer of a file.
    C. Use of another's identification or password.
    D. Use of computing facilities, campus network, or other resources to interfere with the work of another member of the University Community.
    E. Use of computing facilities and resources to send obscene or intimidating and abusive messages.
    F. Use of computing facilities and resources to interfere with normal University operations.
    G. Use of computing facilities and resources in violation of copyright laws.
    H. Violation of a campus computer use policy.
16. Violation of any published university policy, rule, regulation or presidential order.
17. Failure to comply with directions of, or interference with, any university official or any public safety officer while acting in the performance of his/her duties.
18. Any act chargeable as a violation of a federal, state, or local law that poses a substantial threat to the safety or well-being of members of the university community, to property within the university community or poses a significant threat of disruption or interference with university operations.
19. Violation of the Student Conduct Procedures, including:
    A. Falsification, distortion, or misrepresentation of information related to a student discipline matter.
    B. Disruption or interference with the orderly progress of a student discipline proceeding.
    C. Initiation of a student discipline proceeding in bad faith.
    D. Attempting to discourage another from participating in the student discipline matter.
    E. Attempting to influence the impartiality of any participant in a student discipline matter.
    F. Verbal or physical harassment or intimidation of any participant in a student discipline

**CRSFSUvR_First_Am_Compl_Ex_C_0044**

matter.
      G.  Failure to comply with the sanction(s) imposed under a student discipline proceeding.
    20.  Encouraging, permitting, or assisting another to do any act that could subject him or her to discipline.
c.  Application of this Code
Sanctions for the conduct listed above can be imposed on applicants, enrolled students, students between academic terms, graduates awaiting degrees, and students who withdraw from school while a disciplinary matter is pending. Conduct that threatens the safety or security of the campus community, or substantially disrupts the functions or operation of the university is within the jurisdiction of this Article regardless of whether it occurs on or off campus. Nothing in this Code may conflict with Education Code section 66301 that prohibits disciplinary action against students based on behavior protected by the First Amendment.
d.  Procedures for Enforcing this Code
The chancellor shall adopt procedures to ensure students are afforded appropriate notice and an opportunity to be heard before the University imposes any sanction for a violation of the Student Conduct Code.

**41302. Disposition of Fees: Campus Emergency; Interim Suspension.** The president of the campus may place on probation, suspend, or expel a student for one or more of the causes enumerated in Section 41301. No fees or tuition paid by or for such student for the semester, quarter, or summer session in which he or she is suspended or expelled shall be refunded. If the student is readmitted before the close of the semester, quarter, or summer session in which he or she is suspended, no additional tuition or fees shall be required of the student on account of the suspension.

During periods of campus emergency, as determined by the president of the individual campus, the president may, after consultation with the chancellor, place into immediate effect any emergency regulations, procedures, and other measures deemed necessary or appropriate to meet the emergency, safeguard persons and property, and maintain educational activities.

The president may immediately impose an interim suspension in all cases in which there is reasonable cause to believe that such an immediate suspension is required in order to protect lives or property and to insure the maintenance of order. A student so placed on interim suspension shall be given prompt notice of charges and the opportunity for a hearing within 10 days of the imposition of interim suspension. During the period of interim suspension, the student shall not, without prior written permission of the president or designated representative, enter any campus of the California State University other than to attend the hearing. Violation of any condition of interim suspension shall be grounds for expulsion.

## WHAT YOU NEED TO KNOW ABOUT DRUGS AND ALCOHOL AT SAN FRANCISCO STATE UNIVERSITY

San Francisco State University is committed to a safe and healthy environment for the campus community. The use of alcohol and other drugs should not interfere with the university's educational mission.

The university expects every student, faculty member, staff member, and administrator to be aware of and comply with all local, state, and federal laws regarding the unlawful possession, distribution, or use of illegal drugs and alcohol.

It is the policy of San Francisco State University that the unlawful manufacture, distribution, dispensation, possession, or use of illegal drugs on the university campus, or at any university-sponsored event off campus, is prohibited. No one may use illegal substances, or abuse legal substances, including alcohol, in a manner which impairs performance of assigned tasks. A more complete description of these regulations is contained in University Directive #89-12 (The Alcohol and Drug Policy) and University Directive #90-15 (Policy on Substance Abuse in the Workplace) which are available at Human Resources Office, the Office of Faculty Affairs, the Office of the Dean of Students.

**New State Laws as of 1990**

- An arresting officer can take the license from any driver suspected to be driving under the influence who refuses to take a blood alcohol concentration test.
- Anyone under 21 found in possession of alcohol can have their driver's license taken away, even if the under age person was not drinking, drunk, or driving.

**Disciplinary Action**

STUDENTS: The manufacture, distribution, possession, or use of illegal drugs or illegal use of alcohol will normally result in either probation, suspension, or dismissal from the university.

EMPLOYEES: Those found to be in violation of university policy may be subject to corrective action, up to and including dismissal, or may be required, at the discretion of the university, to participate satisfactorily in an approved counseling or rehabilitation program. All members of the campus may be subject to criminal prosecution for violation of applicable local, state, or federal laws.

**CONSIDER THE FOLLOWING:**

After drinking, have you ever engaged in unplanned sexual activity? All alcohol [beer, wine, and hard liquor] decreases people's ability to use good judgment and act according to their own desires if they've been drinking beyond their capacity. People practice less safe sex when under the influence, more unintended pregnancies occur, more regretted sex and acquaintance rapes occur, and more diseases are transmitted sexually.

Have you ever taken speed or uppers to help you stay awake to meet a deadline? The initial effect of speed is increased alertness, increased sense of well-being, and ability to stay awake. Most uppers are short acting (6-12 hours). As the drug wears off, withdrawal sets in. The user is irritable, disinterested in the tasks at hand, needs sleep, and can be agitated--just around the time you need to be at your best.

How much can I drink and still be legal on the road? Many factors influence your blood alcohol level--such as body weight, gender, amount consumed, amount of food eaten, mood, body temperature, and previous drinking experience. As little as one drink may produce blood levels greater than the legal limit. The safest and smartest approach is to ask a non-drinking friend to drive if you drink, or designate a driver who will not drink.

Do you use cocaine to give you an "edge" in your studies or at work? Most people start using cocaine because it makes them feel "more" something--more confident, more alert, more attractive, more intelligent, more energetic. But these effects of the drug last only a few minutes, and leave the user feeling worse than they felt before. This sets up a cycle of craving the drug to feel good again, and repeated use to avoid feeling bad. Eventually, not only do you lose your "edge," but you can't even stay in the game. Cocaine can cause dramatic changes in blood pressure, as well as heart and breathing rates. One-time, occasional use or using small amounts have all been known to cause breathing to stop, stroke, or death. Crack is an especially addictive form of cocaine.

Do you smoke marijuana to forget problems with your studies or work responsibilities? If your answer is yes, the drug may be working better than you think. Marijuana can disturb both the process of formation and storage of memory. Even occasional use can result in memory impairment. It can also adversely affect your ability to concentrate and pay attention to school and work assignments. With continued use, long-term learning problems can occur as well as a reduction in motivation. This can lead to a further decline in performance of academic and job-related responsibilities. In addition, short term effects include slowed reaction time and increased heart rate. There are over 400 chemicals contained in marijuana. One joint contains 50% more tar than a cigarette.

Do you use steroids to build your muscles faster during weight training? Anabolic steroids are basically

CRSFSUvR_First_Am_Compl_Ex_C_0046

synthetic male hormones that are often used to rapidly increase muscle mass. While steroids can contribute to faster muscle building when combined with weight training, they can also cause atrophy of the testicles and enlargement of the prostrate in men; in women, an increase in body hair and baldness may be seen. There are a number of other toxic side effects of steroid use including liver damage, and there is danger of HIV infection from the sharing of needles used to inject the steroids. The added muscle attributed to steroid use hardly seems worth the dangers.

Has drinking alcohol affected your studies? In a recent study, 14% of SFSU students who drink reported that they had missed a class because of drinking, 19% reported that they had fallen behind in school work, and 19% stated that they had done something that they later regretted. Nation-wide campus statistics suggest that alcohol is involved in:

- 2/3 of all violent behavior
- 1/2 of all physical injuries
- 1/3 of all emotional difficulty among students
- 30% of all academic problems
- 75% of all motor vehicle accidents
- 90% of date rapes on college campuses
- 40% of all diseases transmitted sexually

## WHERE TO GO FOR HELP

### ON-CAMPUS (Confidentiality assured)

For students:

- Prevention Education Programs/C.E.A.S.E., ADM 255, 338-1203 (resources & referrals)
- Counseling & Psychological Services, T-M, 338-2208
- Student Health Center, medical appointments: 338-1719

For everyone:

- Meetings of Alcoholics Anonymous, Narcotics Anonymous. Call C.E.A.S.E. for information regarding on- and off-campus meetings at 338-1203.

### OFF-CAMPUS-- San Francisco

- National Council on Alcoholism, 944 Market Street, 3rd Floor, 296-9900
- Asian American Residential Recovery Services Inc., 2024 Hayes Street, 750-5111
- Bayview-Hunter's Point Foundation for Problem Drinkers, 1625 Carroll, 822-6727
- Haight-Ashbury Free Clinic Drug Treatment Services, 529 Clayton, 565-1908
- Mission Council on Alcohol Abuse for Spanish Speaking, 820 Valencia, 826-6767
- New Leaf (gay/lesbian/bisexual), 1853 Market, 626-7000

### TELEPHONE HOTLINES

Meeting information for support groups:

| | |
|---|---|
| Alcoholics Anonymous | 621-1326 |
| Al-Anon & Al-Ateen | 626-5633 |
| Adult Children of Alcoholics | 641-7373 |
| Narcotics Anonymous | 621-8600 |
| Nar-Anon | (650) 985-5255 |

CRSFSUvR_First_Am_Compl_Ex_C_0047

| Co-dependents Anonymous | 905-6331 |
| Cocaine Anonymous | 821-6155 |
| Overeaters Anonymous | 436-0651 |
| Marijuana Anonymous | 522-7373 |
| Nicotine Anonymous | 995-1938 |

# FEDERAL MILITARY SELECTIVE SERVICE

The federal Military Selective Service Act (the "Act") requires most males residing in the United States to present themselves for registration with the Selective Service System within thirty days of their eighteenth birthday. Most males between the ages of 18 and 25 must be registered. Males born after December 31, 1959 may be required to submit a statement of compliance with the Act and regulations in order to receive any grant, loan, or work assistance under specified provisions of existing federal law. In California, students subject to the Act who fail to register are also ineligible to receive any need-based student grants funded by the state or a public post-secondary institution.

Selective Service registration forms are available at any U.S. Post Office, and many high schools have a staff member or teacher appointed as a Selective Service registrar. Applicants for financial aid can also request that information provided on the Free Application for Federal Student Aid (FAFSA) be used to register them with the Selective Service. Information on the Selective Service System is available and the registration process may be initiated on-line at www.sss.gov.

---



SFSU   Bulletin   Search

Last modified June 08, 2007 by bulletin@sfsu.edu

CRSFSUvR_First_Am_Compl_Ex_C_0048



**About OSPLD**

**Leadership**

**Organizations**

**Conduct**

**Event Planning**

**Reserving Spaces**

**Fundraising**

**FAQ's**

**University Partners**

**Faculty/Staff Advisors**

**Contact Us**







## Student Group Misconduct

**Procedures for Filing Complaints of Alleged Violation of University Policies & Complaint Disposition**

**Statement of Principles**

SF State is a learning community in which student organizations play a valuable role. As part of this role, student organizations must fully recognize their responsibilities as well as their rights and privileges. These procedures have been developed to ensure that matters of student organization conduct are handled consistently and fairly, and that they are resolved in accordance with the educational purpose of the university and due process standards. The OSPLD shall consult faculty, staff and students, including representatives of student governments, in the revision of these Procedures, except when such revisions result from changes to system wide policies or are specifically mandated by law. Any member of the campus community may submit written proposals to change the provisions of this Procedure to OSPLD at any time.

### Jurisdiction

The following procedures delineate the disciplinary process for non-academic violations of University Policies and Campus Regulations by recognized student organizations.

A. **Disciplinary Procedures/Due Process.**
   1. The term 'working day' shall mean any day during the academic year, summer session, and special session other than a Saturday, Sunday or academic holiday of a campus as that term is used in Section 42800 of Title 5 of the California Code of Regulations. (EO 628)
   2. In lieu of pursuing charges against a student organization that has allegedly violated any university policy or procedure, the OSPLD may issue a letter of warning. A letter of warning is written notice to the student organization that a violation of university policies has occurred. This letter will be warning that further violations could result in more severe disciplinary action. It will be a part of the organization's file for a period of one year from the date of the letter.
   3. Before informal resolution procedures as set forth in Section D may take place, the student organization must be advised of its right to due process pursuant to this Procedure, including the right to representation (attorneys will not be permitted as representatives in this process) and a hearing. This is to ensure that the student organization is aware of its procedural rights before making an admission to a violation of University Policies and Procedures.

B. **Filing of Complaint and Investigation of Allegations**
   1. A complaint alleging non-academic misconduct by a student organization may be filed by anyone, but must be in writing, signed, dated and submitted to the Director of OSPLD. These complaints must be submitted within seven working days of the alleged violation, and include any supporting evidence, documentation and names of witnesses..
   2. OSPLD staff and university officials may also initiate complaints within seven

**CRSFSUvR_First_Am_Compl_Ex_D_0049**

working days following witnessing possible violations by student organization representatives.

3. OSPLD will investigate all complaints. OSPLD will keep on file for a minimum of five years, a signed, dated and reasoned decision explaining its determination of cases investigated.

