BENJAMIN W. BULL (AZ Bar No. 009940)
TRAVIS C. BARHAM* (AZ Bar No. 024867
Alliance Defense Fund
15333 North Pima Road, Suite 165
Scottsdale, Arizona  85260
 (480) 444-0020; (480) 444-0028—facsimile
bbull@telladf.org; tbarham@telladf.org

DAVID A. FRENCH* (TN Bar No. 16692; KY Bar No. 86986)
Alliance Defense Fund
12 Public Square, Columbia, TN 38401
(931) 490-0591; (931) 490-7989—facsimile
dfrench@telladf.org

NATHAN W. KELLUM* (TN Bar No. 13482; MS Bar No. 8813)
Alliance Defense Fund
699 Oakleaf Office Lane, Suite 107, Memphis, TN 38117
(901) 684-5485; (901) 684-5499—facsimile
nkellum@telladf.org

DAVID J. HACKER (CA Bar No. 249272; IL Bar No. 6283022)
Alliance Defense Fund
101 Parkshore Drive, Suite 100, Folsom, CA 95630
(916) 932-2850; (916) 932-2851—facsimile
dhacker@telladf.org

Attorneys for Plaintiffs College Republicans at San Francisco State University,
Leigh Wolf and Trent Downes
* *Pro hac vice* admission

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **COLLEGE REPUBLICANS AT SAN FRANCISCO STATE UNIVERSITY**, et al.<br><br>Plaintiffs,<br><br>v.<br><br>**CHARLES B. REED**, et al.<br><br>Defendant. | Case No.: C-07-3542-WDB<br><br>Honorable Wayne D. Brazil<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: October 31, 2007<br>Hearing Time: 1:30 p.m. |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ...................................................................................................................1

II.   THE SPEECH CODE VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS BY PUNISHING PROTECTED SPEECHAND EXPRESSIVE CONDUCT...................................2

    A.   Defendants' Speech Code Restricts Protected Speech........................................2

    B.   Defendants' Speech Code Restricts Expressive Conduct Protected by the Constitution. 4

III.  DEFENDANTS' SPEECH CODE FAILS SCRUTINY ON OVERBREADTH AND VAGUENESS GROUNDS. ................................................................................................7

    A.   The Student Code and Student Group Policies Are Overbroad. .......................7

    B.   The Student Code and Student Group Misconduct Policies Are Vague. .........9

IV.   DEFENDANTS' MISCONSTRUE THE PRELIMINARY INJUNCTION STANDARD OF REVIEW. ...........................................................................................................................11

V.    A PRELIMINARY INJUNCTION IS NEEDED. ............................................................11

CONCLUSION ......................................................................................................................13

**TABLE OF AUTHORITIES**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ...................................................... 12

*Adamian v. Jacobsen*, 523 F.2d 929 (9th Cir. 1975) ............................................................................... 9

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002) .............................................................................. 7

*Bair v. Shippensburg University*, 280 F. Supp. 2d 357 (M.D. Pa. 2003) ..................................... 2, 3, 4, 7

*Brown v. Louisiana*, 383 U.S. 131 (1966) ............................................................................................... 5

*Bullfrog Films Inc. v. Wick*, 847 F.2d 502 (9th Cir.1988) ....................................................................... 9

*Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942) .............................................................................. 5

*Cohen v. California*, 403 U.S. 15 (1971) ................................................................................................ 5

*Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968 (9th Cir. 1996) ..................................................... 10

*CR of Rialto, Inc. v. City of Rialto*, 975 F. Supp. 1254 (C.D. Cal. 1997) .............................................. 13

*Dambrot v. Cent. Mich. Univ.*, 839 F. Supp. 477 (1993) ....................................................................... 10

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999) .................................................................. 9

*Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*,
    448 F.3d 1118 (9th Cir. 2006) ........................................................................................................... 11

*Doe v. Univ. of Mich.*, 721 F. Supp. 852 (E.D. Mich. 1989) ............................................................... 6, 7

*Elrod v. Burns*, 427 U.S. 347 (1976) ..................................................................................................... 12

*Fleet Wholesale Supply Co. v. Remington Arms Co.*, 846 F.2d 1095 (7th Cir.1988) ............................ 12

*Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007) ..................................................................................... 6

*Forsyth County v. Nationalist Movement*, 505 U.S. 130 (1992) ............................................................. 8

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ...................................................... 11

