# SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF ALL CLAIMS

1. **Parties**

This Settlement Agreement and Mutual Release (Agreement) is entered into between College Republicans at San Francisco State University, Leigh Wolf, and Trent Downes (collectively plaintiffs) and Charles B. Reed, Robert A. Corrigan, J.E. Saffold, and Joey Greenwell (collectively defendants).

2. **Claims**

2.1   On July 9, 2007, plaintiffs filed an action in the United States District Court, Northern District of California – San Francisco Division (since transferred to Oakland Division), Case No. C-07-3542-WDB, entitled *College Republicans at San Francisco State University, et al. v. Achtenberg, et al.* (Action). Plaintiffs subsequently filed their first amended complaint on August 30, 2007, dismissing a number of individual defendants from the matter (Amended Complaint).

2.2   The parties wish to resolve all disputes and claims between them.

3. **Settlement Terms**

3.1   This settlement is a compromise of disputed claims and is not an admission by any party of any liability. The parties enter into this Agreement to buy their peace and to avoid the further costs of litigation. Defendants specifically deny any wrongdoing, unlawful discrimination, violation of the law, or breach of any standard of care owed plaintiffs.

3.2   The parties acknowledge that the Board of Trustees of the California State University, at their regularly scheduled meeting on January 22-23, 2008, approved an amendment to CSU's "Standards for Student Conduct," Cal. Code Regs. tit. 5, § 41301, that clarifies that the statement of expected student behavior contained in subsection (a) does not establish grounds for a student or student organization investigation or disciplinary charge. The Trustees' Resolution approving the amendment to Section 41301 has been filed with the California Secretary of State for enactment and a copy is attached hereto as Exhibit "A."

3.3   As a condition of this Agreement, defendants shall provide system-wide training regarding the January 2008 revisions to the Standards for Student Conduct, Cal. Code Regs. tit. 5, § 41301, to campus Judicial Affairs Officers and other responsible campus officials.

3.4   As a condition of this Agreement, defendants shall remove the following language from the San Francisco State University OSPLD Student Organization Handbook, Student Group Misconduct policy: "…when the behavior is inconsistent with SF State goals, principles and policies." Defendants agree that the stricken language shall not form the basis for investigation or disciplinary action against any student or student organizations.

3.5   As a condition of this Agreement, defendants shall amend San Francisco State University's Sexual Harassment Policies and Procedures, University Executive Order #95-18, as follows:

"DEFINITION OF SEXUAL HARASSMENT

~~Sexual Harassment is one person's distortion of a university relationship by unwelcome conduct which emphasizes another person's sexuality.~~ [*Sexual harassment is sexually harassing conduct that is sufficiently severe, pervasive and objectively offensive as to substantially disrupt or undermine a person's ability to participate in or to receive the benefits, services, or opportunities of the university.*] Sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature are forms of sexual harassment when:

1. submission to such conduct is made explicitly or implicitly a term of conduct of instruction, employment, or participation in any university activity; or

2. submission to or rejection of such conduct is used as a basis for employment or academic decisions affecting the individual; or

3. such conduct ~~has the purpose or effect of hindering~~ [*substantially and unreasonably hinders*] performance by creating or allowing sexually intimidating, hostile, or offensive behavior to occur in the university or in a university-related setting."

3.6   As a condition of this Agreement, defendants shall provide written confirmation that no record of the disciplinary investigation based on the College Republicans' October 17, 2006, Rally exists in Plaintiff Leigh Wolf's and Plaintiff Trent Downes' student files.

3.7   All of the aforesaid actions by defendants in Paragraphs 3.3 – 3.6 shall be completed no later than ninety (90) calendar days after the execution of this Agreement.

3.8   Within thirty (30) calendar days of the Effective Date of the Agreement, defendants shall pay plaintiffs College Republicans at San Francisco State University, Leigh Wolf and Trent Downes **One Hundred Dollars ($100.00)** each in nominal damages in full and final settlement of all claims, actions, demands, causes of action, issues, theories, and allegations the plaintiffs have, or may have, against the defendants.

3.9   The payment of nominal damages to the plaintiffs shall be made in a check payable to "Alliance Defense Fund IOLTA Lawyers Trust Account" in the sum of $300.00. Plaintiffs' counsel shall ensure appropriate distribution of these funds.

3.10  Within thirty (30) calendar days of the Effective Date of the Agreement, defendants shall pay the maximum sum of **Forty-One Thousand Five Hundred Dollars ($41,500.00)** to "Alliance Defense Fund c/o David J. Hacker," in full and final settlement of all attorneys' fees and costs in the matter.