4. In cases involving sexual harassment, the Sexual Harassment Policy and Procedures will be followed (See SF State Bulletin, Supplemental Regulations & Procedures and Student Code of Conduct at here).

5. After a complaint is filed against a student organization, that organization may remain active on campus until a review of the complaint is completed by the Student Organization Hearing Panel (SOHP), or until an informal review is completed by OSPLD. In complaints against a student organization or its members, or infractions of university policy, that are criminal in nature, the university president reserves the right to suspend the campus activity or revoke recognition of that student organization until a review or investigation can be completed by the SOHP.

**C. Notification of Charges**

1. The OSPLD shall initiate the investigation/review by either:
   - Delivery of a written Notice of Charges served in person.
   - Delivery by certified mail, return receipt requested within two working days of receipt of the written complaint.
   - E-mail communication.

2. The written notification of charges to the student organization shall include:
   - The University policy or campus regulation that was allegedly violated.
   - The factual basis for the charges including, wherever possible, the date, time and location of the alleged offense.
   - The requirement to meet with the Director or staff member of OSPLD to discuss the charges.
   - If a student organization fails to meet with the Director of the OSPLD and the OSPLD staff as required in the Notification of Charges, the student organization will be automatically suspended pending completion of the SOHP review and deliberation.
   - A statement of the accused student organization's right to have a representative at any stage of the disciplinary proceedings. Attorneys will not be permitted as zrepresentatives in this process.

3. Unless previously provided, the OSPLD shall provide a copy of the University Code of Student Conduct, (click here) and if applicable, other relevant university policies to the student organization with the Notification of Charges.

4. For the purpose of pursuing charges against a student organization, the written notification shall be delivered to the organization's president, faculty advisor, principal officer, and/or other students delegated on the group's student organization registration form, on file with OSPLD.

5. The SOHP will be informed by the Director of OSPLD of charges brought against any student organization.

**D. Informal Resolution of Charges (Optional)**—At the discretion of the Director of OSPLD, a meeting may be convened with representatives of the organization charged and the complaining party, to reach an informal resolution to be agreed upon by both parties. The meeting will occur within three (3) working days of the date of the notification of charges letter. If the representatives of the student organization charged and the complaining party reach a mutually acceptable agreement, the matter shall be closed. If no agreement is reached within five (5) working days of the notification of charges letter, the matter will proceed to SOHP for review and determination.

**E. Formal Disciplinary Proceedings**—All allegations of misconduct against a recognized



**Suggestion Form**
Designed to assist you in provid-
ing feedback and suggestions on
OSPLD programs & procedures

**CRSFSUvR_First_Am_Compl_Ex_D_0050**

student organization, when not resolved with an informal resolution as stated above shall be subject to formal review by SOHP.

F. **Student Organization Hearing Panel (SOHP)**—The Student Organization Hearing Panel is comprised of campus students, faculty and staff for the purpose of hearing student organization violations and determining sanctions.

1. Composition of Panel—The panel shall consist of five (5) voting members: two (2) students (ASI appointments), one (1) staff member (Vice President for Student Affairs appointment), and two (2) faculty members (Academic Senate appointments). The SOHP members serve a one-year term and the Director of the OSPLD convenes the Panel. The Associate Vice President for Student Affairs appoints the Chair of SOHP.

2. Quorum—Quorum shall consist of a simple majority of voting members.

G. **Timing and Notice of Hearing**—The Director of OSPLD will provide written notification to the student organization regarding either: (1) The Director's decision to offer an informal resolution, or (2) The decision to immediately refer the charges to SOHP. If an informal resolution occurs, the outcome notice will be provided to the student organization by the Director of OSPLD. If an informal resolution does not occur, the notice will include the information that the SOHP will begin the disciplinary hearing within seven working days. The SOHP will contact the student organization providing the specific information on the date, time and location of the hearing.

H. **Consolidated Hearing Assignments**—Where more than one student organization is charged with conduct arising out of a single occurrence or out of connected multiple occurrences, and if the SOHP and the student organization consent, a single hearing may be held for all of the student organizations charged. Student organizations may request that their case be consolidated with others, or separated. The SOHP shall make determinations regarding consolidation. All such determinations shall have the hearing subject to revision by the SOHP. In the event of a revision, all cases affected shall be rescheduled. The separation of one or more cases from a group of cases previously set for a consolidated hearing shall not be considered to affect the remaining cases in the group.

I. **Evidence**

1. The accused student organization may request access to and/or copies of all the documentary evidence that will be presented in support of the charges at the hearing and a list of witnesses that may be called by the SOHP at the hearing. Any such evidence will be made available for inspection as soon as practicable but at least five (5) working days before the hearing.

2. At least four (4) working days prior to the hearing, the accused student organization must provide the SOHP with its evidence and documentation refuting the charges and a list of witnesses that the student organization may call at the hearing.

3. The accusing party may request access to and/or copies of all the documentary evidence that will be presented in refutation of the charges at the hearing. Any such evidence will be made available for inspection as soon as practicable but at least three (3) working days before the hearing.

4. It is expected that the SOHP will select some witnesses to testify but it is not required to call all witnesses to testify on behalf of the accusing party or the student organization charged.

5. Admissible evidence shall be the sort upon which responsible persons are accustomed to rely in the conduct of serious affairs, and is not restricted to evidence admissible under the strict rules of evidence of a court of law. No evidence which has been determined by the hearing authority to have been obtained by fundamentally unfair means may be taken into consideration.

J. **Representation at Hearing**—The accused student organization may have representation present during any stage of the proceedings. The role of the representative may be limited during the hearing by SOHP. Attorneys will not be allowed as representatives in

**CRSFSUvR_First_Am_Compl_Ex_D_0051**

this process.

K.  **Record of Hearing**—The SOHP will make an official recording of the hearing, a copy of which must be made available to the accused student organization upon request.

L.  **Closure of Hearing**—Hearings shall be closed and not open to the public.

M.  **Hearing Procedure**

1.  The SOHP shall rule on all questions of procedure and evidence, including but not limited to the order of presentation of evidence, admissibility of evidence, applicability of regulations to a particular case, and relevance of testimony. If a challenge arises concerning the constitutionality or legality of an application of any such regulations or policies to a particular case, the hearing shall continue and the challenge may be submitted by the hearing authority in writing to the Vice President for Student Affairs, who shall seek legal advice from the university's legal counsel.

2.  Unless otherwise determined by SOHP, evidence shall be submitted in the following order: evidence submitted in support of the charges, evidence submitted by the accused student organization, rebuttal evidence in support of the charges, rebuttal evidence submitted by the student organization, and closing arguments. Hearings need not be conducted according to formal rules of procedure and evidence.

3.  No person shall be required to testify against him or herself in any hearing proceeding.

4.  All evidence upon which the SOHP's decision in the case may be based must be introduced at the hearing in the presence of the accused student organization, except where the student organization (a) fails to appear after appropriate notice has been given or (b) otherwise waives their right to be present. No communication of information regarding the merits of the case or its disposition may be made to SOHP without the adverse party being afforded an opportunity to respond.

N.  **Decision of the Student Organization Hearing Panel**

1.  After the hearing, the SOHP shall make findings of fact and conclusions about whether the facts demonstrate a violation of the University Policy with which the student organization is charged. The SOHP's determination shall be made on the basis of whether it is more likely than not that the student organization charged violated the University Policy (i.e., by a preponderance of evidence).

2.  After having made its determination, SOHP shall submit a written report to the Director of OSPLD, which includes a determination as to whether the student organization charged violated University Policy and if so, sanction imposed. The SOHP's report shall be submitted to the Director of OSPLD within 10 working days of the conclusion of the hearing.

3.  The decision of the SOHP will be final.

O.  **Notification to Relevant Campus Parties**—Not limited to these campus offices, OSPLD shall give written notice of any sanctions against a student organization to the following; Office of the President, Office of the Vice President for Student Affairs, Office of the Associate Vice President for Student Affairs, Associated Students, Inc., and the Cesar Chavez Student Center. Written notice will also be sent out by OSPLD when any sanctions are lifted or when the duration of any sanction ends.

P.  **Corrective Action**—Sanctions may include, but are not limited to, a letter of warning, censure, probation, suspension, or revocation of the organization's recognition. Each disciplinary measure is dependent on the severity of the violation.

1.  **Letter of warning**—A Letter of Warning is a written notice to the student organization that a violation of university policies has occurred. This letter will be warning that further violations could result in more severe disciplinary action. It will be a part of the organization's file for a period of one year from the date of the letter.

2.  **Censure**—Censure is a written reprimand for violations of university policies and

is considered more severe than a letter of warning. It also includes notice to the organization that continued or repeated violations will result in more severe disciplinary action. It will be a part of the organization's file for a period of one year from the date of the letter.

3. **Probation**—Probation is a period of supervision imposed for a specific length of time. Organizations on probation may continue with all or some of the rights and privileges of student organizations for the specified period of time as identified in the sanction. Any violations within the time period shall result in the immediate loss of all organizational privileges. The organization shall be closely monitored by OSPLD during the probation period.

4. **Suspension**—Suspension is the loss of all rights and privileges of a student organization during the specified suspension period.

5. **Revocation of recognition**—Revocation of recognition involves the expulsion of a student organization from the university campus and all university activities, including the revocation of all student organization rights and privileges.



© 2007 OSPLD | Student Services Center | San Francisco State University
E-mail: ospld@sfsu.edu | Phone: (415) 338 2171 | Fax: (415) 338 2172
1600 Holloway Avenue, SSB#105, San Francisco, CA 94132
Last update: May 15, 2007 | Webmaster

CRSFSUvR_First_Am_Compl_Ex_D_0053

10 / 26 / 2006

To:  Mister Greenwell, OSPLD Director

From:  Brian Gallagher, SFSU Student

c.c : Penny Saffold, Kevin Bowmen, ASI Board

I, Brian Gallagher, a concerned member of the San Francisco State University community, in pursuant to the OSPLD Procedures for Alleged Violations of University Policies, am officially submitting a letter of complaint against the College Republican student organization as a direct result of actions which were carried forthwith by the aforementioned student organization.

On October 17, 2006, a student organization, The College Republicans, held an event on the stage area in Malcolm X Plaza.  During the proceedings of this event, the College Republicans publicly and very evidently walked over and trekked over a banner with Arabic script.  That Arabic script represented the word "Allah", otherwise known as the name of God in Arabic.  This fact was made evident to College Republican members who were on the stage area.  Members of the San Francisco State University community, representing more than one religious faith, tried to make known, to College Republican members, of the disrespectful and offensive nature of such acts.  They were met with taunts and folly arguments of free speech.

This student organization, The College Republicans, have completely debased and violated the following principles in which this university proclaims to be its standards.  Why has a group of college students chosen to pursue such actions of incivility?  I am at a loss for words and continue in my state of bewilderment as to why this route of intolerance and stupidity was chosen.  Such actions do nothing but foment incivility and discourage critical analysis.

This student organization, The College Republicans, also has contributed to the creation of a hostile environment for students here at San Francisco State University with their show of outright disrespect and religious intolerance.  The actions of this student organization have contributed to the creation of an environment where violence and hostility were facilitated rather then the promotion of an academic arena where thoughtful and positive dialogue could grow.  These actions have also done nothing but incite violence and hostility toward a group of students here at San Francisco State University.  In the October 19, 2006 edition of the *Golden Gate Express* Leigh Wolf, press informations officer for the College Republicans, was quoted as saying the following words, *"I definitely expected people to be upset."*  I find this to be only clearly evident of premeditating efforts to incite violence and create an environment of hostility and hate.

I will close with the following words, which were stated by the current President of San Francisco State University, Robert A. Corrigan, in an open letter to the community dated October 11, 2001.

*"...free speech, is complimented by another of our highest values: respect for the views, feelings, and human dignity of others."*

CRSFSUvR_First_Am_Compl_Ex_E_0054

Thank you for the time and attention to this letter of complaint and I hope this matter will be promptly dealt with in a judicious manner where justice will be served and wrongs made right.

P.S.  I have also included sections from the SFSU Catalog in regards to Student Conduct and the way in which to conduct themselves here at San Francisco State University.