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ...................................................................... 5, 9, 10

*Healy v. James*, 408 U.S. 169 (1972) ............................................................................................... 6, 11

*Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*, 385 U.S. 589 (1967) ............................... 7

*Kolender v. Lawson*, 461 U.S. 352 (1983) .............................................................................................. 9

*Miller v. California*, 413 U.S. 15 (1973) ................................................................................................ 5

*NAACP v. Button*, 371 U.S. 415 (1963) .................................................................................................. 9

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ................................................................. 6, 8

*Nat'l People's Action v. Vill. of Wilmette*, 914 F.2d 1008 (7th Cir. 1990) ............................................ 12

*New York v. Ferber*, 458 U.S. 747 (1982) ................................................................................................ 5

*Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir. 1997) ............................................................ 9, 10, 11

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ........................................................................................ 4

*Regan v. Time, Inc.*, 468 U.S. 641 (1984) ................................................................................................. 8

*Rubin v. City of Santa Monica*, 823 F. Supp. 709 (C.D. Cal. 1993) ....................................................... 10

*Sammartano v. First Judicial Dist. Court*, 303 F.3d 959 (9th Cir. 2002) ................................................ 13

*Saxe v. State College Area School District*, 240 F.3d 200 (3d Cir. 2001) ........................................... 3, 9

*Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243 (3d Cir. 2002) .......................................... 3

*Tahoe Keys Prop. Owners' Ass'n v. State Water Res. Control Bd.*,
    28 Cal. Rptr. 2d 734 (Cal. Ct. App. 1994) ........................................................................................ 12

*Texas v. Johnson*, 491 U.S. 397 (1989) ................................................................................................ 5, 6

*Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) ........................ 3, 5

*Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524 (9th Cir. 1993) ........................................... 12

*UWM Post, Inc. v. v. Bd. of Regents of the Univ. of Wis. Sys.*,
    774 F. Supp. 1163 (E.D. Wis. 1991) ............................................................................................ 7, 10

*Vega v. Miller*, 273 F.3d 460 (2d Cir. 2001) ............................................................................................. 7

*Walker-Serrano v. Leonard*, 325 F.3d 412 (3d Cir. 2003) ........................................................................ 6

*Widmar v. Vincent*, 454 U.S. 263 (1981) .................................................................................................. 6

*Widmar*, 454 U.S. at 268 ......................................................................................................................... 11

**Other Authorities**

Harvey A. Silverglate, <u>FIRE's Guide to Free Speech on Campus</u> (2005) .............................................. 4

Laurence Tribe, <u>American Constitutional Law</u> (2d ed. 1988) .................................................................. 3

Wright, Miller & Kane, <u>Federal Practice and Procedure</u> (2007) ............................................................ 12

**Regulations**

Cal. Code Regs. tit. 5, § 41301(a) & (b) ........................................................................................ 1, 2, 3, 13

**INTRODUCTION**

Defendants' Response to Plaintiffs' Motion for Preliminary Injunction misses the point. Instead of demonstrating how the California State University's (CSU) Standards for Student Conduct (Student Code) and San Francisco State University's (SFSU) Student Group Misconduct policy are different from similar university speech codes struck down across the country, Defendants attempt to explain away their constitutionally defective policies with a litigation-motivated declaration and a lengthy explanation of their "complaint resolution process."[1] Defendants cite no case law upholding similar policies, because none exists. Moreover, Defendants' skewed and one-sided portrayal of the unlawful investigation into College Republicans' speech is peripheral to this Motion, except to show that Defendants' speech code is applied with unlimited discretion.[2] College Republicans' Motion represents a *facial* challenge to Defendants' speech code, and does not concern Defendants' unlawful investigation at this time.

No matter how the Defendants attempt to sidestep the constitutional defects in their policies, they cannot escape precedent. The Student Code (Cal. Code Regs. tit. 5, § 41301(a) & (b)(7)) and the Student Group Misconduct policy in the Student Organization Handbook[3] both punish expressive activity, which includes expressive conduct. These policies are overbroad and vague on their face, thereby providing Defendants with unbridled discretion to enforce them against unpopular and unpleasant expression. Defendants exercise this discretion by holding penal threats over students' heads when the Defendants do not agree with the content or viewpoint of student expression. And Defendants did exactly that when they investigated Plaintiffs' (collectively "College Republicans") Anti-Terrorism Rally, on the basis of a possible violation of the Student Code. Without injunctive

---

[1] Notably, Defendants do not dispute the text of their policies. (Defs. Answer ¶¶ 22, 23, 25; Greenwell Decl. Ex. B.)