3.11  Plaintiffs' counsel agrees to execute the Payee Data Record form required by the defendants for this Agreement.

3.12  The parties agree that the court shall maintain jurisdiction over the lawsuit solely for the purposes of enforcing the terms of this Agreement.

3.13  The parties, for themselves, their relatives, heirs, successors, assigns, attorneys, agents and representatives, release and forever discharge each other, and each others relatives, heirs, successors, assigns, employees, attorneys, agents, officers, insurers, constituent universities, and representatives from all complaints, actions, causes of actions, in law or equity, suits, administrative claims, attorneys' fees, debts, liens, demands, damages, injunctive relief, costs, expenses, agreements, promises, obligations or liabilities of any kind whatsoever up to the date this Agreement is executed, whether known or unknown, which the parties may have or claim against each other arising out of or pertaining to the facts as alleged in the Action and Amended Complaints. This Release includes, but is not limited to, claims and/or charges under the United States and California Constitutions, the Unruh Civil Rights Act, 42 U.S.C. §1983 and §1988, and/or for discrimination, harassment, retaliation, injunctive relief, declaratory relief, legal costs, and attorneys' fees.

3.14  Plaintiffs agree to file a Stipulated Dismissal, in the form attached as Exhibit "B," dismissing this Action and Amended Complaint with prejudice within ten (10) calendar days of execution of this Agreement by all parties, and to take, or cause their counsel to take, all further steps and execute all other documents reasonably necessary to accomplish the dismissal. This dismissal will expressly incorporate the terms of this Agreement and will expressly retain jurisdiction for purposes of enforcing the Agreement as stated above.

3.15  The parties acknowledge that there have been no other promises made between them about the settlement of the claims described above.

3.16  Plaintiffs acknowledge the provisions of California Civil Code section 1542, which they expressly waive. That statute states:

> *A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.*

3.17  Plaintiffs acknowledge that they have been represented by counsel and that they have read and understand the content of this Settlement Agreement and Mutual Release and have voluntarily entered into it.

3.18  This Settlement Agreement and Mutual Release shall be interpreted under the laws of the State of California.

3.19  This Agreement constitutes the entire understanding and agreement of the parties and supersedes all prior or contemporaneous agreements or understandings.

3.20  Modifications and/or amendments to this Agreement must be in writing signed by all parties.

3.21  This Agreement may be executed in several counterparts and all such executed counterparts shall constitute a single agreement.

3.22  The Agreement shall become effective the date the last signature placed hereon.

Dated: 2/28/08

Plaintiff College Republicans at SFSU
By: Jeff Budd
Its: Treasurer

Dated: 2/28/08

Plaintiff Leigh Wolf

Dated: 2/28/2008

Plaintiff Trent Downes

Andrea M. Gunn
University Counsel
California State University, Office of General Counsel

Dated: 2/21/08

*[signature]*

On Behalf of Defendant Charles B. Reed


Michael Martin
Interim Associate Vice President for Human Resources, Safety, and Risk Management

Dated: 2/20/08

*[signature]*

On behalf of Defendants Robert A. Corrigan, J.E. Saffold, and Joey Greenwell

Approved as to Form:

Dated: 2/29/08

_____
David J. Hacker
Alliance Defense Fund
Attorney for Plaintiffs

Dated: 2/15/08

_____
Andrea M. Gunn
California State University
Office of General Counsel
Attorney for Defendants

# EXHIBIT A

# Trustees of the
# California State University

# Resolutions

Resolutions passed by the CSU Board of Trustees at their meeting held on
January 22-23, 2008 in the Dumke Auditorium located at the California State University
Office of the Chancellor, 401 Golden Shore, Long Beach, CA 90802

this proficiency. As appropriate, this engagement may include providing campus faculty and staff with opportunities to collaborate and share effective practices, and developing comprehensive periodic reports on successful programs.

5. It is the expectation of the Board of Trustees that programs that demonstrate success in bringing students to full proficiency be widely replicated in the CSU. To that end, the Chancellor and Presidents are directed to collaborate with CSU faculty in experimenting with, or piloting, programs such as the following, which were reported to show evidence of success in a summer 2007 survey of remediation practices on CSU campuses; to assess with care any such experiments and/or pilot programs; and to implement on a widespread basis those programs shown to be successful. To the extent that it is judged convenient and beneficial, collaboration with community colleges is encouraged.

   A. "Early start" programs, including strong financial support to include both improved financial aid opportunities and opportunities for summer employment, for students with both significant and moderate remedial needs.

   B. Alternatives to redirection to Community Colleges for students who narrowly miss achieving full proficiency in the course of an initial college year, including, for example, hosting Community College instruction at CSU campuses, while maintaining the basic principle that students must achieve proficiency before enrolling in their second year in the CSU.