Thank you,

Brian Gallagher, SFSU Student

*[signature: Brian Gallagher]*

## STUDENT CONDUCT

§ 41301. Standards for Student Conduct

The university is committed to maintaining a safe and healthy living and learning environment for students, faculty, and staff. Each member of the campus community must choose behaviors that contribute toward this end. Student behavior that is not consistent with the Student Conduct Code is addressed through an educational process that is designed to promote safety and good citizenship and, when necessary, impose appropriate consequences.

a.      Student Responsibilities: Students are expected to be good citizens and to engage in responsible behaviors that reflect well upon their university, to be civil to one another and to others in the campus community, and contribute positively to student and university life

CRSFSUvR_First_Am_Compl_Ex_E_0055

```
Date: Thu, 2 Nov 2006 18:18:35 -0800 (PST)
From: Brian <usmonroedoctrine@sbcglobal.net>
Subject: Fwd: letter of complaint
To: Zora Aziz <vpfinance@asisfsu.org>, Asella Blood <seniorrep@asisfsu.org>,
        Kimberly Castillo <pituca84@yahoo.com>,
        Faith Cushenberry <humanitiesrep@asisfsu.org>,
        Maire Fowler <porjusticiaylibertad@yahoo.com>,
        Saran Goodson <saranindigo@hotmail.com>, Isidro <ia@sfsu.edu>,
        Hector Jimenez <vpofexternalsf@yahoo.com>,
        Kim Mercado <repatlarge@asisfsu.org>,
        Kevin Mikami <businessrep@asisfsu.org>,
        Christopher Oropeza <creativeartsrep@asisfsu.org>,
        Ramsey <ramsey_qare@yahoo.com>, Zohra Saiyed <sciencerep@asisfsu.org>,
        Joicy Serrano <joicyserrano@yahoo.com>
Cc: Kevin Bowmen <avpofsa@sfsu.edu>, "Ms. Saffold" <psaffold@sfsu.edu>,
        Joey Greenwell <joey@sfsu.edu>, Rafa Martinez <azteca@sfsu.edu>,
        Alberto Olivares <beto@sfsu.edu>, Sophia Ramirez <sramirez@sfsu.edu>,
        Asian Student Union <asu@sfsu.edu>,
        Democracy Matters <dmatters@sfsu.edu>, GUPS <gups@sfsu.edu>,
        International Socialist Organization <iso@sfsu.edu>,
        La Raza <larazasf@sfsu.edu>, MeCha <mecha@sfsu.edu>,
        MSA <msa@sfsu.edu>, Pacific Islander Club <pic@sfsu.edu>,
        SAW <antiwar@sfsu.edu>, SKINS <skins@sfsu.edu>, Amrah <amrah@sfsu.edu>,
        Karen <night_after_sidewalk@yahoo.com>,
        Gerardo Lopez <lopezg@sfsu.edu>,
        paola mejia <paolamejia1982@yahoo.com>,
        Michael <kilgorehoffman@yahoo.com>, Michelle <rubyred517@yahoo.com>,
        Cindy Morales <cmorales@sfsu.edu>, Nadia <sweetrobin517@yahoo.com>,
        Princess <princessrb86@yahoo.com>,
        Victoria Ramirez <victoriar098@yahoo.com>,
        Ramon <musicoloco3@yahoo.com>, David Verdin <David.Verdin@gmail.com>,
        Jose Villalobos <cuco@sfsu.edu>, Vinia <viniaramos@yahoo.com>,
        Autumn Yuriko <ayuriko@sfsu.edu>, Zohra <zohra@sfsu.edu>
X-IronPort-Anti-Spam-Filtered: true
X-IronPort-Anti-Spam-Result: AgAAALgOSkVEjscph2dsb2JhbACCcogbgTwBAQkOKg
X-SFSU-VirusScanner: Found to be clean
```

ASI Officers,

    My name is Brian Gallagher.    I have been collecting letters of complaint, eyewitness accounts and
public outcry over actions taken by the College Republicans on October 17, 2006.    I submit it for
your consideration.

    Thank you for the time and attention,

    Brian Gallagher, SFSU Student

*Ruben Uribe*  <ruribe2006@yahoo.com> wrote:

        Date: Sun, 29 Oct 2006 22:53:15 -0800 (PST)
        From: Ruben Uribe <ruribe2006@yahoo.com>
        Subject: letter of complaint
        To: usmonroedoctrine@sbcglobal.net

        Here you go Brian, hope this will help. if you need anymore of my info, just contact me.

        Cheap Talk? Check out Yahoo! Messenger's low PC-to-Phone call rates.


        Content-Type: application/msword; name="To whom it may concern.doc"
        Content-Disposition: attachment; filename="To whom it may concern.doc"

CRSFSUvR_First_Am_Compl_Ex_F_0056

Content-Description: pat670127175

📄 To whom it may concern.doc

**CRSFSUvR_First_Am_Compl_Ex_F_0057**

To whom it may concern

About a week and a half ago, the republicans at SFSU made a rally on the war on terror and support of the war, this was not an issue, but the fact is they had two flags. One of the flags had the word of Allah. They were stepping on the flags and making a mockery of students who approach them and tried to change the meaning of what was written on the flags by stomping on them while talking to the students. They weren't just attacking the terrorist but all of the Christianity religion and I personally felt offended and angry. They didn't organize the rally correct because no research was done to prevent this. As in the X press article, Wolf said he knew students would get angry. But preventing violence doesn't make the university safe for those who were there. I ask of you to approach this group and prevent this from happing again.

Sincerely, SFSU student


Ruben Uribe

Brian, 11/2/06 6:22 PM -0800, Fwd: Conflict letter yesterdays rally (Complaint #2)    1

Date: Thu, 2 Nov 2006 18:22:43 -0800 (PST)
From: Brian <usmonroedoctrine@sbcglobal.net>
Subject: Fwd: Conflict letter yesterdays rally (Complaint #2)
To: Zora Aziz <vpfinance@asisfsu.org>, Asella Blood <seniorrep@asisfsu.org>,
    Kimberly Castillo <pituca84@yahoo.com>,
    Faith Cushenberry <humanitiesrep@asisfsu.org>,
    Maire Fowler <porjusticiaylibertad@yahoo.com>,
    Saran Goodson <saranindigo@hotmail.com>, Isidro <ia@sfsu.edu>,
    Hector Jimenez <vpofexternalsf@yahoo.com>,
    Kim Mercado <repatlarge@asisfsu.org>,
    Kevin Mikami <businessrep@asisfsu.org>,
    Christopher Oropeza <creativeartsrep@asisfsu.org>,
    Ramsey <ramsey_qare@yahoo.com>, Zohra Saiyed <sciencerep@asisfsu.org>,
    Joicy Serrano <joicyserrano@yahoo.com>
Cc: Kevin Bowmen <avpofsa@sfsu.edu>, "Ms. Saffold" <psaffold@sfsu.edu>,
    Joey Greenwell <joey@sfsu.edu>, Rafa Martinez <azteca@sfsu.edu>,
    Alberto Olivares <beto@sfsu.edu>, Sophia Ramirez <sramirez@sfsu.edu>,
    Asian Student Union <asu@sfsu.edu>,
    Democracy Matters <dmatters@sfsu.edu>, GUPS <gups@sfsu.edu>,
    International Socialist Organization <iso@sfsu.edu>,
    La Raza <larazasf@sfsu.edu>, MeCha <mecha@sfsu.edu>,
    MSA <msa@sfsu.edu>, Pacific Islander Club <pic@sfsu.edu>,
    SAW <antiwar@sfsu.edu>, SKINS <skins@sfsu.edu>, Amrah <amrah@sfsu.edu>,
    Karen <night_after_sidewalk@yahoo.com>,
    Gerardo Lopez <lopezg@sfsu.edu>,
    paola mejia <paolamejia1982@yahoo.com>,
    Michael <kilgorehoffman@yahoo.com>, Michelle <rubyred517@yahoo.com>,
    Cindy Morales <cmorales@sfsu.edu>, Nadia <sweetrobin517@yahoo.com>,
    Princess <princessrb86@yahoo.com>,
    Victoria Ramirez <victoriar098@yahoo.com>,
    Ramon <musicoloco3@yahoo.com>, David Verdin <David.Verdin@gmail.com>,
    Jose Villalobos <cuco@sfsu.edu>, Vinia <viniaramos@yahoo.com>,
    Autumn Yuriko <ayuriko@sfsu.edu>, Zohra <zohra@sfsu.edu>
X-IronPort-Anti-Spam-Filtered: true
X-IronPort-Anti-Spam-Result: Ao8CALg0SkVEjsd3h2dsb2JhbACCOjiIG4E8AQEJDio
X-SFSU-VirusScanner: Found to be clean

ASI Officers,

    My name is Brian Gallagher.   I have been collecting letters of complaint, eyewitness accounts and
public outcry over actions taken by the College Republicans on October 17, 2006.   I submit it for
your consideration.

    Thank you for the time and attention,

    Brian Gallagher, SFSU Student


    ahmad rahimi  <frahimi68@yahoo.com> wrote:

        Date: Wed, 18 Oct 2006 15:26:51 -0700 (PDT)
        From: ahmad rahimi <frahimi68@yahoo.com>
        Subject: Conflict letter yesterdays rally
        To: usmonroedoctrine@sbcglobal.net
        CC: alnajjar@sfsu.edu

        Hi Brian Gallagher here is the letter that you asked
        me to write. Sorry i did not have that much time to
        write and i would really like a response from Maire
        Fowler. Thank You and feel free to contact me
        regarding this issue.

CRSFSUvR_First_Am_Compl_Ex_F_0059

Farhad Rahimi

Do You Yahoo!?
Tired of spam? Yahoo! Mail has the best spam protection around
http://mail.yahoo.com


Content-Type: application/msword; name="Conflict.doc"
Content-Disposition: attachment; filename="Conflict.doc"
Content-Description: pat2075622992

Conflict.doc

CRSFSUvR_First_Am_Compl_Ex_F_0060

10/18/2006

ASI President
Maire Fowler

Dear Maire Fowler,

My name is Farhad Rahimi and I am a student at SFSU. I am writing this letter in response to the rally yesterday 10/17/06 by the College Republicans. I feel that this group was very racist toward Muslims. I was outraged and disturbed with there actions to the point where I felt to stop them, because no one else was including police.

I believe the group was having an Anti-Terrorism rally. I was walking by and stopped to listen to the program. It was a political rally and they were discussing current conflicts around the world. One of the speakers was stepping on some posters that were on the ground. I wanted to see what they were stepping on, so I went closer for a better view. I asked one of the people on stage what they were stepping on. He replied, "These are banners of Hamaz and Hezbollah, two Terrorist organizations." I was very upset to see on one of the banners Islamic writing. The poster had Allah written in Arabic very large in the middle.

I asked them very nicely to remove that poster and not to step on it because it has god's name written in Arabic. They refused to move and same it is a terrorist's group's poster. I felt outraged and angered by their refusal. I kept asking them to remove it and they refused. I was so angered that I told them I will stand there to make sure no one steps on god's and that I would stop anyone from stepping on it by any means necessary. At that time one of the speakers tried to step on it while I am trying to talk to them about the issue. It mad me very angry and as they saw my anger they stopped. The group saw that I will not allow them to disrespect my religion in anyway. One of the group members told me that they will keep this peaceful and remove the poster. I asked them to give me the poster and they did.

I am very upset with the school and ASI for giving groups like this the opportunity disrespect religions. This was a political rally the ASI should have monitored to make sure it stayed a political rally, and that any religious symbols or writings should not have been allowed to be used. It is sad to see that everyone in the administration and student union let this happen, and left it for a Muslim student who is not involved in any political parties or groups stop this hatred from continuing. I hope SFSU and ASI sees to make sure no religion is ever disrespected in this manner ever again. I hope to see change in racism and hatred

I have contacted a few news agencies regarding this matter. I have also emailed a copy of this letter to Brain Gallagher (GUPS) & (Skins) and Sharef Al-Najjar (MSA). I am looking forward to your response to this matter. You could feel free to contact by phone or email. Thank you for taking the time to read this letter.

Farhad Rahimi



Date: Thu, 2 Nov 2006 18:25:49 -0800 (PST)
From: Brian <usmonroedoctrine@sbcglobal.net>
Subject: Fwd: It's your buddy Sean, hope it isn't to late (Complaint #3)
To: Zora Aziz <vpfinance@asisfsu.org>, Asella Blood <seniorrep@asisfsu.org>,
    Kimberly Castillo <pituca84@yahoo.com>,
    Faith Cushenberry <humanitiesrep@asisfsu.org>,
    Maire Fowler <porjusticiaylibertad@yahoo.com>,
    Saran Goodson <saranindigo@hotmail.com>, Isidro <ia@sfsu.edu>,
    Hector Jimenez <vpofexternalsf@yahoo.com>,
    Kim Mercado <repatlarge@asisfsu.org>,
    Kevin Mikami <businessrep@asisfsu.org>,
    Christopher Oropeza <creativeartsrep@asisfsu.org>,
    Ramsey <ramsey_qare@yahoo.com>, Zohra Saiyed <sciencerep@asisfsu.org>,
    Joicy Serrano <joicyserrano@yahoo.com>
Cc: Kevin Bowmen <avpofsa@sfsu.edu>, "Ms. Saffold" <psaffold@sfsu.edu>,
    Joey Greenwell <joey@sfsu.edu>, Rafa Martinez <azteca@sfsu.edu>,
    Alberto Olivares <beto@sfsu.edu>, Sophia Ramirez <sramirez@sfsu.edu>,
    Asian Student Union <asu@sfsu.edu>,
    Democracy Matters <dmatters@sfsu.edu>, GUPS <gups@sfsu.edu>,
    International Socialist Organization <iso@sfsu.edu>,
    La Raza <larazasf@sfsu.edu>, MeCha <mecha@sfsu.edu>,
    MSA <msa@sfsu.edu>, Pacific Islander Club <pic@sfsu.edu>,
    SAW <antiwar@sfsu.edu>, SKINS <skins@sfsu.edu>, Amrah <amrah@sfsu.edu>,
    Karen <night_after_sidewalk@yahoo.com>,
    Gerardo Lopez <lopezg@sfsu.edu>,
    paola mejia <paolamejia1982@yahoo.com>,
    Michael <kilgorehoffman@yahoo.com>, Michelle <rubyred517@yahoo.com>,
    Cindy Morales <cmorales@sfsu.edu>, Nadia <sweetrobin517@yahoo.com>,
    Princess <princessrb86@yahoo.com>,
    Victoria Ramirez <victoriar098@yahoo.com>,
    Ramon <musicoloco3@yahoo.com>, David Verdin <David.Verdin@gmail.com>,
    Jose Villalobos <cuco@sfsu.edu>, Vinia <viniaramos@yahoo.com>,
    Autumn Yuriko <ayuriko@sfsu.edu>, Zohra <zohra@sfsu.edu>
X-IronPort-Anti-Spam-Filtered: true
X-IronPort-Anti-Spam-Result: AgoXAIg3SkVEjsd8h2dsb2JhbACCOTlyhymBPAEBCQ4q
X-SFSU-VirusScanner: Found to be clean


ASI Officers,

    My name is Brian Gallagher.   I have been collecting letters of complaint, eyewitness accounts and
public outcry over actions taken by the College Republicans on October 17, 2006.   I submit it for
your consideration.