[2] Defendants claim that they did not punish College Republicans pursuant to the Student Code. However, Defendants found *probable cause* to enforce the Student Code against College Republicans and launch a five month investigation into their expressive activities.

[3] This Student Group Misconduct policy (Plfs.' First Am. Compl. Ex. A) should not be confused with the procedural rules for filing a complaint against a student group (also titled "Student Group Misconduct") attached to Defendant Greenwell's Declaration as Exhibit A.

1

REPLY IN SUPPORT OF PLS' MOTION FOR PRELIMINARY INJUNCTION – C-07-3542-WDB

relief, College Republicans, and all students attending CSU, will continue to suffer irreparable injury under Defendants' unconstitutional speech code.

## I. THE SPEECH CODE VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS BY PUNISHING PROTECTED SPEECH AND EXPRESSIVE CONDUCT.

### A. Defendants' Speech Code Restricts Protected Speech.

Both the text of the Student Code and Student Group Misconduct policies, and Defendants' enforcement of those policies, show that they are intended to punish all forms of expression. The "Student Responsibilities" section of the Student Code states that "Students are expected to be good citizens and to engage in responsible behaviors that reflect well upon their university, ***to be civil*** to one another and to others in the campus community . . . " Cal. Code Regs. tit. 5, § 41301(a) (emphasis added). Defendant Greenwell claims that this section is merely an aspiration for student conduct. (Greenwell Decl. ¶ 35.) However, § 41301(a) contains no indication that it is merely aspirational and Defendant Greenwell, in fact, forwarded the charge of "incivility" to the Student Organization Hearing Panel (SOHP) for investigation. (*Id.* ¶ 38 and Ex. C.) The text is labeled "Student Responsibilities," which connotes prohibitions imposed by Defendants—albeit completely vague and overbroad prohibitions.

In *Bair v. Shippensburg University*, 280 F. Supp. 2d 357 (M.D. Pa. 2003), the court struck down language similar to Defendants' civility requirement on overbreadth grounds. The court said: "On its face, it is apparent that the Code of Conduct prohibits speech that is protected by the First Amendment. The amorphous term, 'acts of intolerance,' ***within the Preamble of the Code*** can be reasonably interpreted to encompass speech, not just conduct, that intimates intolerance." *Id.* at 370 (emphasis added). The court found the "acts of intolerance" language overbroad because it could be interpreted as prohibiting speech protected by the First Amendment. *Id.*

Defendants claim that the "Student Responsibilities" section is a preamble, like a portion of the preamble section upheld in *Shippensburg*. (Defs. Resp. at 11.) But as shown above, even the language in the Shippensburg University preamble was subject to constitutional scrutiny. Defendants' "Student Responsibility" policy, even if a "preamble" to the Student Code, must comply with the First Amendment, and as currently written, it does not.

The Student Code also lists "Unacceptable Student Behaviors." § 41301(b). Included in this list are prohibitions on "conduct that threatens or endangers the health or safety of any person within or related to the university community, including . . . *intimidation*, [and] *harassment* . . . " § 41301(b)(7). Defendants claim that when read as a whole, the policy is well-defined and clear. Yet even when read in context, Defendants failure to define "intimidation" and "harassment" proves constitutionally fatal. Intimidation and harassment have a variety of definitions and are not legal terms packed with a clear, inherent meaning. Plaintiffs Memorandum in support of this Motion listed the various dictionary definitions of "intimidation" and "harassment." (Plfs. Mot. for Prelim. Inj. at 12-13.) Yet these definitions include constitutionally protected expression. For example, "intimidation" can mean one student taunting another student with a superior display of talent on the intramural flag football field. Similarly, to be "civil" is to be polite, but being impolite is certainly constitutionally protected expression, despite being rude.