   C. For students who begin their mathematics or English study at a demonstrated "nearly proficient" level, courses that offer baccalaureate credit for the attainment of college-level course outcomes, while requiring enrolled students also to meet specific proficiency objectives.

   D. Technology-assisted, Internet-based learning programs for remedial English and mathematics. Consortial efforts that involve several campuses in the development of these programs are encouraged.

**Proposed Title 5 Revision: Amendment to Student Conduct Code (REP 01-08-02)**

**RESOLVED** by the Board of Trustees of the California State University that Section 41301 of Title 5 of the California Code of Regulations be amended as follows:

§ 41301. Standards for Student Conduct

(a) Campus Community Values
The University is committed to maintaining a safe and healthy living and learning environment for students, faculty, and staff. Each member of the campus community should choose behaviors that contribute toward this end. Students are expected to be good citizens and to engage in responsible behaviors that reflect well upon their university, to be civil to one another and to others in the campus community, and contribute positively to student and university life. ~~Student behavior that is not consistent with the Student Conduct Code is addressed through an educational process that is designed to promote safety and good citizenship and, when necessary, impose appropriate consequences.~~

~~(a) Student responsibilities~~
~~Students are expected to be good citizens and to engage in responsible behaviors that reflect well upon their university, to be civil to one another and to others in the campus community, and contribute positively to student and university life.~~

(b) Grounds for Student Discipline
Student behavior that is not consistent with the Student Conduct Code is addressed through an educational process that is designed to promote safety and good citizenship and, when necessary, impose appropriate consequences.

The following ~~behavior is subject to disciplinary sanctions~~ are the grounds upon which student discipline can be based:

(1) Dishonesty, including:
(A) Cheating, plagiarism, or other forms of academic dishonesty that are intended to gain unfair academic advantage.
(B) Furnishing false information to a University official, faculty member, or campus office.
(C) Forgery, alteration, or misuse of a University document, key, or identification instrument.
(D) Misrepresenting one's self to be an authorized agent of the University or one of its auxiliaries.

(2) Unauthorized entry into, presence in, use of, or misuse of University property.

(3) Willful, material and substantial disruption or obstruction of a University-related activity, or any on-campus activity.

(4) Participating in an activity that substantially and materially disrupts the normal operations of the University, or infringes on the rights of members of the University community.

(5) Willful, material and substantial obstruction of the free flow of pedestrian or other traffic, on or leading to campus property or an off-campus University related activity.

(6) Disorderly, lewd, indecent, or obscene behavior at a University related activity, or directed toward a member of the University community.

(7) Conduct that threatens or endangers the health or safety of any person within or related to the University community, including physical abuse, threats, intimidation, harassment, or sexual misconduct.

(8) Hazing, or conspiracy to haze. Hazing is defined as any method of initiation or pre-initiation into a student organization or student body, whether or not the organization or body is officially recognized by an educational institution, which is likely to cause serious bodily injury to any former, current, or prospective student of any school, community college, college, university or other educational institution in this state (Penal Code 245.6), and in addition, any act likely to cause physical harm, personal degradation or disgrace resulting in physical or mental harm, to any former, current, or prospective student of any school, community college, college, university or other educational institution. The term "hazing" does not include customary athletic events or school sanctioned events.

Neither the express or implied consent of a victim of hazing, nor the lack of active participation in a particular hazing incident is a defense. Apathy or acquiescence in the presence of hazing is not a neutral act, and is also a violation of this section.

(9) Use, possession, manufacture, or distribution of illegal drugs or drug-related paraphernalia, (except as expressly permitted by law and University regulations) or the misuse of legal pharmaceutical drugs.

(10) Use, possession, manufacture, or distribution of alcoholic beverages (except as expressly permitted by law and University regulations), or public intoxication while on campus or at a University related activity.

(11) heft of property or services from the University community, or misappropriation of University resources.

(12) Unauthorized destruction, or damage to University property or other property in the University community.

(13) Possession or misuse of firearms or guns, replicas, ammunition, explosives, fireworks, knives, other weapons, or dangerous chemicals (without the prior authorization of the campus president) on campus or at a University related activity.

(14) Unauthorized recording, dissemination, or publication of academic presentations (including handwritten notes) for a commercial purpose.

(15) Misuse of computer facilities or resources, including:
  (A) Unauthorized entry into a file, for any purpose.
  (B) Unauthorized transfer of a file.
  (C) Use of another's identification or password.
  (D) Use of computing facilities, campus network, or other resources to interfere with the work of another member of the University community.
  (E) Use of computing facilities and resources to send obscene or intimidating and abusive messages.
  (F) Use of computing facilities and resources to interfere with normal University operations.
  (G) Use of computing facilities and resources in violation of copyright laws.
  (H) Violation of a campus computer use policy.