    Thank you for the time and attention,

  Brian Gallagher, SFSU Student


*Sean Ajayi <raidersean80@hotmail.com>* wrote:

    From: "Sean Ajayi" <raidersean80@hotmail.com>
    To: usmonroedoctrine@sbcglobal.net
    Subject: It's your buddy Sean, hope it isn't to late
    Date: Tue, 17 Oct 2006 23:24:29 -0700

    I was there today when you guys were talking about fighting terrorism! As I
    told you before, the reason why a lot of people dislike you guys and attack
    you is the way you present yourselves. You guys appear very volatile and
    speak on issues that you can't relate to. Instead of taking the stage with
    a humble manner telling us how as Republicans you have bettered the
    community surrounding you and illustrating how this explains your "moral
    values". When you have walked in the shoes as an African & Palestinian,

CRSFSUvR_First_Am_Compl_Ex_F_0062

Brian, 11/2/06 6:25 PM -0800, Fwd: It's your buddy Sean, hope it isn't to late (Complaint    2

then you can relate and defend your views about terrorism and such sensitive
matters. I strongly believe that this was a pathos-staged event to throw
rhetoric so your organization can acquire more members, probably more money
too. The school newspaper was just want you wanted because people will read
the gator express and will be left with an impression whether negative or
positive. I was truly offended when you attempted to defend the book in the
library display, "It's Okay to Leave the Plantation: The New Underground
Railroad." I found it highly offensive and very immature, definitely
classless and in poor taste. It was ridiculous to hear you guys play some
phony rap music that you probably didn't understand just so people would
think it was cool to be a Republican. You guys need help! I think one of
your fellow Republican leaders said it best when he told me that he didn't
like the way your organization is going and that a lot of changes needed to
be made. He also admitted to be ashamed by things you guys did at times. I
believe in freedom of speech, however I don't believe in freedom of
stupidity!

From,
A Concerned Student, Sean

Stay in touch with old friends and meet new ones with Windows Live Spaces
http://clk.atdmt.com/MSN/go/msnnkwsp0070000001msn/direct/01/?href=http://spaces.live.com/spac
esapi.aspx?wx_action=create&wx_url=/friends.aspx&mkt=en-us

CRSFSUvR_First_Am_Compl_Ex_F_0063

Brian, 11/2/06 6:27 PM -0800, Fwd: letter of complaint (Complaint #4)                    1

```
Date: Thu, 2 Nov 2006 18:27:46 -0800 (PST)
From: Brian <usmonroedoctrine@sbcglobal.net>
Subject: Fwd: letter of complaint (Complaint #4)
To: Zora Aziz <vpfinance@asisfsu.org>, Asella Blood <seniorrep@asisfsu.org>,
    Kimberly Castillo <pituca84@yahoo.com>,
    Faith Cushenberry <humanitiesrep@asisfsu.org>,
    Maire Fowler <porjusticiaylibertad@yahoo.com>,
    Saran Goodson <saranindigo@hotmail.com>, Isidro <ia@sfsu.edu>,
    Hector Jimenez <vpofexternalsf@yahoo.com>,
    Kim Mercado <repatlarge@asisfsu.org>,
    Kevin Mikami <businessrep@asisfsu.org>,
    Christopher Oropeza <creativeartsrep@asisfsu.org>,
    Ramsey <ramsey_gare@yahoo.com>, Zohra Saiyed <sciencerep@asisfsu.org>,
    Joicy Serrano <joicyserrano@yahoo.com>
Cc: Kevin Bowmen <avpofsa@sfsu.edu>, "Ms. Saffold" <psaffold@sfsu.edu>,
    Joey Greenwell <joey@sfsu.edu>, Rafa Martinez <azteca@sfsu.edu>,
    Alberto Olivares <beto@sfsu.edu>, Sophia Ramirez <sramirez@sfsu.edu>,
    Asian Student Union <asu@sfsu.edu>,
    Democracy Matters <dmatters@sfsu.edu>, GUPS <gups@sfsu.edu>,
    International Socialist Organization <iso@sfsu.edu>,
    La Raza <larazasf@sfsu.edu>, MeCha <mecha@sfsu.edu>,
    MSA <msa@sfsu.edu>, Pacific Islander Club <pic@sfsu.edu>,
    SAW <antiwar@sfsu.edu>, SKINS <skins@sfsu.edu>, Amrah <amrah@sfsu.edu>,
    Karen <night_after_sidewalk@yahoo.com>,
    Gerardo Lopez <lopezg@sfsu.edu>,
    paola mejia <paolamejia1982@yahoo.com>,
    Michael <kilgorehoffman@yahoo.com>, Michelle <rubyred517@yahoo.com>,
    Cindy Morales <cmorales@sfsu.edu>, Nadia <sweetrobin517@yahoo.com>,
    Princess <princessrb86@yahoo.com>,
    Victoria Ramirez <victoriar098@yahoo.com>,
    Ramon <musicoloco3@yahoo.com>, David Verdin <David.Verdin@gmail.com>,
    Jose Villalobos <cuco@sfsu.edu>, Vinia <viniaramos@yahoo.com>,
    Autumn Yuriko <ayuriko@sfsu.edu>, Zohra <zohra@sfsu.edu>
X-IronPort-Anti-Spam-Filtered: true
X-IronPort-Anti-Spam-Result: Ao8CAIg3SkVEjsd4h2dsb2JhbACCOTmJVwEBCQ4q
X-SFSU-VirusScanner: Found to be clean
```

ASI Officers,

    My name is Brian Gallagher.   I have been collecting letters of complaint, eyewitness accounts and
public outcry over actions taken by the College Republicans on October 17, 2006.   I submit it for
your consideration.

    Thank you for the time and attention,

 Brian Gallagher, SFSU Student


Elen Awalom <elenawalom@hotmail.com> wrote:

    From: "Elen Awalom" <elenawalom@hotmail.com>
    To: usmonroedoctrine@sbcglobal.net
    Subject: letter of complaint
    Date: Tue, 17 Oct 2006 20:26:36 -0700

    To Whom it May Concern:

    This afternoon several hundred SF State students and I had the displeasure
    of hearing the racist, hateful words of members of the campus College
    Republicans. They engaged in red-baiting, calling peaceful students (with
    signs proclaiming that the roots of organizations like Al-Qaeda and
    Hezbollah is Western imperialism and aggression) communists. They called me

CRSFSUvR_First_Am_Compl_Ex_F_0064

and another African-American student "slaves" and people with "slave
mentalities" when my fellow student proceeded to address the racist and
disgusting book entitled "It's Okay to Leave the Plantation" currently
displayed in the College Republican exhibit in the main library. It is not
acceptable for racist hate speech to be broadcast and addressed towards
individual members of the student body. Their [the College Republicans']
words and behavior today contribute to an overall feeling of fear and
disrespect for various ethnic minority groups at SF State, namely Arab,
African American and Latino students.


- Elen Awalom

---

All-in-one security and maintenance for your PC. Get a free 90-day trial!
http://clk.atdmt.com/MSN/go/msnnkwlo0050000002msn/direct/01/?href=http://www.windowsonecare.c
om/?sc_cid=msn_hotmail

CRSFSUvR_First_Am_Compl_Ex_F_0065

Brian, 11/2/06 6:38 PM -0800, Complaint Letter concerning Malcolm X Plaza events on 10/    1

```
Date: Thu, 2 Nov 2006 18:38:51 -0800 (PST)
From: Brian <usmonroedoctrine@sbcglobal.net>
Subject: Complaint Letter concerning Malcolm X Plaza events on 10/17/2006
To: Joey Greenwell <joey@sfsu.edu>, Rafa Martinez <azteca@sfsu.edu>,
        Alberto Olivares <beto@sfsu.edu>, Sophia Ramirez <sramirez@sfsu.edu>
Cc: Kevin Bowmen <avpofsa@sfsu.edu>, "Ms. Saffold" <psaffold@sfsu.edu>,
        Asian Student Union <asu@sfsu.edu>,
        Democracy Matters <dmatters@sfsu.edu>, GUPS <gups@sfsu.edu>,
        International Socialist Organization <iso@sfsu.edu>,
        La Raza <larazasf@sfsu.edu>, MeCha <mecha@sfsu.edu>,
        MSA <msa@sfsu.edu>, Pacific Islander Club <pic@sfsu.edu>,
        SAW <antiwar@sfsu.edu>, SKINS <skins@sfsu.edu>, Amrah <amrah@sfsu.edu>,
        Karen <night_after_sidewalk@yahoo.com>,
        Gerardo Lopez <lopezg@sfsu.edu>,
        paola mejia <paolamejia1982@yahoo.com>,
        Michael <kilgorehoffman@yahoo.com>, Michelle <rubyred517@yahoo.com>,
        Cindy Morales <cmorales@sfsu.edu>, Nadia <sweetrobin517@yahoo.com>,
        Princess <princessrb86@yahoo.com>, Sophia Ramirez <sramirez@sfsu.edu>,
        Victoria Ramirez <victoriar098@yahoo.com>,
        Ramon <musicoloco3@yahoo.com>, David Verdin <David.Verdin@gmail.com>,
        Jose Villalobos <cuco@sfsu.edu>, Vinia <viniaramos@yahoo.com>,
        Autumn Yuriko <ayuriko@sfsu.edu>, Zohra <zohra@sfsu.edu>
X-IronPort-Anti-Spam-Filtered: true
X-IronPort-Anti-Spam-Result: Ao8CAHw5SkVEjscph2dsb2JhbACCOzeJVwEBCQ4q
X-SFSU-VirusScanner: Found to be clean
```

Mister Greenwell,

    My name is Brian Gallagher.    I have been collecting letters of complaint, eyewitness accounts and public outcry over actions taken by the College Republicans on October 17, 2006.    I submit it for your consideration.

    The submittal is the attached file.

    Thank you for the time and attention,

    Brian Gallagher, SFSU Student


```
Content-Type: application/msword; name="sharef___Republican_event.doc"
Content-Disposition: attachment; filename="sharef___Republican_event.doc"
Content-Description: 2252608743-sharef___Republican_event.doc
```

    sharef____Republican_event.doc

CRSFSUvR_First_Am_Compl_Ex_F_0066

October 17, 2006

Dear Maira Fowler,

    I, Sharef Al Najjar, am writing to you as a result of the event that the College Republicans put forth on, October 17, 2006, in Malcolm X Plaza. At the College Republicans event they placed both the Hezballah flag and the Hamas flag on the ground under the podiums, where they would be stepped on by members of the College Republicans. The issue with both flags being placed on the floor and stepped on is that both flags have the name Allah (God in Arabic) written on them. As a Muslim, seeing Gods name being written in Arabic or any other language placed on the floor, is offensive to not only Muslims, as well as to other Religions that believe in God as well. I approached the College Republicans regarding my concerns of how the word Allah being placed on the floor and stepped is very offensive to all Muslims. However, my concerns of the negative repercussions that may come from stepping on Gods name were dismissed, the flags stayed on the floor and was continued to be stepped on by College Republican members, while and after I had talked to them. It was not until numerous offended Muslims approached the stage and asked the College Republicans to remove the Hamas and Hezballah flags from the floor were God was being dishonored. Having the word Allah on the flags was offensive to Muslims as a whole, and also Muslims who don't even support what they are calling "terrorism." By allowing organizations to degrade and offend religions the way in which College Republican did, there may be negative repercussions that affect the College Republicans as well as San Francisco State University as a Muslim hating organization and administration.

        Thank you for your time,


        Sharef Al Najjar
        MSA member

```
Date: Fri, 3 Nov 2006 13:33:26 -0800 (PST)
From: Brian <usmonroedoctrine@sbcglobal.net>
Subject: Complaint Letter in regard to October 17, 2006 (Complaint Letter #5)
To: Zora Aziz <vpfinance@asisfsu.org>, Asella Blood <seniorrep@asisfsu.org>,
    Kimberly Castillo <pituca84@yahoo.com>,
    Faith Cushenberry <humanitiesrep@asisfsu.org>,
    Maire Fowler <porjusticiaylibertad@yahoo.com>,
    Saran Goodson <saranindigo@hotmail.com>, Isidro <ia@sfsu.edu>,
    Hector Jimenez <vpofexternalsf@yahoo.com>,
    Kim Mercado <repatlarge@asisfsu.org>,
    Kevin Mikami <businessrep@asisfsu.org>,
    Christopher Oropeza <creativeartsrep@asisfsu.org>,
    Ramsey <ramsey_qare@yahoo.com>, Zohra Saiyed <sciencerep@asisfsu.org>,
    Joicy Serrano <joicyserrano@yahoo.com>
Cc: Kevin Bowmen <avpofsa@sfsu.edu>, "Ms. Saffold" <psaffold@sfsu.edu>,
    Joey Greenwell <joey@sfsu.edu>, Rafa Martinez <azteca@sfsu.edu>,
    Alberto Olivares <beto@sfsu.edu>, Sophia Ramirez <sramirez@sfsu.edu>,
    Asian Student Union <asu@sfsu.edu>,
    Democracy Matters <dmatters@sfsu.edu>, GUPS <gups@sfsu.edu>,
    International Socialist Organization <iso@sfsu.edu>,
    La Raza <larazasf@sfsu.edu>, MeCha <mecha@sfsu.edu>,
    MSA <msa@sfsu.edu>, Pacific Islander Club <pic@sfsu.edu>,
    SAW <antiwar@sfsu.edu>, SKINS <skins@sfsu.edu>, Amrah <amrah@sfsu.edu>,
    Karen <night_after_sidewalk@yahoo.com>,
    Gerardo Lopez <lopezg@sfsu.edu>,
    paola mejia <paolamejia1982@yahoo.com>,
    Michael <kilgorehoffman@yahoo.com>, Michelle <rubyred517@yahoo.com>,
    Cindy Morales <cmorales@sfsu.edu>, Nadia <sweetrobin517@yahoo.com>,
    Princess <princessrb86@yahoo.com>,
    Victoria Ramirez <victoriar098@yahoo.com>,
    Ramon <musicoloco3@yahoo.com>, David Verdin <David.Verdin@gmail.com>,
    Jose Villalobos <cuco@sfsu.edu>, Vinia <viniaramos@yahoo.com>,
    Autumn Yuriko <ayuriko@yahoo.com>, Zohra <zohra@sfsu.edu>
X-IronPort-Anti-Spam-Filtered: true
X-IronPort-Anti-Spam-Result: AgAAAFVCS0VEjsd2h2dsb2JhbACCcolYAQEBCA4q
X-SFSU-VirusScanner: Found to be clean
```

ASI Officers,

    My name is Brian Gallagher.  I have been collecting letters of complaint, eyewitness accounts and public outcry over actions taken by the College Republicans on October 17, 2006.  I submit it for your consideration.