Moreover, while "harassment" connotes some legal meaning, Defendants' policy must be more precise. In *Saxe v. State College Area School District*, 240 F.3d 200 (3d Cir. 2001), and *Shippensburg*, the courts struck down speech codes that prohibited "harassment" because the use of that word, even in the context of the schools' policies, was unconstitutionally overbroad because it encompassed expression not subject to regulation under *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). *See Saxe*, 240 F.3d at 209; *Shippensburg*, 280 F. Supp. 2d at 371-72. In fact, "harassment" and "intimidation" can *only* be regulated in a school setting if those words are *expressly* limited by the requirements of *Tinker*: that is, the expression gives rise to a well-founded fear of disruption or interference with the rights of others. *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 264 (3d Cir. 2002). Additionally, university students are entitled to greater First Amendment protections than those of the high school students in *Saxe* and *Sypniewski*.

Defendants also contend that the Student Code's "savings clause" (§ 41301(c)) prohibits the punishment of constitutionally protected expression. But the "savings clause" actually deepens the policy's vagueness problem. While a savings clause sometimes saves a law from overbreadth, and Plaintiffs do not concede that the savings clause does in this case, the clause also makes the law terribly vague. *See* Laurence Tribe, American Constitutional Law §§ 12-29 (2d ed. 1988); Harvey A.

Silverglate, FIRE's Guide to Free Speech on Campus 72 (2005). What could be vaguer than a law that prohibits expression that is clearly protected by the Constitution, but then says that everything protected by the Constitution is not prohibited? The savings clause chills student expression by creating confusion as to what is permitted and prohibited, which sends a message that students speak at their own peril. In other words, unless a student is a lawyer – and is familiar with the constitutional limits on prohibitions against "harassment" and "intimidation" – the savings clause is utterly meaningless. Thus, the Student Code's "savings clause" does not render it constitutionally compliant; instead, it is even more unconstitutional.

Finally, the text of the Student Group Misconduct policy shows that it also punishes all forms of expression. That policy states: "While members may be held accountable for their actions individually, *corrective actions may also be imposed* upon an entire organization for individual members' actions *when the behavior is inconsistent with SF State goals*, [and] *principles* . . . " (Compl. ¶ 22) (emphasis added). It should be noted that Defendants' Response fails to address College Republicans' facial challenge of this policy. They did not respond because there is no viable legal defense for this policy. The state simply cannot require its citizens to advance state "goals" and "principles" in their private, expressive activity.

This is not the first time a university has attempted to require students to advance university viewpoints. Shippensburg University had a policy similar to Defendants' Student Group Misconduct policy, which required "every member of the [Shippensburg University] community to ensure that the *principles* of [Shippensburg's] ideals be mirrored in their attitudes and behaviors . . . " *Shippensburg*, 280 F. Supp. 2d at 372 (emphasis added). The *Shippensburg* court struck down the policy on overbreadth grounds, because requiring students to mirror university "principles" (and "goals" in this case) restricts a vast array of protected expression. *Id*. Defendants' Student Code and Student Group Misconduct policies violate the Constitution by prohibiting protected speech.

### B.     Defendants' Speech Code Restricts Expressive Conduct Protected by the Constitution.

The Student Code and Student Group Misconduct policies also punish expressive conduct. It is well-settled that conduct is expressive. *See R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (cross-

burning); *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (flag burning); *Cohen v. California*, 403 U.S. 15 (1971) (wearing jacket with slogan protesting the draft); *Tinker*, 393 U.S. at 505 (wearing black armbands to protest Vietnam War); *Brown v. Louisiana*, 383 U.S. 131, 141-142 (1966) (finding that a sit-in constitutes speech). Defendants' Response alleges that the Student Code only prohibits certain kinds of conduct, not speech. While this is an interesting interpretation, the previous section shows this is not true. But even if the policy were limited to prohibiting conduct, it would not change the Court's analysis because conduct *is* expressive.

Defendants contend that the Student Code prohibits conduct that is not protected by the First Amendment. (Defs. Resp. at 12.) In support of this claim, they curiously cite cases dealing with noise ordinances, public indecency laws, and Social Security taxes. These cases are simply inapplicable. It is true that not every form of conduct is expressive for First Amendment purposes. Expressive conduct is not protected by the First Amendment when it falls into specific exceptions that the Supreme Court has carved out from the liberal free speech doctrine. Thus, for example, fighting words, obscenity, and certain forms of pornography are unprotected speech. *See New York v. Ferber*, 458 U.S. 747 (1982) (child pornography); *Miller v. California*, 413 U.S. 15 (1973) (obscenity); *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942) (fighting words). But Defendants' policies do not punish merely fighting words and other categories of unprotected expression; instead, they sweep broadly and include protected expression.