(16) Violation of any published University policy, rule, regulation or presidential order.

(17) Failure to comply with directions or, or interference with, any University official or any public safety officer while acting in the performance of his/her duties.

(18) Any act chargeable as a violation of a federal, state, or local law that poses a substantial threat to the safety or well being of members of the University community, to property within the University community or poses a significant threat of disruption or interference with University operations.

(19) Violation of the Student Conduct Procedures, including:
  (A) Falsification, distortion, or misrepresentation of information related to a student discipline matter.
  (B) Disruption or interference with the orderly progress of a student discipline proceeding.

     (C) Initiation of a student discipline proceeding in bad faith.
     (D) Attempting to discourage another from participating in the student discipline matter.
     (E) Attempting to influence the impartiality of any participant in a student discipline matter.
     (F) Verbal or physical harassment or intimidation of any participant in a student discipline matter.
     (G) Failure to comply with the sanction(s) imposed under a student discipline proceeding.

   (20) Encouraging, permitting, or assisting another to do any act that could subject him or her to discipline.

**EXHIBIT B**

BENJAMIN W. BULL (AZ Bar No. 009940)
NATHAN W. KELLUM* (TN Bar No. 13482; MS Bar No. 8813)
DAVID J. HACKER (CA Bar No. 249272; IL Bar No. 6283022)
TRAVIS C. BARHAM* (AZ Bar No. 024867)
Alliance Defense Fund
101 Parkshore Drive, Suite 100, Folsom, California 95630
(916) 932-2850; (916) 932-2851
dhacker@telladf.org

Attorneys for Plaintiffs College Republicans at San Francisco State University, Leigh Wolf and Trent Downs
* *Pro hac vice* admission

CALIFORNIA STATE UNIVERSITY
OFFICE OF GENERAL COUNSEL
CHRISTINE HELWICK (SBN 057274)
ANDREA M. GUNN (SBN 212259)
401 Golden Shore, Fourth Floor
Long Beach, California 90802-4210
(562) 951-4500
(562) 951-4956 or 4959
agunn@calstate.edu

Attorneys for Defendants Charles B. Reed, Robert A. Corrigan, J.E. Saffold, and Joey Greenwell

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **COLLEGE REPUBLICANS AT SAN FRANCISCO STATE UNIVERSITY**, et al., <br><br> Plaintiffs, <br> vs. <br><br> **CHARLES B. REED**, et al., <br><br> Defendants. | Case No. C-07-3542-WDB <br><br> Hon. Wayne D. Brazil <br><br> **STIPULATED DISMISSAL** <br><br> Date: March 13, 2008 <br> Action Filed: July 6, 2007 |

STIPULATED DISMISSAL – C-07-3542-WDB

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), it is hereby stipulated and agreed by the parties hereto that any and all claims in the above-captioned action are hereby dismissed with prejudice pursuant to the attached Settlement Agreement, the terms of which are hereby incorporated into this dismissal. The Court retains jurisdiction of this matter solely to enforce the terms of the Settlement Agreement.

WE HEREBY CONSENT TO THE FORM
AND ENTRY OF THE ABOVE DISMISSAL:

| | |
|---|---|
| COLLEGE REPUBLICANS AT SAN FRANCISCO STATE UNIVERSITY; LEIGH WOLF; and TRENT DOWNES, Plaintiffs, | CHARLES B. REED; ROBERT A. CORRIGAN; J.E. SAFFOLD; and JOEY GREENWELL, Defendants, |
| By their Attorneys, | By their Attorneys, |
| /s/David J. Hacker<br>BENJAMIN W. BULL<br>NATHAN W. KELLUM<br>DAVID J. HACKER<br>TRAVIS C. BARHAM<br>Alliance Defense Fund<br>101 Parkshore Drive, Suite 100<br>Folsom, California 95630<br>(916) 932-2850<br>(916) 932-2851—facsimile | /s/Andrea M. Gunn<br>CALIFORNIA STATE UNIVERSITY<br>OFFICE OF GENERAL COUNSEL<br>CHRISTINE HELWICK<br>ANDREA M. GUNN<br>401 Golden Shore, Fourth Floor<br>Long Beach, California 90802-4210<br>(562) 951-4500<br>(562) 951-4956 or 4959—facsimile |

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (s/) within this efiled document.

By: /s/ David J. Hacker
Attorney for Plaintiffs

Good cause appearing, it is SO ORDERED.

Dated: March _____, 2008.    _____
The Honorable Wayne D. Brazil
United States Magistrate Judge

1

STIPULATED DISMISSAL – C-07-3542-WDB