    Thank you for the time and attention,

    Brian Gallagher, SFSU Student


----  Letter of Complaint   ----


    To Whom It May Concern,

    Upon walking onto the campus quad, it was brought to my attention the hipocrasy that was taking place.  The group of college Republicans had shown tremendous disrespect by standing on a piece of paper with Allah's name on it.  What does religion have to do with Terrorism?  This outward show of disrespect is what is further oppressing the Muslim people.  Even as a Catholic Latin-American, I was very ashamed to see what had happened.  No religion should ever be talked down upon or as in this case stomped on.

    Michael Diaz

CRSFSUvR_First_Am_Compl_Ex_F_0068

```
Date: Fri, 3 Nov 2006 13:34:12 -0800 (PST)
From: Brian <usmonroedoctrine@sbcglobal.net>
Subject: Complaint Letter in regard to October 17, 2006 ( Complaint Letter #6 )
To: Zora Aziz <vpfinance@asisfsu.org>, Asella Blood <seniorrep@asisfsu.org>,
    Kimberly Castillo <pituca84@yahoo.com>,
    Faith Cushenberry <humanitiesrep@asisfsu.org>,
    Maire Fowler <porjusticiaylibertad@yahoo.com>,
    Saran Goodson <saranindigo@hotmail.com>, Isidro <ia@sfsu.edu>,
    Hector Jimenez <vpofexternalsf@yahoo.com>,
    Kim Mercado <repatlarge@asisfsu.org>,
    Kevin Mikami <businessrep@asisfsu.org>,
    Christopher Oropeza <creativeartsrep@asisfsu.org>,
    Ramsey <ramsey_qare@yahoo.com>, Zohra Saiyed <sciencerep@asisfsu.org>,
    Joicy Serrano <joicyserrano@yahoo.com>
Cc: Kevin Bowmen <avpofsa@sfsu.edu>, "Ms. Saffold" <psaffold@sfsu.edu>,
    Joey Greenwell <joey@sfsu.edu>, Rafa Martinez <azteca@sfsu.edu>,
    Alberto Olivares <beto@sfsu.edu>, Sophia Ramirez <sramirez@sfsu.edu>,
    Asian Student Union <asu@sfsu.edu>,
    Democracy Matters <dmatters@sfsu.edu>, GUPS <gups@sfsu.edu>,
    International Socialist Organization <iso@sfsu.edu>,
    La Raza <larazasf@sfsu.edu>, MeCha <mecha@sfsu.edu>,
    MSA <msa@sfsu.edu>, Pacific Islander Club <pic@sfsu.edu>,
    SAW <antiwar@sfsu.edu>, SKINS <skins@sfsu.edu>, Amrah <amrah@sfsu.edu>,
    Karen <night_after_sidewalk@yahoo.com>,
    Gerardo Lopez <lopezg@sfsu.edu>,
    paola mejia <paolamejia1982@yahoo.com>,
    Michael <kilgorehoffman@yahoo.com>, Michelle <rubyred517@yahoo.com>,
    Cindy Morales <cmorales@sfsu.edu>, Nadia <sweetrobin517@yahoo.com>,
    Princess <princessrb86@yahoo.com>,
    Victoria Ramirez <victoriar098@yahoo.com>,
    Ramon <musicoloco3@yahoo.com>, David Verdin <David.Verdin@gmail.com>,
    Jose Villalobos <cuco@sfsu.edu>, Vinia <viniaramos@yahoo.com>,
    Autumn Yuriko <ayuriko@sfsu.edu>, Zohra <zohra@sfsu.edu>
X-IronPort-Anti-Spam-Filtered: true
X-IronPort-Anti-Spam-Result: AgAAAKhES0VEjsconmdsb2JhbACCcolYAQEBAQcOKg
X-SFSU-VirusScanner: Found to be clean
```

ASI Officers,

    My name is Brian Gallagher.   I have been collecting letters of complaint, eyewitness accounts and public outcry over actions taken by the College Republicans on October 17, 2006.   I submit it for your consideration.

    Thank you for the time and attention,

    Brian Gallagher, SFSU Student


~~~    Letter of Complaint    ~~~

    To Whom It May Concern,

    Today, 10/17/2006, the College of Republicans had a demonstration of anti-terrorism.   During their speech they stepped on the flags of Hizbollah and Hamas.
    In the flags there is "Allah" written, and for them to step on the name of God, as a Muslim, I am offended and feel that my religion was disrespected.   Although the flags represent terrorism to the Republican group, to me, since Allah's name was present, and being stepped on, I feel very, very disrespected.   This is intolerable and goes against the morals and ethics here at S.F.S.U.

    Ali Algarmi
    current Senior at S.F.S.U.

CRSFSUvR_First_Am_Compl_Ex_F_0069

```
Date: Mon, 6 Nov 2006 00:20:05 -0800 (PST)
From: Brian <usmonroedoctrine@sbcglobal.net>
Subject: Fwd: Re: A Concerned Student ( Complaint Letter # 7 )
To: Zora Aziz <vpfinance@asisfsu.org>, Asella Blood <seniorrep@asisfsu.org>,
        Kimberly Castillo <pituca84@yahoo.com>,
        Faith Cushenberry <humanitiesrep@asisfsu.org>,
        Maire Fowler <porjusticiaylibertad@yahoo.com>,
        Saran Goodson <saranindigo@hotmail.com>, Isidro <ia@sfsu.edu>,
        Hector Jimenez <vpofexternalsf@yahoo.com>,
        Kim Mercado <repatlarge@asisfsu.org>,
        Kevin Mikami <businessrep@asisfsu.org>,
        Christopher Oropeza <creativeartsrep@asisfsu.org>,
        Ramsey <ramsey_qare@yahoo.com>, Zohra Saiyed <sciencerep@asisfsu.org>,
        Joicy Serrano <joicyserrano@yahoo.com>
Cc: Kevin Bowman <avpofsa@sfsu.edu>, "Ms. Saffold" <psaffold@sfsu.edu>,
        Joey Greenwell <joey@sfsu.edu>, Rafa Martinez <azteca@sfsu.edu>,
        Alberto Olivares <beto@sfsu.edu>, Sophia Ramirez <sramirez@sfsu.edu>,
        Asian Student Union <asu@sfsu.edu>,
        Democracy Matters <dmatters@sfsu.edu>, GUPS <gups@sfsu.edu>,
        International Socialist Organization <iso@sfsu.edu>,
        La Raza <larazasf@sfsu.edu>, MeCha <mecha@sfsu.edu>,
        MSA <msa@sfsu.edu>, Pacific Islander Club <pic@sfsu.edu>,
        SAW <antiwar@sfsu.edu>, SKINS <skins@sfsu.edu>, Amrah <amrah@sfsu.edu>,
        Karen <night_after_sidewalk@yahoo.com>,
        Gerardo Lopez <lopezg@sfsu.edu>,
        paola mejia <paolamejia1982@yahoo.com>,
        Michael <kilgorehoffman@yahoo.com>, Michelle <rubyred517@yahoo.com>,
        Cindy Morales <cmorales@sfsu.edu>, Nadia <sweetrobin517@yahoo.com>,
        Princess <princessrb86@yahoo.com>,
        Victoria Ramirez <victoriar098@yahoo.com>,
        Ramon <musicoloco3@yahoo.com>, David Verdin <David.Verdin@gmail.com>,
        Jose Villalobos <cuco@sfsu.edu>, Vinia <viniaramos@yahoo.com>,
        Autumn Yuriko <ayuriko@sfsu.edu>, Zohra <zohra@sfsu.edu>
X-IronPort-Anti-Spam-Filtered: true
X-IronPort-Anti-Spam-Result: AgAAAKh9TkVEjsd5h2dsb2JhbACCOjiJWAEBAQgOKg
X-SFSU-VirusScanner: Found to be clean
```

ASI Officers,

    My name is Brian Gallagher.    I have been collecting letters of complaint, eyewitness accounts and public outcry over actions taken by the College Republicans on October 17, 2006.    I submit it for your consideration.

    Thank you for the time and attention,

    Brian Gallagher, SFSU Student

*Zohra  Aziz  <z_aziz1@yahoo.com>* wrote:

        Date: Sun, 5 Nov 2006 15:29:14 -0800 (PST)
        From: Zohra Aziz <z_aziz1@yahoo.com>
        Subject: Re: A Concerned Student
        To: Brian <usmonroedoctrine@sbcglobal.net>

        Hello Brian,

        Attached you will find a letter of complaint regarding
        the incident of Oct 17th. On behalf of everyone who
        was impacted by this event I want to personally thank
        you for taking the lead on this and thank you for all
        of your concern and hard work.

CRSFSUvR_First_Am_Compl_Ex_F_0070

```
Zora Aziz
VP of Finance
SFSU Associated Students Inc.
```

```
We have the perfect Group for you. Check out the handy changes to Yahoo! Groups
(http://groups.yahoo.com)
```

```
Content-Type: application/msword; name="complaint_2zoraaziz.doc"
Content-Disposition: attachment; filename="complaint_2zoraaziz.doc"
Content-Description: pat1223771477
```

complaint_2zoraaziz.doc

CRSFSUvR_First_Am_Compl_Ex_F_0071

Dear President Fowler,

This is a letter of complaint regarding the atrocious and defamatory event of the October 17 2006. I and hundreds and perhaps thousands of our fellow students were the unfortunate witnesses to the malicious and offensive actions of the college republicans. We as students of San Francisco state university were dismayed and disheartened to experience such a hatred and flagrant racism that was allowed by the university.

On October 17 2006 the College Republican had center stage at the Caesar Chavez and Malcolm X Plaza was demonstrating what they so called "Freedom of speech" Was down right insulting and offensive. Unfortunately I, amongst many students was faced with the College Republic stepping on a poster with the word "Allah" written in Arabic. It also appeared to me that without the full support and protection of university this event would not have taken place. Even though the rally was a direct attack on Muslims, I feel that by stepping on the words that mean God, the college republicans have bean offensive towards Christen, Catholics, Jews and anyone who practices a religion.

America prides itself for being a melting pot for different cultures, races and religious believes, where everyone is respected and treated equally, or are they? What we have witnessed was the horrific action of this group to be malicious and absolutely un-American, and utterly against what America really stands for.

"Freedom of speech" carries with it duties and responsibilities. There is a line between "freedom of speech" and "freedom to abuse and defame". We as a leading educational institution have the moral obligation to preserve and carry on the true values that the founding fathers of this great country set forth. In no way one in a free and democratic society should be allowed and encouraged to defame or stigmatize others with impunity.

President Corrigan have personally stated that racism will not be tolerated in the university, with that said how and why could a group of students celebrating their culture could be called bigot and another group celebrating racism be allowed to take center stage and call all Muslims terrorists and be excused "as freedom of speech".

I as one of American Muslim student am appalled to have to experienced this in this day and age, I challenge Mr. Corrigan and the university to condemn in the strongest terms this heinous act ignorant aggression against all Muslims by the Republican group and to prevent it from ever happening in our school.

I am fully aware of the process and procedure of how student organizations plan and carry out their events. And I am deeply concerned with the OSPLD and their lack of concern toward this event that took place. I also witnessed many members of the OSPLD who had attended the event and did nothing to stop the practices of racism and baseless discrimination even though many students were expressing their dissatisfaction with what was being announced on stage.

As a student leader, and member of the board of directors for the Associated Students I have encounter many concerned and disheartened students regarding this matter and I strongly urge the board to take serious actions against the College Republican or any other student organization that promotes racism and baseless prejudice and to prevent future practices of deliberate "bigotry" and "ignorance" on this campus.


Zora Aziz
VP of finance
ASI SFSU