Defendants also cite *Tinker* and *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972), for the proposition that "it has been long accepted that universities have greater authority to regulate such conduct…given the unique nature of the educational forum." (Defs.' Resp. at 13.) *Tinker* involved student speech at a high school, not a public university with adult students. While *Tinker's* material and substantial disruption standard remains valid precedent, it does not help Defendants' argument. Defendants' speech code *fails to require* material or substantial disruption before they punish "intimidation," "harassment," incivility, or violation of SFSU's "goals [and] principles." In other words, the policy punishes conduct without any requirement of a threshold showing of disruption.

Moreover, it has been long accepted that public universities are the "marketplace of ideas" and students at those universities retain the same rights to free expression that they would have in a

5
REPLY IN SUPPORT OF PLS' MOTION FOR PRELIMINARY INJUNCTION – C-07-3542-WDB

traditional public forum. *Widmar v. Vincent*, 454 U.S. 263, 268 (1981); *Healy v. James*, 408 U.S. 169, 180 (1972); *Flint v. Dennison*, 488 F.3d 816, 831 (9th Cir. 2007). Indeed, college students have greater First Amendment rights, not less, than secondary school students. *Widmar*, 454 U.S. at 274 & n.14; *accord Walker-Serrano v. Leonard*, 325 F.3d 412, 416 (3d Cir. 2003).

Further, Defendants actually use the speech code to investigate and punish protected expression. Defendants do not dispute that College Republicans held an Anti-Terrorism Rally on October 17, 2006. (Greenwell Decl. ¶ 24.) After the event, one student filed a complaint, and Defendants found *probable cause* to investigate whether College Republicans violated the Student Code. (*Id*. ¶¶ 34-35.) The student complainant, Brian Gallagher, alleged that College Republicans violated the Student Code and SFSU policies by engaging in "actions of incivility," creating a "hostile environment," and "incit[ing] violence." Defendant Greenwell believed the complaint was meritorious and warranted a formal investigation, rather than the informal resolution process. Moreover, Defendants Corrigan and Saffold saw no reason to intervene and stop the investigation. *See Doe v. Univ. of Mich*., 721 F. Supp. 852, 865 (E.D. Mich. 1989) (failure to intervene and stop investigation of protected speech demonstrates constitutional defects in policy). Strangely, Defendant Greenwell now claims he ordered a formal investigation of College Republicans because students at the Rally threatened to attack College Republicans' members—so Greenwell ordered an investigation of those who were threatened? This simply defies logic and represents a quintessential heckler's veto. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

If Defendants clearly defined the terms in the Student Code, perhaps Mr. Gallagher never would have filed the complaint, or perhaps Defendant Greenwell would have dismissed the complaint and explained to Mr. Gallagher that flag desecration is protected expression, no matter how offended one may be by it.[4] *See Johnson*, 491 U.S. at 414 ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). But instead of dismissing the complaint,

---

[4] Even without definitions of the terms, Defendant Greenwell should have known that College Republicans' expression was clearly protected speech.

6
REPLY IN SUPPORT OF PLS' MOTION FOR PRELIMINARY INJUNCTION – C-07-3542-WDB

Greenwell made a "probable cause" finding and ordered a full investigation because the challenged words in the speech code allowed such discretion.

## II.  DEFENDANTS' SPEECH CODE FAILS SCRUTINY ON OVERBREADTH AND VAGUENESS GROUNDS.

Defendants fail to address the overwhelming case law supporting an injunction against their speech code. This is telling. "It has long been clearly established law that overbroad and vague policies restricting speech on state university campuses violate the First Amendment." *Vega v. Miller*, 273 F.3d 460, 473 (2d Cir. 2001) (citing *Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*, 385 U.S. 589, 604 (1967)). Defendants simply have no means to distinguish the Student Code and Student Group Misconduct policies from similar policies at other universities that were found overbroad and vague. Upon examination, Defendants' policies are not specific and self-defining and violate the overbreadth doctrine by banning speech based on listeners' reactions. The policies are also vague because they fail to provide students fair warning of prohibited expression and they give CSU administrators unbridled discretion.