```
Date: Mon, 13 Nov 2006 09:40:36 -0800
From: "John Bergman" <jmasuo@gmail.com>
To: joey@sfsu.edu
Subject: Flag issue
X-IronPort-Anti-Spam-Filtered: true
X-IronPort-Anti-Spam-Result: Ao8CAB9AWEVA6aa0h2dsb2JhbACMSgIJDio
X-SFSU-VirusScanner: Found to be clean
```

Joey,
I would like to speak to you about the flag stomping and other issues
concerning the College Republicans. As you know I brought up the issue
of their violent behavior when you were first hired and you said that
was the past. Well as you can see the past continues and nothing was
done to curb their behavior. Now they want to hide behind Free Speech.
Free Speech is limited because of the Supreme Court. They ruled that
you cannot sexually harass or create a hostel work environment for
your co-workers. You cannot threaten someone with violence, this is
criminal assault. You cannot use language to insight a riot. And " YOU
CANNOT YELL FIRE IN A CROWDED THEATER." What the College Republicans
did was equivalent to yelling fire in a crowded theater and this is my
justification to my claim.
In the court of law you must have an understanding of your action, the
ability to carry it out, and an intent of your action.

1. The organization has the ability to carry out their action because
they have the right to reserve Malcom X plaza.
2. The organization had a full understanding of their action. The
organization knew that the stomping of flags could cause violence and
they were afraid for their own safety. Having a full appreciation that
they could be attacked by a group of angry Muslims, they had the
University Police escort them to Malcom X Plaza to protect them.
3. The organization showed the intent of the action by the level of
planning that went into their event. They reserved the plaza. They
thought of the danger. They hand painted flags with the word Allah
painted in english. They brought the police with them for protection.
They carried out the planned action. And their leader told the campus
newspaper they knew what kind of recaction they could receive.

The fine line between Free Speech and Hate Speech are clear. It is
about having a full understanding that your actions can cause violence
and you took action to protect yourself form that violence. The true
issue here goes beyond free speech. It goes to the safety of the other
30,000 students that attent this university.

Last month the University President denied the painting of a mural
because of its content. He cited that the mural contained a key of
freedom and that this key would insight a riot. If the university is
using the reason of student safety as the fine line that divides Free
Speech, then the College Republicans have crossed this line by a mile.

Remember that the U.S Supreme Court ruled in Brown vs the Board of
Education, that separate but equal is not equal. Also that Free Speech
has several limits, the most important being that "you cannot yell
fire in a crowded theater in a convincing way."

No matter what happens with the issue of Free Speech, this issue will
end up in court. If no action is taken against the College
Republicans, then the issue of the mural is unjust and the backer of
the mural can take the issue to court to exercise their Free Speech
Rights. If an action it taken against the College Republicans, then
the issue of Free Speech will be challenged by the Republicans and the
mural backers have the right to join the lawsuit to preserve their

CRSFSUvR_First_Am_Compl_Ex_F_0074

right to Free Speech.

I am in favor for the latter for the sole reason that this issue will
show the American people that you cannot stereotype Muslims as violent
radicals. This University must be extremely proud of the fact that
while the Republicans wanted the Muslims student to riot, they chose
to open a dialogue and speak to the issue of racism and hatred. The
Muslims are Americans and as American they want to be treated with the
same respect as every other American.

Thank you
John Bergman

CRSFSUvR_First_Am_Compl_Ex_F_0075

*The Golden Gate* **[X]**PRESS ONLINE

HOME | NEWS | ARTS & ENTERTAINMENT | LIFESTYLE | HEALTH & SCIENCE | SPORTS | OP/ED | PHOTOS | ABOUT U

## ASI Passes Resolution Against Flag Stomping
**Organization says College Republicans were in the wrong**

by Jason Shuffler, staff writer

NOVEMBER 28, 2006 8:48 PM

Preceding an ongoing investigation into SF State College Republican behavior, the Associated Students board unanimously adopted a resolution condemning the student group for purposely stomping on flags containing the Arabic symbol for God.

?Associated Students, Inc. deems the College Republicans? actions as contrary to university values and feel they should be held accountable by the university for their actions,? the resolution says.

The Nov. 15 resolution comes on the heels of several student and student organization complaints at board meetings and the Office of Student Programs and Leadership Development, or OSPLD, which has also sparked a separate investigation and assembly of a special panel to decide if the College Republicans did indeed violate the university?s conduct rules.

The resolution cited a rule outlined in the university?s Strategic Plan saying, ?SFSU facilitates teaching, learning and work experiences among students, faculty and staff that promote equity and social justice within a respectful and safe environment.?

Moreover, the resolution sets the stage for the College Republicans possibly losing official student group status and or ASi funding.

Amid heavy campus police presence at an Oct. 17 anti-terrorism rally in Malcolm X Plaza, some members of the crowd turned angry when the College Republicans stepped on homemade Hezbollah and Hamas flags, though the student group claims they were not initially aware the flags contained the Arabic symbol for God.

After that, the College Republican-organized rally dissolved into a heated shouting match between the group and a mix of students, including some Muslim students, eventually resulting in formal complaints to student representatives.

?They were voicing their concerns that this event was even allowed. They were offended,? said Kimberly Castillo, board member and chair of University Affairs, the committee that drafted the resolution. ?We felt it our duty to respond.?

Administrators have been criticized for even allowing the rally to take place.

?The actions on the part of the College Republicans amount to no more than hateful religious intolerance, and constitutes an attempt to defy policies outlined and defined by San Francisco State University?s values,?

PHOTO

Leigh Wolf, left, press information officer for the College Republicans, spoke to several students including Ramsey El-Qare, 25, center, a political science major, during an anti-terrorism rally in M X Plaza on October 17th, the rally where the flag stomping occurred.



Hanna Christa Matthews | staff photographe

ADVERTISEMENT





**CRSFSUvR_First_Am_Compl_Ex_G_0076**

[X] : ASI Passes Resolution Against Flag Stomping                                    Page 2 of 2

the resolution says. ?Members? pre-mediated the stomping of the flags
knowing it would offend some people and possibly incite violence.?

ASi board members Joicy Serrano and Faith Cushenberry have been
appointed to the Student Organization Hearing Panel, which will convene
when the OSPLD investigation concludes.

Joey Greenwell, director of the OSPLD, declined to comment and did not
give a time frame when it might be finished, saying all matters of the
investigation are confidential.

The College Republicans said they will take legal action against the
university if sanctions are imposed upon them, citing their First
Amendment right to freedom of speech.

Though ASi has taken a public stance denouncing the group before the
investigation is over, Castillo said so far the resolution is the ?facts
speaking for themselves? not necessarily a license to take action against
the College Republicans.

?We still want to wait for due process,? Castillo said.

Even so, the resolution says if the SOHP finds the College Republicans did
violate University policies and purposely engaged in hateful speech they ?
will suspend any further funding of this organization?s programming.?

» E-mail Jason Shuffler @ jshuffle@sfsu.edu

A PUBLICATION OF THE JOURNALISM DEPARTMENT @ SAN FRANCISCO STATE UNIVERSITY

BACK TO                    Copyright © 2003-2004 Xpress Online - Journalism Department - San Francisco S
TOP                                                                                Unive

CRSFSUvR_First_Am_Compl_Ex_G_0077

Dear Mr Clark,

I am writing to you as President of the College Republicans to follow-up with you
regarding the letter of complaint that was received by the Office of Student Programs and
Leadership Development on Thursday, October 26, 2006, notifying the office of alleged
violations of University policy.  The complaint is in regards to alleged actions at a
College Republican sponsored event, "Anti Terrorism Rally,"  that occurred in Malcolm
X Plaza from 12-2 PM on October 17, 2006.  The complaint describes alleged actions of
walking on a banner with the word "Allah" written in Arabic script.

I am writing to inform you that the Office of Student Programs and Leadership
Development has concluded its investigation into the events that occurred on October, 17,
2006 in Malcolm X Plaza.  The investigation was put in place to review the following
alleged violations of University Policy as were addressed in the written
complaint:

1. Allegations of attempts to incite violence and create a hostile environment 2.
Allegations of actions of incivility (Standards for Student Conduct Title V, 41301)

Resources presented by interviewees during interview process for review include:
1. Standards for Student Conduct Title V, 41301 2. CUSP II Strategic Plan 3. California
penal code

The Investigative report has been forwarded to the Student Organization Hearing Panel
for review.  The chair of SOHP, D.J.
Morales, is your contact person should you have specific questions regarding this review.
Her email is dmorales@sfsu.edu.  (I have cc her on this message).  She will also be in
contact with you regarding any questions and specifics regarding the review. You may
continue to contact me regarding any general questions regarding the SOHP process.
You can find the process online at
http://www.sfsu.edu/~ospld/conduct/hearing_panel.htm.  For a copy of the Code of
Conduct, please see http://www.sfsu.edu/~ospld/conduct/policies.htm. I have also
attached a word copy of  these documents, to this email for your convenience.
To review CUSP II, please see
http://academic.sfsu.edu/apee/planning/plan05-10.php.

Please keep in mind Carl that you as a student organization have the right to have a
representative at any stage of possible disciplinary proceedings.  However, attorneys are
not permitted as representatives in this process.

Sincerely,
Joey Greenwell

--
Joey D. Greenwell, Director

CRSFSUvR_First_Am_Compl_Ex_H_0078

Office of Student Programs and Leadership Development Student Services Building,
Suite 105 San Francisco State University 1600 Holloway Ave San Francisco, CA 94132

415-338-3885 (Direct)
415-338-3888 (Assistant)
415-338-2172 (Fax)
http://www.sfsu.edu/~ospld

Empowering students to succeed as academic scholars, community leaders and
conscientious citizens at SFSU and beyond.

CRSFSUvR_First_Am_Compl_Ex_H_0079



March 7, 2007

**VIA U.S. MAIL AND FACSIMILE**

President Robert A. Corrigan
President's Office, ADM 562
1600 Holloway Avenue
San Francisco, CA 4132

Re: SFSU College Republicans – SOHP Hearing on March 9, 2007

Dear Dr. Corrigan:

On behalf of the American Civil Liberties Union of Northern California ("ACLU"), I am writing you concerning the Student Organization Hearing Panel ("SOHP") scheduled for March 9, 2007. This hearing is in response to a student complaint filed against the College Republicans, based on events that occurred on October 17, 2006 at a public rally sponsored by that student organization. Because this hearing raises the possibility of sanctions being imposed for the exercise of First Amendment rights, an issue of paramount concern to the ACLU, we would like to address the important constitutional principles that we believe are at stake. We hope that you will share this letter with the members of the panel, as well as any interested parties, and that it will be relevant and helpful to the panel's review process.

The ACLU strongly supports SFSU's commitment and responsibility to promote a campus atmosphere of tolerance and nondiscrimination so that equal educational opportunity is available to all. However, the core purpose of the First Amendment is to prevent government punishment of protected political speech — including views that are highly controversial, offensive or even hostile toward others. Public universities, in particular, have a responsibility to support the diverse exchange of beliefs and to keep the marketplace of ideas functioning and free of censorship. As we will discuss further below, and based on the facts as we understand them concerning the October 17 rally, sanctioning the College Republicans based on this complaint would violate the First Amendment's protection for freedom of expression.

M. QUINN DELANEY, *LITIGATION CHAIR* | ROBERT CAPISTRANO, SUSAN FREIWALD, LISA HONIG, ROBERTA SPIECKERMAN, *VICE CHAIRPERSONS* | NANCY PEMBERTON, *SECRETARY/TREASURER*
DOROTHY M. EHRLICH, *EXECUTIVE DIRECTOR* | MAYA HARRIS, *ASSOCIATE DIRECTOR* | ALAN SCHLOSSER, *LEGAL DIRECTOR*
ANN BRICK, MARGARET C. CROSBY, TAMARA LANGE, JULIA HARUMI MASS, MICHAEL RISHER, JORY STEELE, *STAFF ATTORNEYS*
ERIKA CLARK, *COMMUNICATIONS DIRECTOR* | CHERI BRYANT, *DEVELOPMENT DIRECTOR* | JUSTINE SARVER, *ORGANIZING DIRECTOR*
NATASHA MINSKER, NICOLE A. OZER, MARK SCHLOSBERG, *POLICY DIRECTORS*
STEPHEN V. BOMSE, *GENERAL COUNSEL*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
39 DRUMM STREET, SAN FRANCISCO, CA 94111 | T/415.621.2493 | F/415.255.1478 | TTY/415.863.7832 | WWW.ACLUNC.ORG


CRSFSUvR_First_Am_Compl_Ex_I_0080

President Robert Corrigan
March 7, 2007
Page 2


I.        The Rally and Its Aftermath

On October 17, 2006, the SFSU College Republicans held an "anti-terrorism" rally in Malcolm X Plaza.  During the rally, members of the group stepped on two handmade butcher paper flags designed to replicate the flags of the groups Hamas and Hezbollah, organizations that the College Republicans believe to be terrorist groups.  These flags incorporate the Arabic symbol for God, and that symbol was apparently duplicated in the handmade flags.

This action of stepping on the flags was intended to express the College Republican's condemnation of Hamas and Hezbollah, and to express the College Republicans' support for victims of terrorist acts.  Some of the onlookers at the rally were deeply offended by this disrespectful treatment of the flag, and what they felt was hostility being expressed to the Muslim religion.  Some approached the stage to express their anger, and to prevent the flags containing the religious symbol from being stepped on.  In response, attempts were made to modify the makeshift flags by removing the word Allah.  Angry and heated arguments ensued, and ultimately the Hamas flag was given to one of the outraged onlookers.

Four days after the event, the College Republicans were notified that a student complaint had been filed against them for committing "acts of incivility" and "inciting violence." The SOHP investigation has led to the March 9 hearing panel and the possibility that sanctions will be imposed on the College Republicans for their actions with respect to the flags.

II.       The First Amendment's Protection for "Offensive" Speech

The protection of constitutional rights often involves a balancing of important but conflicting interests.  In this case, the expression of the political viewpoint of some students has been perceived as deeply offensive and hostile to the religious feelings and viewpoints of other students.  While the University does and should have a responsibility to maintain a safe environment so that all students can have an equal opportunity to learn, in exercising that responsibility it is vital to preserve the free speech rights established by the First Amendment. In this case, based on the facts that have been reported, imposing sanctions on the College Republicans would violate the First Amendment rights of the group and its members.