### A.  The Student Code and Student Group Policies Are Overbroad.

Overbroad laws chill expression that is protected by the First Amendment. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). Defendants' speech code punishes expression based on the subjective reaction of students and CSU administrators. The lack of any clear definitions for "goals," "principles," "intimidation," "harassment," and "civil," necessarily leads to subjective interpretations of the speech code.  Courts that have addressed policies like this at public universities agree. *See Shippensburg*, 280 F. Supp. 2d 357; *UWM Post, Inc. v. v. Bd. of Regents of the Univ. of Wis. Sys.*, 774 F. Supp. 1163, 1172 (E.D. Wis. 1991); *Doe v. Univ. of Mich.*, 721 F. Supp. 852 (E.D. Mich. 1989). Without definition, any student can file a complaint against his or her peers for "violating" the speech code whenever they are "offended," and the administrators charged with enforcing the code have

unlimited discretion to enforce the code against speech they do not like.[5] Such hecklers' vetoes are unconstitutional. *Claiborne Hardware Co.*, 458 U.S. 886.

Additionally, a SFSU administrator charged with enforcing these policies, like Defendant Greenwell, can define the prohibitions on a case by case basis. Naturally, this leads some content and viewpoints to be excluded based on the administrator's whims. Such unbridled discretion leads to students self-censoring their speech for fear of punishment. Defendants claim that they prohibit "intimidation" and "harassment" that endangers someone's health or safety. (Defs. Resp. at 14.) But, as discussed above, what does that mean?

"Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." *Regan v. Time, Inc.*, 468 U.S. 641, 648-49 (1984). Indeed, regulations are unconstitutional if they are so open-ended that administrators ***could*** enforce them based on content, even if there is no evidence of a content-based motive: "The success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so." *Forsyth County v. Nationalist Movement*, 505 U.S. 130, 133 n.10 (1992).

The complaint resolution process and SOHP do not relieve these constitutional problems. As already stated, Mr. Gallagher filed a complaint against College Republicans because he was offended by the Rally. Mr. Gallagher cited the Student Code as the basis of his complaint and Defendant Greenwell entertained it as a valid complaint that warranted full investigation and a hearing by SOHP. If there was any doubt about whether the speech code allows for punishment of speech based on the subjective reaction of listeners, Defendants' entertainment of Gallagher's complaint and probable cause finding erase that doubt.

Further, *Tinker* and its progeny require "a specific and significant fear of disruption, not just some remote apprehension of disturbance" in order to punish expression on campus. *Saxe*, 240 F.3d at

---

[5] Defendant Greenwell even admits he has ultimate discretion in determining whether a complaint is forwarded to the Student Organization Hearing Panel (SOHP). (Greenwell Decl. ¶ 14.)

211. For public schools, this means requiring a threshold showing of severity or pervasiveness of the prohibited conduct before it can be punished. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 651 (1999); *Saxe*, 240 F.3d at 216-17. Defendants' Student Code and Student Group Misconduct policies do not require any such showing. As a minority voice on campus (Compl. ¶ 34), members of College Republicans may "offend" many of their peers. By allowing speech to be punished based on listeners' reactions and without any showing of severity or pervasiveness, minority groups like College Republicans will speak at greater risk of punishment.

### B.  The Student Code and Student Group Misconduct Policies Are Vague.

The University's Student Code and Student Group Misconduct policies are vague because they do not provide students with fair warning as to what expression is prohibited and permitted, and they give administrators unbridled discretion in enforcing the policies. "In a facial vagueness challenge, the ordinance need not be vague in all applications if it reaches a 'substantial amount of constitutionally protected conduct.'" *Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). Penal regulations governing speech must meet a high standard of clarity. *Nunez*, 114 F.3d at 940. If students do not know how to comply because the policies are too vague, this violates the Fourteenth Amendment, and when vague policies affect First Amendment rights, they are analyzed under a more exacting standard. The danger is that students will be chilled from engaging in constitutionally protected expressive activity because they do not know the scope and breadth of the university's regulations. *See Grayned*, 408 U.S. at 108-09.

In the Ninth Circuit courts hold that vagueness challenges to laws impacting the First Amendment require even stricter analysis than claims impacting only the Fifth or Fourteenth Amendments. *Bullfrog Films Inc. v. Wick*, 847 F.2d 502, 512 (9th Cir.1988). "When a statute or regulation by its vagueness or overbreadth threatens to deter the exercise of first amendment freedoms, we require of it greater precision and specificity than would be necessary to fulfill fifth or fourteenth amendment due process requirements." *Adamian v. Jacobsen*, 523 F.2d 929, 932 (9th Cir. 1975); *see NAACP v. Button*, 371 U.S. 415, 433 (1963) ("Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity."). The Ninth Circuit has identified three objections to vague policies in the First Amendment context: "First, they

trap the innocent by not providing fair warning. Second, they impermissibly delegate basic policy matters to low level officials for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, a vague policy discourages the exercise of first amendment freedoms." *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 972 (9th Cir. 1996) (citing *Grayned*, 408 U.S. at 108-109). The words at issue in Defendants' speech code do not meet these standards.