President Robert Corrigan
March 7, 2007
Page 3

First, the expressive conduct at issue in this case is protected by the First Amendment. Though stepping on Hamas and Hezbollah flags is not an act of pure speech, it is an expressive act of communication that falls squarely within the zone of core constitutional protection. The U.S. Supreme Court set forth this test for whether expressive conduct is protected by the First Amendment: "whether [a]n intent to convey a particularized message was present and [whether] the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). The context of the act is also central to the analysis. In this seminal flag-burning case, the "expressive, overtly political nature of [the group's] conduct was both intentional and overwhelmingly apparent." *Texas v. Johnson*, 491 U.S. at 406. The College Republicans intended to communicate an "anti-terrorist" message by standing on Hamas and Hezbollah flags to express their condemnation of these groups, and to do so in a forum where their message would be heard and understood by those attending the rally. The expression of such political views is at the heart of First Amendment freedoms.

Second, the suggestion that the College Republicans' actions qualify as "incitement" is not legally supportable. For speech to be lawfully restricted by government on these grounds, the speech must meet three criteria: (1) express advocacy of law violation; (2) the advocacy must call for *immediate* law violation; and (3) the immediate law violation must be *likely* to occur. *Brandenburg v. Ohio*, 395 U.S. 444 (1969). None of these elements are satisfied here, as the College Republicans did nothing to advocate any violation of the law.

Third, the fact that the College Republicans' viewpoint, and the means they chose to express themselves, was offensive or even abhorrent to some does not override the protection provided by the First Amendment. In fact, the Supreme Court has given us a clear statement of that principle in a case involving desecration of the United States flag:

> We are aware that desecration of the flag is deeply offensive to many. But the same might be said, for example of virulent ethnic and religious epithets…, vulgar repudiations of the draft, … and scurrilous caricatures…. 'If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.'

President Robert Corrigan
March 7, 2007
Page 4

*U.S. v. Eichman*, 496 U.S. 310, 318-19 (1990) (citations omitted). While "civility" and respect for the views of others is an important and worthy goal for the University community, it cannot be used as the defining test for what expression is constitutionally protected.

Fourth, the angry reaction of those in the audience who felt a sacred symbol was being desecrated is certainly understandable. In the post- 9/11 era in this country, Muslims have been subjected to many acts of discrimination, both by the government and by private actors. The ACLU is working closely with other organizations to protect and defend the rights of victims of such unlawful discrimination and anti-Muslim bias, and we understand that balancing free speech rights with equal protection rights can be a difficult and delicate task. However, while the expressive conduct of the College Republicans clearly angered and deeply disturbed some listeners at the rally, this does not deprive the speech or the speakers of constitutional protection. A cardinal tenet of the First Amendment is that free speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949). The U.S. Supreme Court has long since rejected the idea of a "hecklers' veto" that would result from letting the audience response determine the protection afforded free expression. *Terminiello v. Chicago,* 337 U.S. 1.[1]

Finally, the College Republicans' expression does not constitute "hostile environment" harassment under the law, as has been alleged in this matter. The Supreme Court has held that for student conduct to constitute punishable "hostile environment" harassment, it must be "so severe, persistent, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999). Speech at a political rally that neither targets specific individuals nor is severe or persistent enough to bar the educational access of others does not cross this constitutional line. While there are lawful ways for the University to respond to incidents that ignite ideological clashes or single out certain groups and to acknowledge the impact of such speech on the community, the imposition of discipline is an unconstitutional response under this set of facts.

---

1  While fully recognizing that disrespectful and contemptuous treatment of the United States  flag in public may cause justifiable outrage among onlookers, the United States Supreme Court in no less than five "flag desecration" cases has held that punishment for such actions would violate the First Amendment.  *Street v. New York*, 394 U.S. 576 (1969); *Smith v. Goguen*. 415 U.S. 566 (1974); *Spence v. Washington*, 418 U.S. 405 (1974); *Texas v. Johnson*, 491 U.S. 397; *United States v. Eichman*, 496 U.S. 310.

CRSFSUvR_First_Am_Compl_Ex_I_0083

President Robert Corrigan
March 7, 2007
Page 5

III.     Conclusion

The ACLU supports the University's efforts to create a diverse campus community that is a safe learning environment for all, free from discrimination and harassment. Institutional vigilance to this obligation is a vital component of providing a fair, open and equal educational opportunity. However, this laudable goal must be pursued in a manner that also extends full support to free and open dialogue, even when difficult or controversial issues arise or when the speech is offensive and stirs some people to anger. Because the College Republicans were engaging in protected First Amendment activity at their rally, official punishment of the group or its members would violate the Constitution. Therefore, we strongly urge the administration of San Francisco State University not to impose punitive sanctions in response to this incident.

If there is a cure in the marketplace of ideas for speech one disagrees with, that cure is counter-speech, not censorship. This principle is evident in aspects of this incident to date. The "anti-terrorism" rally of the College Republicans, and their explicit condemnation of Hamas and Hezbollah, was intended to counter viewpoints expressed on campus in support of these organizations. And, after this incident, the Associated Students board exercised its free speech rights by unanimously adopting a resolution condemning the group, finding that, "The actions on the part of the College Republicans amount to no more than hateful religious intolerance." *ASI Passes Resolution Against Flag Stomping: Organization says College Republicans were in the Wrong*, Jason Shuffler, The Golden Gate Xpress, November 28, 2006. The University should do what it can to foster and support a robust exchange of student ideas and viewpoints.

If this incident raises University concerns about bias or hostility on the SFSU campus, there are ways to respond that deepen student engagement with those issues, educate students regarding community diversity, and take positive steps to promote equality and understanding. The University should use this controversial moment as an opportunity to foster productive dialogue through hosting a community meeting, facilitating an educational debate, or conducting an all-school training. The University has used such affirmative steps in the past in the midst of similar campus controversies, and we urge that such measures be considered instead of punitive sanctions that would violate free speech rights.

CRSFSUvR_First_Am_Compl_Ex_I_0084

President Robert Corrigan
March 7, 2007
Page 6

The United States Supreme Court should have the last word:

The constitutional right of free expression is powerful medicine in
a society as diverse and populous as ours.  It is designed and
intended to remove governmental restraints from the arena of
public discussion, putting the decision as to what views shall be
voiced largely into the hands of each of us, in the hope that use of
such freedom will ultimately produce a more capable citizenry and
more perfect polity and in the belief that no other approach would
comport with the premise of individual dignity and choice upon
which our political system rests.

To many, the immediate consequence of this freedom may often
appear to be only verbal tumult, discord, and even offensive
utterance.  These are, however, within established limits, in truth
necessary side effects of the broader enduring values which the
process of open debate permits us to achieve.  That the air may at
times seem filled with verbal cacophony is, in this sense not a sign
of weakness but of strength.

*Cohen v. California*, 403 U.S. 15, p. 24-25 (1971)

Yours truly,

Alan L. Schlosser
Legal Director

cc:    Joey Greenwell, Director of Student Programs



**Foundation for Individual Rights in Education**

601 Walnut Street, Suite 510 • Philadelphia, Pennsylvania 19106
**T** 215-717-3473 • **F** 215-717-3440 • fire@thefire.org • www.thefire.org

Greg Lukianoff
PRESIDENT

Robert L. Shibley
VICE PRESIDENT OF
OPERATIONS

Samantha K. Harris
DIRECTOR OF LEGAL AND
PUBLIC ADVOCACY

Alan Charles Kors
CO-FOUNDER AND
CHAIRMAN EMERITUS

BOARD OF DIRECTORS

Harvey A. Silverglate
CO-FOUNDER AND
CHAIRMAN

William J. Hume
Joseph M. Maline
Marlene Mieske
Daphne Patai
Virginia Postrel
James E. Wiggins

BOARD OF ADVISORS

Lloyd Buchanan
T. Kenneth Cribb, Jr.
Candace de Russy
William A. Dunn
Benjamin F. Hammond
Nat Hentoff
Roy Innis
Wendy Kaminer
Woody Kaplan
Leonard Liggio
Herbert London
Peter L. Malkin
Milton Rosenberg
John R. Searle
Ricky Silberman
Christina Hoff Sommers

January 23, 2007

President Robert A. Corrigan
President's Office, ADM 562
1600 Holloway Avenue
San Francisco, California 94132

_Sent via U.S. Mail and Facsimile (415-338-6210)_

Dear President Corrigan:

As you can see from our directors and board of advisors, FIRE unites civil rights and civil liberties leaders, scholars, journalists, and public intellectuals across the political and ideological spectrum on behalf of liberty, due process, legal equality, voluntary association, freedom of speech, and academic freedom on our nation's college campuses. Our website, www.thefire.org, will give you a greater sense of our identity and activities.

FIRE is deeply concerned about the threat to free expression posed by San Francisco State University's (SFSU's) investigation of the SFSU College Republicans for holding a controversial yet constitutionally protected anti-terrorism rally on October 17, 2006.

This is our understanding of the facts; please inform us if you believe we are in error. On October 17, the College Republicans held an anti-terrorism rally in Malcolm X Plaza on the SFSU campus. In the context of protesting terrorist organizations, several College Republicans stepped on butcher paper that they had painted to resemble the flags of Hamas and Hezbollah. Unbeknownst to the protestors, the Arabic script they had painted on the flags represented the word "Allah."

On October 26, the Muslim Student Association (MSA) submitted a formal complaint to the Office of Student Programs and Leadership Development (OSPLD). According to OSPLD Director Joey Greenwell, the complaint accused the College Republicans of "walking on a banner with the word 'Allah' written in Arabic script." By early December, Greenwell sent an e-mail to the College Republicans saying that the OSPLD had concluded its investigation into "allegations of attempts to incite violence and create a hostile environment" and "allegations of actions of incivility." Pursuant to Student Group Misconduct procedures, the OSPLD has passed its

CRSFSUvR_First_Am_Compl_Ex_I_0086

investigation along to the Student Organization Hearing Panel, which will schedule a hearing and rule on the allegations.

A public university such as SFSU should not investigate—and *cannot* lawfully punish—students for engaging in expression that is unquestionably protected by the First Amendment. (See *Texas v. Johnson*, 491 U.S. 397 (1989), holding that burning an American flag as part of a political protest is expression protected by the First Amendment). SFSU has a duty to uphold the First Amendment rights of all of its students, even if their expressive activity offends the religious sensibilities of some. The First Amendment not only protects students' right to free expression, but prevents SFSU from forcing its students to abide by the decrees of any faith. Just as SFSU could not punish students for taking Jesus' name in vain or for driving a car on the Jewish sabbath, it cannot punish students for stepping on a makeshift flag bearing the word "Allah."

Moreover, SFSU's own policies protect students' right to engage in expressive activity. The Guidelines for Academic Freedom and Responsibility protect the right of students and faculty "to meet and share their views on a wide spectrum of intellectual and social issues." Students' expression cannot cease to garner protection under SFSU's policies merely because that expression is disagreeable to some members of the community.

The accusation that the College Republicans' conduct amounted to "incitement" and "hostile environment" harassment is wholly without merit. "Incitement" is a clearly defined legal term applying not simply to offensive or unpopular speech, but to speech that encourages "imminent lawless action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). For example, a speaker exhorting an angry, violent crowd to attack a government office could be found guilty of incitement. However, speech does not constitute incitement if a speaker's words result in violence because people despise what that speaker said and wish to silence him or her. In fact, the Court has specifically addressed speech that arouses anger by stating unequivocally that a principal "function of free speech under our system of government is to invite dispute," and, further, that free speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949). By punishing students on the basis of how harshly, violently, or unreasonably others might react to their words, SFSU would create an incentive for those who disagree to react violently, conferring a "heckler's veto" on speech to the least tolerant members of the community.

Further, the College Republicans' expression does not constitute hostile environment harassment. The Supreme Court has held that for student conduct to constitute constitutionally unprotected hostile environment harassment, it must be "so severe, persistent, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999). Clearly, the speech in question here—an isolated expressive act, made in the context of a political demonstration—fails to meet the exacting demands of this precise and well-established legal standard. Moreover, in 2003, the Department of Education's Office of Civil Rights (OCR) issued a letter to college presidents specifically to clarify that "the offensiveness of a particular expression, standing alone, is not a legally sufficient basis

2

CRSFSUvR_First_Am_Compl_Ex_I_0087

to establish a hostile environment under the [harassment] statutes enforced by OCR." It is thus wholly unreasonable and legally untenable to assert that the College Republicans' one-time demonstration was severe, persistent, and pervasive harassment that denied any onlookers the opportunity to benefit from their educational experiences.