"Intimidation," "harassment," "civil," "goals," and "principles," are not self-defining words. They have a variety of definitions, some of which include expression that is protected by the First Amendment. Here, again, the Student Code's "savings clause" renders the prohibitions even more vague—under it, students must not be uncivil, except to the extent that incivility includes protected speech. *See Nunez*, 114 F.3d at 940-41 (savings clause in ordinance did not eliminate vagueness, but added to it); *Rubin v. City of Santa Monica*, 823 F. Supp. 709, 713 (C.D. Cal. 1993) (finding ordinance vague even with savings clause). Students have no fair warning as to when the speech code will be applied to their activities on campus.

Mr. Gallagher's complaint about College Republicans' Rally also demonstrates the vagueness of the policy. Gallagher complained that College Republicans had engaged in "actions of incivility" and Defendants investigated the organization for violating that portion of the policy. At no time during the preliminary investigation by Defendant Greenwell or the formal SOHP hearing did the Defendants dismiss the "incivility" charge. The fact that Defendant Greenwell now claims that the "civility" requirement is an aspiration of SFSU is contradicted by his actions. Defendant Greenwell's unfettered discretion in determining whether a formal investigation was necessary shows the second danger of vague laws—arbitrary enforcement.

Courts across the country have invalidated policies, like the Defendants', that prohibit "intimidation," "harassment," and incivility, and that require people to adhere to the "goals and principles" of the government. *See UWM Post*, 774 F. Supp. at 1172 (holding prohibition on "intimidating" speech unconstitutionally vague); *Dambrot v. Cent. Mich. Univ.*, 839 F. Supp. 477 (1993) (holding university speech code unconstitutionally vague because it prohibited "negative" and "offensive" comments). The reason university speech codes fail constitutional scrutiny time and again

is that they chill student speech in a forum that was designed to promote student speech. Moreover, while Defendants contend that they are not bound to "mathematical certainty" (Defs.' Resp. 14), they must still write regulations that a reasonable person can understand. *Nunez*, 114 F.3d at 940. Such a person cannot understand regulations that prohibit "intimidation," "harassment," and incivility, without definition. Further, no one can understand what SFSU's "goals and principles" are without definition.[6] Without clarity, the speech code will continue to chill student speech like the College Republicans' campus expression.

## III. DEFENDANTS' MISCONSTRUE THE PRELIMINARY INJUNCTION STANDARD OF REVIEW.

Defendants claim that College Republicans' Motion seeks to alter the status quo. However, the status quo on a public university campus is students being able to speak freely without fear of government censorship or punishment. *Widmar*, 454 U.S. at 268; *Healy*, 408 U.S. at 180. The status quo cannot be students suffering under a constitutionally defective speech code. Defendants' contention would render it impossible for plaintiffs to obtain judicial relief once the infringing conduct begins, which defeats the purpose of a preliminary injunction. *Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). In this Motion, College Republicans request a prohibitory injunction that will stop Defendants from enforcing an unconstitutional policy and return the university campus to the status quo *ante*—a campus that allowed a free and open exchange of ideas.

## IV. A PRELIMINARY INJUNCTION IS NEEDED.

College Republicans, and all students in the CSU system, are suffering irreparable harm each and every day that the Student Code and Student Group Misconduct policies remain in force. Preliminary injunctive relief is available when a party demonstrates either: (1) a combination of

---

[6] Defendants claim the words in their speech code have common sense meanings that are informed by the context of the policies. However, Defendants fail to explain what those common sense meanings are. This is because the words can have any meaning a reader ascribes to them. University regulations must be more precise.

probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Under either analysis, College Republicans' Motion should be granted.