Finally, SFSU's prohibition on "actions of incivility" unquestionably violates the First Amendment. Indeed, most speech and expression that is "uncivil" is nonetheless entirely constitutionally protected. As the U.S. Supreme Court has stated, "the mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667, 670 (1973). If any action that some students find offensive may be punished as "uncivil," then students' right to protest—surely a cherished and oft-exercised right at SFSU—would be completely undermined, for the very nature of a protest entails expressing a sentiment with which some in the community will disagree. Even when protestors' expression is coarse or vitriolic, SFSU is constitutionally and morally bound to protect it.

The resolution passed by the Associated Students, Inc. denouncing the College Republicans' actions may indicate that the greater campus community finds the College Republicans' protest methods reprehensible. Nonetheless, SFSU has a duty to ensure that the outrage of the majority does not silence the voice of the minority. At an institution as diverse as SFSU, it is to be expected that disagreements between students will occur and tensions among the student body will occasionally run high. SFSU must teach its students that the way to deal with disagreeable speech is to counter it with more speech, not to silence it with sanctions and punishment.

Please spare SFSU the embarrassment of fighting against the Bill of Rights, by which it is legally and morally bound. SFSU must immediately cease its investigation of the College Republicans for engaging in constitutionally protected expression. FIRE hopes to resolve this situation amicably and swiftly; we are, however, prepared to use all of our resources to see this situation through to a just and moral conclusion.

We request a response on this matter by Tuesday, February 6, 2007.

Sincerely,

Tara E. Sweeney
Senior Program Officer

cc:
John M. Gemello, Provost and Vice President for Academic Affairs, SFSU
J. E. Saffold, Dean of Students and Vice President for Student Affairs, SFSU
Kevin Bowman, Associate Vice President for Student Affairs, SFSU
Joey Greenwell, Director, Office of Student Programs and Leadership Development, SFSU

3

CRSFSUvR_First_Am_Compl_Ex_I_0088

Maire Fowler, President, Associated Students, Inc., SFSU
Isidro Armenta, Vice President of Internal Affairs, Associated Students, Inc., SFSU
Hector Jimenez Cardenas, Associated Students, Inc., SFSU
Michael DeGroff, SFSU College Republicans

4

CRSFSUvR_First_Am_Compl_Ex_I_0089

# FIRE

## Foundation for Individual Rights in Education

601 Walnut Street, Suite 510 • Philadelphia, Pennsylvania 19106
**T** 215-717-3473 • **F** 215-717-3440 • fire@thefire.org • www.thefire.org

Greg Lukianoff
PRESIDENT

Robert L. Shibley
VICE PRESIDENT OF
OPERATIONS

Samantha K. Harris
DIRECTOR OF LEGAL AND
PUBLIC ADVOCACY

Alan Charles Kors
CO-FOUNDER AND
CHAIRMAN EMERITUS

BOARD OF DIRECTORS

Harvey A. Silverglate
CO-FOUNDER AND
CHAIRMAN

William J. Hume
Joseph M. Maline
Marlene Mieske
Daphne Patai
Virginia Postrel
James E. Wiggins

BOARD OF ADVISORS

Lloyd Buchanan
T. Kenneth Cribb, Jr.
Candace de Russy
William A. Dunn
Benjamin F. Hammond
Nat Hentoff
Roy Innis
Wendy Kaminer
Woody Kaplan
Leonard Liggio
Herbert London
Peter L. Malkin
Milton Rosenberg
John R. Searle
Ricky Silberman
Christina Hoff Sommers

March 7, 2007

President Robert A. Corrigan
President's Office, ADM 562
1600 Holloway Avenue
San Francisco, California 94132

**URGENT**

*Sent via U.S. Mail and Facsimile (415-338-6210)*

Dear President Corrigan:

It is with both deep disappointment and renewed resolve that FIRE is forced to write to you again to voice our grave concern about the threat to free expression posed by San Francisco State University's (SFSU's) ongoing investigation of the SFSU College Republicans for the content of an anti-terrorism rally held October 17, 2006.

FIRE has learned that SFSU's Student Organization Hearing Panel (SOHP) plans to hold a hearing this Friday, March 9, to adjudicate the October 26, 2006 complaint against the College Republicans. The College Republicans stand accused of "attempts to incite violence and create a hostile environment" and "actions of incivility" for "walking on a banner with 'Allah' written in Arabic script." The banners in question were pieces of butcher paper on which the College Republicans had drawn the flags of Hamas and Hezbollah.

FIRE strongly urges SFSU to cancel the SOHP hearing immediately and end any further investigation of the College Republicans in recognition of the plain fact that as a public institution, SFSU *cannot* lawfully punish the College Republicans for engaging in protected symbolic political expression. It is imperative that SFSU recognize that it is both legally and morally bound to respect the right to free expression as guaranteed to its students by the Constitution of the United States, by the California constitution, and by its own institutional commitments to free speech.

Legally speaking, this is not a close call, and the administrators involved in this action risk being held individually liable in a court of law for violating the constitutional rights of the accused students. Even if every allegation in the complaint is true, there are *no* lawful grounds for punishment or even further investigation.

CRSFSUvR_First_Am_Compl_Ex_I_0090

As we made clear in our previous letter, the College Republicans' actions cannot lawfully be found to constitute "incitement" or "hostile environment" harassment. Incitement occurs when a speaker exhorts his or her supporters to engage in immediate unlawful action. By contrast, speech *cannot* constitute "incitement" if violence results because the audience *disagrees* with the speaker and wishes to silence him or her. As the U.S. Supreme Court held in *Brown v. Louisiana*, 383 U.S. 131 (1966), "[p]articipants in an orderly demonstration in a public place are not chargeable with the danger, unprovoked except by the fact of the constitutionally protected demonstration itself, that their critics might react with disorder or violence." Indeed, the Court has repeatedly acknowledged that protected speech may often be "provocative and challenging," provoking "profound unsettling effects as it presses for acceptance of an idea" in the mind of a listener, and even stirring anger and unrest. *Terminiello v. Chicago*, 337 U.S. 1 (1949). The College Republicans' speech was exactly the type of provocative political speech the First Amendment is designed to protect.

Similarly, the isolated expressive activity in question here fails *in every respect* to meet the strict legal threshold for harassment. The Supreme Court has defined "hostile environment" harassment in the educational setting to be behavior "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999). The actions of the College Republicans during one "anti-terrorism" rally cannot possibly constitute behavior "so severe, pervasive and objectively offensive" as to be punishable "hostile environment" harassment. To maintain otherwise is simply untenable.

As for the university's argument that the issue is not flag desecration but instead is—as a university spokesperson told a columnist for the *San Francisco Chronicle*, "the desecration of Allah"—I simply do not believe that you or anyone at your university seriously believes that a public university in America can punish the desecration of a religious symbol. If, perhaps, your legal counsel is telling you that the Supreme Court's decision in *Virginia v. Black*, 538 U.S. 343 (2003) allows the state to ban the desecration of religious symbols, this is wholly incorrect, and requires not a misreading but rather a deliberate twisting of that decision. In fact, *Black* states that "burning a cross at a political rally would almost certainly be protected expression," and only permits the regulation of cross burning when the burning cross is intended to convey "a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." This decision was explicitly based on cross burning's "long and pernicious history as a signal of impending violence," given that it is "inextricably intertwined with the history of the Ku Klux Klan." No one watching the video of the College Republicans' protest could reasonably conclude that the students watching the protest had any fear that they were immediately about to be harmed or killed. Any argument based upon *Virginia v. Black* would be an argument made in bad faith and would not be taken seriously in a court of law.

Any punishment enforced against the College Republicans under SFSU's student conduct policies as a consequence of their exercise of their First Amendment rights is an unlawful deprivation of constitutional rights under 42 U.S.C.S. § 1983 for which SFSU administrators can be sued in their individual capacities. Moreover, when the law is as clearly established as it is in this case—the Supreme Court's well-known and unequivocal holding in *Texas v. Johnson*, 491

U.S. 397 (1989) that flag desecration is constitutionally protected—any claims of immunity on the part of the individual administrators will likely fail. State officials and employees are offered only *qualified* immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Davis v. Scherer*, 468 U.S. 183 (1984).

Existing First Amendment law leaves no doubt that the College Republicans' expressive activity enjoys complete protection under the First Amendment. No reasonable person could claim otherwise. As such, your persistence in pursuing potential disciplinary sanctions against the College Republicans effectively waives immunity from liability under § 1983. To be clear, if you continue to ignore your constitutional obligations, you risk personal liability for depriving your students of their rights.

We ask you to stop these proceedings immediately. There is nothing to investigate other than constitutionally protected expression. I believe everyone at SFSU knows this. Be assured that neither the law nor the public will long tolerate such brazen attempts to circumvent the Bill of Rights.

Due to the urgent nature of this matter, we request a response by tomorrow, Thursday, March 8, 2007.

 Sincerely,

 Greg Lukianoff
President

cc:
John M. Gemello, Provost and Vice President for Academic Affairs, SFSU
J. E. Saffold, Dean of Students and Vice President for Student Affairs, SFSU
Kevin Bowman, Associate Vice President for Student Affairs, SFSU
Patricia B. Bartscher, University Counsel, SFSU
Joey Greenwell, Director, Office of Student Programs and Leadership Development, SFSU
Maire Fowler, President, Associated Students, Inc., SFSU
Isidro Armenta, Vice President of Internal Affairs, Associated Students, Inc., SFSU
Hector Jimenez Cardenas, Associated Students, Inc., SFSU
Joicy Serrano, Ethnic Studies Representative, SFSU
D. J. Morales, Director of Residential Life, SFSU
Robert Williams, Counseling Department, SFSU
Amy Smith, Assistant Professor of Psychology, SFSU
Christopher Oropeza, Creative Arts Representative, SFSU
Leigh Wolf, SFSU College Republicans
Michael DeGroff, SFSU College Republicans
Eugene Volokh, Gary T. Schwartz Professor of Law, UCLA School of Law
Juniper Lesnik, Legal Fellow, ACLU of Northern California

Nat Hentoff, *The Village Voice*
Debra Saunders, *San Francisco Chronicle*

CRSFSUvR_First_Am_Compl_Ex_I_0093

**SFGate**.com

## S.F. State -- Hecklers' paradise

Debra J. Saunders
Thursday, February 8, 2007

WHAT IS San Francisco State University teaching that makes student leaders think that if they don't like what other students say, they can use student organizations to stifle those with dissenting views? Do they even know about the First Amendment?

This story starts with an "anti-terrorism rally" held last October on campus by the College Republicans. To emphasize their point, students stomped on Hezbollah and Hamas flags. According to the college paper, the Golden Gate (X)Press, members of Students Against War and the International Socialist Organization showed up to call the Republicans "racists," while the president of the General Union of Palestinian Students accused the Repubs of spreading false information about Muslims.

In November, the Associated Students board passed a unanimous resolution, which the (X)Press reported, denounced the California Republicans for "hateful religious intolerance" and criticized those who "pre-meditated the stomping of the flags knowing it would offend some people and possibly incite violence."

Now you know that there are students who are opposed to desecrating flags on campus -- that is, if the flags represent terrorist organizations.

But wait -- there's more. A student filed a complaint with the Office of Student Programs and Leadership Development. OSPLD Director Joey Greenwell wrote to the College Republicans informing them that his office had completed an investigation of the complaint and forwarded the report to the Student Organization Hearing Panel, which will adjudicate the charge. At issue is the charge that College Republicans had walked on "a banner with the world 'Allah' written in Arabic script" -- it turns out Allah's name is incorporated into Hamas and Hezbollah flags -- and "allegations of attempts to incite violence and create a hostile environment," as well as "actions of incivility."

At an unnamed date, the student panel could decide to issue a warning to, suspend or expel the GOP club from campus.

Maybe SFSU should just put up a sign that reads: Conservatives need not apply.

The Foundation for Individual Rights in Education, a group that stands up for free speech on campus, has taken up the College Republicans' cause. FIRE sent a letter to SFSU President Robert Corrigan that urged him to "spare SFSU the embarrassment of fighting against the Bill of Rights." The letter noted, "Burning an American flag as part of a political protest is expression protected by the First Amendment." And: "Speech does not constitute incitement if a speaker's words result in violence because people despise what the speaker said and wish to silence him or her."

"By punishing students on the basis of how harshly, violently or unreasonably others might react to their words," the letter argued, "SFSU would create an incentive for those who disagree to react violently, conferring a 'heckler's veto' on speech to the least tolerant members of the community."

**CRSFSUvR_First_Am_Compl_Ex_J_0094**

The university's response? Spokesperson Ellen Griffin told me, "The university stands behind this process."

And: "I don't believe the complaint is about the desecration of the flag. I believe that the complaint is the desecration of Allah."

To which FIRE Vice President Robert Shibley responded, "It really doesn't make any difference whether it's the flag or a religious figure."

If the College Republicans had denigrated Allah, I would defend their right to do so, while noting I have no use for the gratuitous Islam-bashing endemic in certain circles.

But it is not the students' fault that Allah is on the Hamas and Hezbollah flags -- in a language they don't read.

Besides, every freshman should know that students have a right to say what they will about any religion, while believers enjoy the right to talk back.

"I'm confident that in the end of the day, the Constitution will vindicate us," SFSU junior Leigh Wolf of the College Republicans told me. Wolf is well aware of the double-standard on campus: Left-leaning students hide behind the First Amendment while trying to silence any conservative voices that dare to be heard.

Yumi Wilson, who teaches journalism at SFSU and previously worked at The Chronicle, told me, "My belief is that people should be able to have the freedom of expression, whether it is popular or not. That's what makes my country different from other countries." After all, she added, "If I don't like them, I can walk away."

As for the students who want to punish the College Repubs, they might want to consider how their actions reflect on SFSU. A university is supposed to be a place of learning and a forum made more vibrant by the free exchange of ideas, but this exercise makes SFSU look like a playground where bullies rule.

*E-mail: dsaunders@sfchronicle.com.*

http://sfgate.com/cgi-bin/article.cgi?f=/c/a/2007/02/08/EDGRJN76O61.DTL

This article appeared on page **B - 7** of the San Francisco Chronicle

**CRSFSUvR_First_Am_Compl_Ex_J_0095**