The foregoing brief demonstrates that College Republicans are likely to succeed on the merits of this case. Further, more than just a possibility of irreparable harm, the loss of constitutional rights, even for a moment, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528-29 (9th Cir. 1993) ("'[a]ny loss of first Amendment freedoms, even briefly, can constitute irreparable injury'"); *Nat'l People's Action v. Vill. of Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990) ("Even a temporary deprivation of first amendment freedom of expression rights is generally sufficient to prove irreparable harm."). College Republicans curtailed their expression on campus since the investigation by Defendants and will continue to self-censor their speech until the instant unconstitutional policies are enjoined.[7] (Compl. ¶¶ 66-74.) Although College Republicans still attempt to engage in free expression on campus, another student like Mr. Gallagher could accuse them at any time of violating the speech code and launch another multi-month investigation by Defendants.

Further, a constitutional injury by a government policy cannot be adequately addressed through legal remedies. At risk in this case are the free speech rights of all CSU students. Monetary damages would only serve to place a band-aid over a gaping wound in the free speech rights of all students, and would not remove the threat of future punishment. Showing irreparable harm is "[p]robably the most common method of demonstrating that there is no adequate legal remedy." 11A Wright, Miller & Kane, Federal Practice and Procedure § 2944 (2007); *see also Fleet Wholesale Supply Co. v. Remington Arms Co.*, 846 F.2d 1095, 1098 (7th Cir.1988) ("To say that the injury is irreparable means

---

[7] Defendants assert that a "significant showing of irreparable injury" is necessary for injunctive relief. To support this claim, the cite *Tahoe Keys Prop. Owners' Ass'n v. State Water Res. Control Bd.*, 28 Cal. Rptr. 2d 734 (Cal. Ct. App. 1994), which dealt with property owners challenging the imposition of a pollution mitigation fee on building permits. Besides dealing with state law injunction standards, the complaint sought redress from a financial burden, which can easily be remedied with monetary damages. Here, however, fundamental constitutional rights are at stake that warrant immediate injunctive relief.

that the methods of repair (remedies at law) are inadequate."). Without equitable relief from the unconstitutional policies, College Republicans, and all CSU students, will necessarily continue to self-censor their speech or speak at their own peril. *See CR of Rialto, Inc. v. City of Rialto*, 975 F. Supp. 1254, 1265 (C.D. Cal. 1997) ("No legal remedy is adequate to compensate for the loss of expressive activities allowed by the First Amendment.").

Finally, a preliminary injunction during the pendency of this case will greatly serve the public interest by ensuring that Defendants do not enforce the Student Code and Student Group Misconduct policies against unknowing students. Generally, public interest concerns are implicated when a constitutional right—like free expression—has been violated, because all citizens have a stake in upholding the Constitution. *See Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002) (citing same precedent from multiple circuits). The injunction will not harm Defendants because they are free to enforce the remaining provisions of the Student Code, Student Group Misconduct policy, and many other rules and regulations on campus. Defendants have many adequate means by which to ensure campus safety, but enforcement of the speech code should not be one of them.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Injunction and enjoin enforcement of CSU's Standards for Student Conduct, Cal. Code Regs. tit. 5, § 41301(a) & (b)(7) and the Student Group Misconduct policy found in SFSU's Student Organization Handbook.

//
//
//
//
//
//
//
//

Respectfully submitted this 17th day of October, 2007,

/s/David J. Hacker
DAVID J. HACKER
California Bar No. 249272
Illinois Bar No. 6283022
Alliance Defense Fund
101 Parkshore Drive, Suite 100
Folsom, California 95630
(916) 932-2850
(916) 932-2851—facsimile
dhacker@telladf.org

BENJAMIN W. BULL
Arizona Bar No. 009940
TRAVIS C. BARHAM*
Arizona Bar No. 024867
Alliance Defense Fund
15333 N. Pima Road, Suite 165
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028—facsimile
bbull@telladf.org
tbarham@telladf.org

DAVID A. FRENCH*
Tennessee Bar No. 16692
Kentucky Bar No. 86986
Alliance Defense Fund
12 Public Square
Columbia, Tennessee 38401
(931) 490-0591
(931) 490-7989—facsimile
dfrench@telladf.org

NATHAN W. KELLUM*
Tennessee Bar No. 13482
Mississippi Bar No. 8813
Alliance Defense Fund
699 Oakleaf Office Lane, Suite 107
Memphis, Tennessee 38117
(901) 684-5485
(901) 684-5499—facsimile
nkellum@telladf.org

*Attorneys for Plaintiffs*

**Pro hac vice* admission*